UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------------x
                                     :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **HAWKEYE RENEWABLES, LLC, *et al.*,** | : | **Case No. _____ (___)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | |

------------------------------------------------------------------x

## JOINT PREPACKAGED PLAN OF REORGANIZATION
## OF HAWKEYE RENEWABLES, LLC, *ET AL.*
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Michael F. Walsh, Esq.
(212) 310-8000

-and-

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Mark D. Collins
(302) 651-7700

**Proposed Attorneys for Debtors and Debtors in
Possession**

Dated:   November 24, 2009
           Wilmington, Delaware

## TABLE OF CONTENTS

Page

SECTION 1.    DEFINITIONS AND RULES OF INTERPRETATION ............................................. 1

    A.    Definitions .................................................................................................................... 1

    B.    Rules of Interpretation; Application of Definitions and Rules of Construction ............... 9

SECTION 2.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS ................................... 9

SECTION 3.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............................ 10

SECTION 4.    TREATMENT OF CLAIMS AND EQUITY INTERESTS .................................... 11

SECTION 5.    MEANS FOR IMPLEMENTATION ..................................................................... 14

SECTION 6.    DISTRIBUTIONS ................................................................................................ 19

SECTION 7.    PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS ................................................................................ 21

SECTION 8.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................ 22

SECTION 9.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .................................. 24

SECTION 10.    ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ............................................................................................................ 26

SECTION 11.    EFFECT OF CONFIRMATION .......................................................................... 27

SECTION 12.    RETENTION OF JURISDICTION ...................................................................... 29

SECTION 13.    MISCELLANEOUS PROVISIONS ..................................................................... 31

Exhibit A     New Secured Term Loan Agreement Term Sheet

Hawkeye Intermediate, LLC and Hawkeye Renewables, LLC propose the following joint prepackaged chapter 11 plan of reorganization pursuant to section 1121 of title 11 of the United States Code.

ALL HOLDERS OF CLAIMS ELIGIBLE TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## SECTION 1.    DEFINITIONS AND RULES OF INTERPRETATION

### A.    Definitions.

Except as expressly provided or unless the context otherwise requires, capitalized terms not otherwise defined herein shall have the meanings ascribed to them in this Section 1. Any term that is used and not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Where the context requires, any definition applies to the plural as well as the singular number:

1.1.    *Accrued Professional Compensation* means, at any given moment, all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

1.2.    *Administrative Expense Claim* means a Claim for costs and expenses of administration of the Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Commencement Date and ending on the Effective Date; (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the United States Code Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

1.3.    *Administrative Bar Date* means the thirtieth (30th) calendar day after the Effective Date, the date by which all proofs of claim for Administrative Expense Claims, other than for postpetition claims incurred in the ordinary course of business, must be filed.

1.4.    *Allowed* means, with reference to a Claim, (i) a Claim against a Debtor that has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) a Claim that has been timely filed and as to which no objection to allowance or request for estimation has been timely interposed and not withdrawn, or (iii) any Claim expressly allowed by a Final Order or hereunder.

1

1.5.     *Amended DG Marketing Agreement* means the Amended and Restated Distiller's Grains Marketing Agreement dated as of November 23, 2009, between Gold and Renewables, the executed version of which is attached to the RSA.

1.6.     *Amended Ethanol Marketing Agreement* means the Amended and Restated Exclusive Ethanol Marketing Agreement, dated, November 23, 2009, between Gold and Renewables, a substantially final form of which will be included in the Plan Supplement, the executed version of which is attached to the RSA.

1.7.     *Amended Management Agreement* means the Amended and Restated Services Agreement, dated November 23, 2009, between HEH and Renewables, the executed version of which is attached to the RSA.

1.8.     *Amended Organizational Documents* means the LLC Agreement, certificate of formation, or other forms of organizational documents and bylaws for Reorganized Renewables, the terms of which shall be acceptable to the First Lien Agent and Required Lenders, substantially final forms of which will be included in the Plan Supplement.

1.9.     *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.10.     *Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

1.11.     *Bankruptcy Rules* means, collectively, the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Rules of the Bankruptcy Court, as amended, as applicable to the Chapter 11 Cases.

1.12.     *Business Day* means any day other than a Saturday, a Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.13.     *Cash* means the lawful currency of the United States of America.

1.14.     *Chapter 11 Cases* means the above-captioned, jointly administered cases under chapter 11 of the Bankruptcy Code.

1.15.     *Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.16.     *Class* means a category of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.17.     *Class A Units* means the class of membership interests in Reorganized Renewables issued hereunder and governed by the LLC Agreement. Holders of the Class A Units shall be entitled to receive distributions from Reorganized Renewables (whether made pursuant to a liquidation or otherwise, and whether in cash or property) as follows:

(i) if Class 4A votes to accept the Plan: (a) first, 100% of all distributions until such time as holders of Class A Units have actually received, in the aggregate, cumulative distributions equal to

2

$435,000,000; (b) then, 92.5% of all distributions until such time as holders of Class A Units have actually received, in the aggregate, cumulative distributions equal to $580,000,000; and (c) thereafter, 82.5% of all distributions; provided, in the case of clause (a) after cumulative distributions have been made to the holders of Class A Units equal to the aggregate distribution to which the holders of Class A Units would be entitled in a hypothetical liquidation of Reorganized Renewables on the first business day following the Effective Date, which value will be determined by the board of Reorganized Renewable as soon as possible, but in no event later than thirty (30) days after the Effective Date or upon such other date as ordered by the Bankruptcy Court (such amount, the "Initial Capital Balance"), a portion of such percentage may be reduced as a result of participation in distributions by the Class D Units; provided, further, (A) to the extent Class D Units are issued, the percentage specified in clauses (a), (b) and (c) shall be adjusted downward to reflect the dilution of profit interests resulting from such issuance, (B) if the Class B Participation Condition has not been met, then the percentages in clauses (b) and (c) shall be 100% and (C) if the Class B Participation Condition has been met but the Class C Participation Condition has not been met, then the percentage in clause (c) shall be 92.5%; or

(ii) if Class 4A votes to reject the Plan: (y) first, 100% of all distributions until such time as holders of Class A Units have actually received, in the aggregate, cumulative distributions equal to $580,000,000; and (z) thereafter, 90.0% of all distributions; provided, in the case of clause (y) after cumulative distributions have been made to the holders of Class A Units equal to the Initial Capital Balance, a portion of such percentage may be reduced as a result of participation in distributions by the Class D Units; provided, further, (A) to the extent Class D Units are issued, the percentage specified in clause (z) shall be adjusted downward to reflect the dilution of profit interests resulting from such issuance and (B) if the Class C Participation Condition has not been met, then the percentage in clause (z) shall be 100%.

1.18.    *Class B Participation Condition* shall be met if (i) prior to the seventh anniversary of the Effective Date, holders of Class A Units have actually received, in the aggregate, cumulative distributions and proceeds received in sale or liquidation of Reorganized Renwables equal to $435,000,000 or (ii) as of such seventh anniversary, in a hypothetical liquidation of Reorganized Renewables effected in accordance with the terms of the LLC Agreement, the holders of Class A Units would have received, in the aggregate (giving effect to the amounts received under clause (i) and the amounts that would be received in such hypothetical liquidation), cumulative distributions in excess of $435,000,000.

1.19.    *Class B Units* means the class of profits interests in Reorganized Renewables which may be issued hereunder and governed by the LLC Agreement.  Holders of the Class B Units shall be entitled to receive, in the aggregate, 7.5% of all distributions from Reorganized Renewables (whether made pursuant to a liquidation or otherwise, and whether in cash or property) after such time as holders of Class A Units have received, in the aggregate, cumulative distributions equal to $435,000,000, as such percentage may be reduced on a pro rata basis with Class A and Class C Units as a result of participation in distributions by Class D Units; provided, that if the Class B Participation Condition has not been met, then the percentage above in this definition shall be zero (0%) and the Class B Units shall not be entitled to any distributions.  The Class B Units shall be issued only if Class 4A votes to accept the Plan.

1.20.    *Class C Participation Condition* shall be met if (i) prior to the seventh anniversary of the Effective Date, holders of Class A Units have actually received, in the aggregate, cumulative distributions and proceeds received in sale or liquidation of Reorganized Renwables equal to $580,000,000 or (ii) as of such seventh anniversary, in a hypothetical liquidation of Reorganized Renewables effected in accordance with the terms of the LLC Agreement, the holders of Class A Units would have received, in the aggregate (giving effect to the amounts received under clause (i) and the

amounts that would be received in such hypothetical liquidation), cumulative distributions in excess of $580,000,000.

1.21.    *Class C Units* means the class of profits interests in Reorganized Renewables issued hereunder and governed by the LLC Agreement.  Holders of the Class C Units shall be entitled to receive, in the aggregate, 10.0% of all distributions from Reorganized Renewables (whether made pursuant to a liquidation or otherwise, and whether in cash or property) after such time as holders of Class A Units have received, in the aggregate, cumulative distributions equal to $580,000,000, as such percentage may be reduced on a pro rata basis with Class A Units, and, if issued, the Class B Units as a result of participation in distributions by Class D Units; provided, that if the Class C Participation Condition has not been met, then the percentage above in this definition shall be zero (0%) and the Class C Units shall not be entitled to any distributions.

1.22.    *Class D Units* means the class of profits interests to be issued under and to be governed by the LLC Agreement as part of a Management Incentive Program.  Class D Units shall be entitled participate in the future profits of Reorganized Renewables at such time after the holders of Class A Units have received cumulative distributions equal to the Initial Capital Balance, and on such terms and conditions, as are provided in the Management Incentive Program and as the Board of Managers may decide.

1.23.    *Commencement Date* means the date the Chapter 11 Cases are commenced in the Bankruptcy Court.

1.24.    *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Cases.

1.25.    *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.26.    *Debtor* means each of Intermediate and Renewables and "Debtors" means all of them collectively, and when the context so requires, in their capacity as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

1.27.    *Disbursing Agent* means any entity (including any applicable Debtor if it acts in such capacity) in its capacity as a disbursing agent under Section 6.3 hereof.

1.28.    *Disclosure Statement* means the *Disclosure Statement for the Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated November 24, 2009, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

1.29.    *Disputed Claim* means any Claim that is not Allowed.

1.30.    *Effective Date* means a Business Day on or after the Confirmation Date specified by the Debtors on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions to the effectiveness of the Plan specified in Section 9 hereof have been satisfied or waived, which date shall be no later than five (5) days after such conditions have been satisfied or waived, provided, however, that the Debtors, with the consent of the First Lien Agent and the Required Lenders, may defer the

occurrence of the Effective Date for a period of no more than fifteen (15) days beyond such date in order to facilitate closing of the Exit Facility, if any.

1.31.    *Estates* means the estates of the Debtors, individually or collectively, as is appropriate in the context, created for the Debtors in their Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.32.    *Equity Interest* means any direct, indirect or derivative ownership interest in any of the Debtors.

1.33.    *Exculpated Parties* means (i) the Debtors, Reorganized Renewables, and all of their direct and indirect subsidiaries and affiliates, (ii) each member of the board of managers of Intermediate and Renewables, (iii) Hawkeye Energy Holdings, LLC, (iv) Hawkeye Gold, LLC, (v) each member of Hawkeye Energy Holdings, LLC., including without limitation, Putnam Investment Holdings, LLC, Putnam Investments Employees' Securities Company III LLC, THL Coinvestment Partners, L.P., THL Equity Advisors VI, LLC, THL Hawkeye Acquisition Partners, THL Hawkeye Acquisition Partners II, THL Hawkeye Acquisition Partners III, THL Hawkeye Blocker Corp., THL Hawkeye Blocker II Corp., THL Hawkeye Blocker III Corp., THL Hawkeye Blocker IV Corp., THL Hawkeye Blocker V Corp., THL Hawkeye Coinvest Partners, L.P., THL Hawkeye Equity Investors, L.P., Thomas H. Lee Equity Fund VI, L.P., Thomas H. Lee Parallel Fund VI, L.P., Thomas H. Lee Parallel (DT) Fund VI, L.P., (vi) each entity or person providing management services to a Debtor, including THL Managers VI, LLC, (vii) Thomas H. Lee Partners, L.P., (viii) the First Lien Agent, in its capacity as such, (ix) each holder of a First Lien Credit Agreement Claim, and (x) with respect to each of the foregoing, each of their respective direct or indirect subsidiaries, current and former affiliates, current and former officers, directors, managers, members, partners, shareholders, employees, agents, representatives, financial advisors, professionals, accountants and attorneys, and each of their predecessors, successors, and assigns; provided, however, that only officers and directors of the Debtors as of the Commencement Date shall be deemed "Exculpated Parties."

1.34.    *Exit Facility* means a senior secured credit facility, if any, with terms and conditions which shall be mutually acceptable to the First Lien Agent, the Required Lenders and Reorganized Renewables.

1.35.    *Exit Facility Agreement* means a credit agreement, dated on or after the Effective Date, by and among Reorganized Renewables and the lender or lenders party thereto, as the same may have been subsequently amended, restated, amended and restated, supplemented or otherwise modified from time to time, together with all instruments and agreements related thereto, the terms and conditions of which shall be acceptable to the First Lien Agent and the Required Lenders.

1.36.    *Exit Facility Lender* means the lender or lenders from time to time under the Exit Facility.

1.37.    *Exit Financing Commitment Letter* means a commitment letter, if any, providing for a senior secured credit facility of up to an aggregate principal amount equal to $25 million, the terms and conditions of which shall be acceptable to the First Lien Agent and the Required Lenders and a copy of which shall be included in the Plan Supplement.

1.38.    *Fee Claim* means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

1.39.    *Final Order* means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

1.40.    *First Lien Agent* means Credit Suisse AG, Cayman Islands Branch (formerly known as "Credit Suisse, Cayman Islands Branch"), as administrative and collateral agent under the First Lien Credit Agreement.

1.41.    *First Lien Credit Agreement* means that certain First Lien Credit Agreement, dated as of June 30, 2006, as amended, restated, supplemented or otherwise modified from time to time, among Intermediate, Renewables, the lenders party thereto, and Credit Suisse, Cayman Islands Branch, as administrative and collateral agent.

1.42.    *First Lien Credit Agreement Claims* means all Claims against the Debtors arising under or in connection with that certain First Lien Credit Agreement.

1.43.    *General Unsecured Claim* means an unsecured Claim that is not entitled to priority under section 507 of the Bankruptcy Code, including the claims of suppliers and other vendors, landlords with prepetition rent claims and/or claims based on the rejection of leases, litigation claimants to the extent not covered by insurance, parties to contracts with the Debtors that are being rejected, deficiency claims of secured creditors (other than the deficiency claims arising out of First Lien Credit Agreement Claims and Second Lien Credit Agreement Claims), and other general unsecured claimants.

1.44.    *Gold* means Hawkeye Gold, LLC.

1.45.    *HEH* means Hawkeye Energy Holdings, LLC.

1.46.    *Impaired* means, with reference to a Claim or Equity Interest, that the treatment of such Claim or Equity Interest under the Plan does not satisfy the requirements specified in either subsection 1124(1) or 1124(2) of the Bankruptcy Code.

1.47.    *Intercreditor Agreement* means an agreement, dated on or after the Effective Date, between and among the New Secured Term Loan Agent, the lenders under the New Secured Term Loan Agreement and the Exit Facility Lenders, if any, to be entered into if Reorganized Renewables enters into the Exit Facility.

1.48.    *Interim Compensation Order* means that certain order of the Bankruptcy Court allowing Professionals to seek interim compensation in accordance with the compensation procedures approved therein, as may have been modified by a Bankruptcy Court order approving the retention of the Professionals.

1.49.    *Intermediate* means Hawkeye Intermediate, LLC, a Delaware limited liability company.

1.50.    *LLC Agreement* means the limited liability company agreement dated as of the Effective Date, a substantially final form of which will be contained in the Plan Supplement, the terms of which shall be acceptable to the First Lien Agent and the Required Lenders.

1.51.    *Management Incentive Program* means that certain post-Effective Date Management Incentive Program, the terms of which plan shall be determined and implemented on or as soon as reasonably practicable after the Effective Date by the board of managers of Reorganized Renewables or any compensation committee thereof in its discretion.

1.52.    *New Membership Interests* means the membership interests of Reorganized Renewables issued under Section 5.3 of the Plan and governed by the LLC Agreement.

1.53.    *New Secured Term Loan Agreement* means the new secured term loan agreement, dated as of the Effective Date, with terms and conditions as set forth in the term sheet attached hereto as Exhibit A, a substantially final form of which will be included in the Plan Supplement, in form and substance acceptable to the First Lien Agent and the Required Lenders.

1.54.    *New Secured Term Loan Agent* means Credit Suisse, Cayman Islands Branch, the agent under the New Secured Term Loan Agreement, or such other party as is acceptable to the Required Lenders and Reorganized Renewables.

1.55.    *New Secured Term Loans* means newly issued subordinated secured term notes issued by Reorganized Renewables in the aggregate principal amount of $25 million, to be issued on the Effective Date, on such other terms and conditions set forth in the term sheet for the New Secured Term Loan Agreement; provided, however, that such New Secured Term Loans are subordinated to the Exit Facility, if any.

1.56.    *Other Priority Claim* means any Claim against any of the Debtors other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.57.    *Other Secured Claim* means a Secured Claim against the Debtors, other than a Priority Tax Claim and a First Lien Credit Agreement Claim.

1.58.    *Person* means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

1.59.    *Plan* means this joint chapter 11 plan of reorganization, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.60.    *Plan Supplement* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed no later than five (5) days prior to the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, as it may thereafter be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules,

comprising of, without limitation, the following: the (a) list of executory contracts to be rejected by the Debtors; (b) LLC Agreement; (c) New Secured Term Loan Agreement; (d) Exit Financing Commitment Letter, if any, (e) Amended Organizational Documents; (f) Amended DG Marketing Agreement; (g) Amended Ethanol Marketing Agreement; (h) Amended Management Agreement; and (i) designation of executive officers and the Board of Managers, as provided in Section 5.7 of the Plan.

1.61.    *Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.62.    *Professional* means an entity (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.63.    *Released Party* means (i) in their capacity as such, each current and former member of the board of managers of Intermediate and Renewables, (ii) each current officer of Intermediate and Renewables, (iii) Hawkeye Energy Holdings, LLC, as the sole member of Intermediate, (iv) Hawkeye Gold, LLC, (v) each direct and indirect member of Hawkeye Energy Holdings, LLC, including, without limitation, Putnam Investment Holdings, LLC, Putnam Investments Employees' Securities Company III LLC, THL Coinvestment Partners, L.P., THL Equity Advisors VI, LLC, THL Hawkeye Acquisition Partners, THL Hawkeye Acquisition Partners II, THL Hawkeye Acquisition Partners III, THL Hawkeye Blocker Corp., THL Hawkeye Blocker II Corp., THL Hawkeye Blocker III Corp., THL Hawkeye Blocker IV Corp., THL Hawkeye Blocker V Corp., THL Hawkeye Coinvest Partners, L.P., THL Hawkeye Equity Investors, L.P., Thomas H. Lee Equity Fund VI, L.P., Thomas H. Lee Parallel Fund VI, L.P., Thomas H. Lee Parallel (DT) Fund VI, L.P., (vi) each entity or person providing management services to a Debtor, including THL Managers VI, LLC, (vii) Thomas H. Lee Partners, L.P., (viii) the First Lien Agent, in its capacity as such, (ix) all holders of Claims who receive distributions under the Plan, and (x) with respect to each of the foregoing, each of their respective direct or indirect subsidiaries, current and former affiliates, current and former officers, directors, managers, members, partners, shareholders, employees, agents, representatives, financial advisors, professionals, accountants and attorneys, and each of their predecessors, successors, and assigns.

1.64.    *Renewables* means Hawkeye Renewables, LLC, a Delaware limited liability company.

1.65.    *Reorganized Renewables* means Renewables, on and after the Effective Date (including any successor corporation, partnership, or limited liability company by merger).

1.66.    *Required Lenders* means holders of, in the aggregate, a majority in principal amount outstanding of the First Lien Claims.

1.67.    *RSA* means that certain restructuring support agreement among the Debtors, the First Lien Agent, certain of the holders of First Lien Credit Agreement Claims, and the T.H. Lee Parties, dated as of November 24, 2009.

1.68.    *Schedules* means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time on or prior to the Confirmation Date.

1.69.     *Second Lien Agent* means Wilmington Trust Company, in its capacity as successor administrative and collateral agent under that certain second lien credit agreement dated as of June 30, 2006, as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, among Intermediate, Renewables, the lenders party thereto, and Credit Suisse, Cayman Islands Branch, as administrative and collateral agent

1.70.     *Second Lien Credit Agreement* means that certain second lien credit agreement dated as of June 30, 2006, as may be amended, restated, supplemented, or otherwise modified from time to time, among Intermediate, Renewables, the lenders party thereto, and Credit Suisse, Cayman Islands Branch, as administrative and collateral agent.

1.71.     *Second Lien Credit Agreement Claims* means all Claims against the Debtors arising under or in connection with the Second Lien Credit Agreement.

1.72.     *Secured Claim* means a Claim, the amount of which (i) has been determined by a Final Order to be secured pursuant to section 506(a) and, if applicable, section 1111 of the Bankruptcy Code or (ii) in the absence of such Final Order, has been agreed by the Debtors to be secured (as set forth in the Plan or otherwise).

1.73.     *T.H. Lee Parties* means Thomas H. Lee Partners, L.P. and its affiliates, and its affiliates' respective members, partners, shareholders, agents, professional advisors, representatives, directors, officers and employees, other than HEH, Gold, Intermediate and Renewables.

1.74.     *Unimpaired* means, with reference to a Claim or Equity Interest, that the treatment of such Claim or Equity Interest under the Plan satisfies the requirements specified in either subsection 1124(1) or 1124(2) of the Bankruptcy Code.

B.     **Rules of Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

SECTION 2.     **ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS**

2.1.     *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, the Debtors shall pay to such holder Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date or (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes Allowed; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtors, as debtors in possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors in the

ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

### 2.2. *Compensation and Reimbursement Claims.*

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), (3), (4), or (5) of the Bankruptcy Code shall (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) be paid in full from Reorganized Renewables's Cash on hand in such amounts as are allowed by the Bankruptcy Court (A) on the later of (x) the Effective Date, or (y) the date on which the order relating to any such Allowed Administrative Expense Claim is entered, or (B) on such other terms as may be mutually agreed on between the holder of such an Allowed Administrative Expense Claim and the Debtors or, on and after the Effective Date, Reorganized Renewables. Reorganized Renewables is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3. *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of Reorganized Renewables (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the (a) Effective Date or (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (ii) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years after the date of assessment of such Allowed Priority Tax Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

## SECTION 3.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan, and (iii) either deemed to accept or reject the Plan. A Claim or Equity Interest is designated in a particular class only to the extent it falls within the description of that class, and is classified in any other class to the extent that a portion thereof falls within the description of such other class.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1A<br>1B | Other Priority Claims | Unimpaired | No<br>(deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No<br>(deemed to accept) |

| 3A<br>3B<br>3C | First Lien Credit Agreement Claims | Impaired | Yes for Class 3A<br><br>No for Class 3B and 3C<br>(deemed to reject) |
| 4A<br>4B | Second Lien Credit Agreement Claims | Impaired | Yes for Class 4A<br><br>No for Class 4B<br>(deemed to reject) |
| 5A<br>5B | General Unsecured Claims | Impaired | No<br>(deemed to reject) |
| 6 | Equity Interests in Renewables | Impaired | No<br>(deemed to reject) |
| 7 | Equity Interests in Intermediate | Impaired | No<br>(deemed to reject) |

## SECTION 4.   TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1.   *Other Priority Claims (Class 1)*.

(a)     *Classification:* Class 1A consists of Other Priority Claims against Renewables. Class 1B consists of Other Priority Claims against Intermediate.

(b)     *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim (i) has been paid by the Debtors, in whole or in part, prior to the Effective Date or (ii) agrees to a less favorable treatment, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for such Other Priority Claim, Cash in the full amount of such Allowed Other Priority Claim.

(c)     *Voting:* Class 1 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 4.2.   *Other Secured Claims (Class 2)*.

(a)     *Classification:* Class 2 consists of the Other Secured Claims.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2.

(b)     *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, at the option of the Debtors and Reorganized Renewables (i) each Allowed Other Secured Claim shall be reinstated and Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, or (ii) each holder of an Allowed Other Secured Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Other Secured Claim, either (w) Cash in the full amount of such Allowed Other Secured Claim, including any postpetition interest accrued pursuant to section 506(b) of the Bankruptcy Code, (x) the proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's secured interest in such collateral, (y) the collateral securing such Allowed Other Secured Claim

11

and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (z) such other distribution as necessary to satisfy the requirements of section 1129 of the Bankruptcy Code.

(c)     *Voting:*  Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

### 4.3.     *First Lien Credit Agreement Claims (Classes 3A, 3B and 3C).*

(a)     *Classification:*  Class 3A consists of the portion of the First Lien Credit Agreement Claims against Renewables that are Secured Claims.  Class 3B consists of the deficiency portion of the First Lien Credit Agreement Claims against Renewables.  Class 3C consists of the First Lien Credit Agreement Claims against Intermediate.

(b)     *Allowance:*  The First Lien Credit Agreement Claims shall be Allowed and deemed to be Allowed in an amount of no less than (i) $533,545,500.50 on account of outstanding term loans and revolving loans made under the First Lien Credit Agreement (plus accrued and unpaid interest), plus additional fees, charges and expenses due and owing under the First Lien Credit Agreement and (ii) $11,191,466 on account of obligations arising from the termination of certain Hedging Agreements (as defined in the First Lien Credit Agreement) (plus accrued and unpaid interest), plus additional fees, charges and expenses due and owing under the First Lien Credit Agreement.

(c)     *Treatment*:  On the Effective Date, each holder of a Class 3A Claim shall receive, in full and final satisfaction of its First Lien Credit Agreement Claim, its pro rata share of (i) the New Secured Term Loans and (ii) the Class A Units, the Class B Units (which will only be issued if Class 4A votes to accept the Plan), and the Class C Units; provided, however, that (X) the Class C Units shall be transferred to the holders of Claims in Class 4A, and (Y) if Class 4A votes to accept the Plan, the Class B Units shall be issued to the holders of Class 3A Claims and then transferred to the holders of Claims in Class 4A.  The holders of Claims in Classes 3B and 3C shall not receive any property under the Plan with respect to such Claims.

(d)     *Voting:*  Holders of First Lien Credit Agreement Claims are Impaired.  Each holder of a First Lien Credit Agreement Claim in Class 3A is entitled to vote to accept or reject the Plan. Holders of Claims in Classes 3B and 3C will receive no property under the Plan and therefore are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, holders of Claims in Classes 3B and 3C are not entitled to vote to accept or reject the Plan.

### 4.4.     *Second Lien Credit Agreement Claims (Classes 4A and 4B).*

(a)     *Classification:*  Class 4A consists of Second Lien Credit Agreement Claims against Renewables.  Class 4B consists of the Second Lien Credit Agreement Claims against Intermediate.

(b)     *Allowance:*  The Second Lien Credit Agreement Claims shall be Allowed and deemed to be Allowed in an amount of no less than $150,000,000.00 on account of outstanding term loans made under the Second Lien Credit Agreement (plus accrued and unpaid interest), plus additional fees, charges and expenses due and owing under the Second Lien Credit Agreement.

12

(c)    *Treatment*: Holders of Second Lien Credit Agreement Claims shall receive, on or as soon as practicable after the Effective Date, in full and final satisfaction of the Second Lien Credit Agreement Claims, their pro rata share of the Class B Units and the Class C Units from the holders of Claims in Class 3A; provided, however, if Class 4A votes to reject the Plan, the holders of the Class 4A Claims shall not receive the Class B Units.   The holders of Claims in Class 4B shall not receive any property under the Plan with respect to such Claims.

(d)    *Voting*: Holders of Second Lien Credit Agreement Claims are Impaired. Therefore, each holder of a Second Lien Credit Agreement Claim is entitled to vote to accept or reject the Plan.  Holders of Claims in Class 4B will receive no property under the Plan and therefore are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, holders of Claims in Class 4B are not entitled to vote to accept or reject the Plan.

   4.5.    *General Unsecured Claims (Classes 5A and 5B).*

(a)    *Classification:* Class 5A consists of General Unsecured Claims against Renewables.  Class 5B consists of General Unsecured Claims against Intermediate.

(b)    *Treatment*: Holders of General Unsecured Claims shall receive no property under the Plan and such Unsecured Claims shall be cancelled as of the Effective Date.

(c)    *Voting*: Holders of General Unsecured Claims are Impaired.  Therefore, each holder of a General Unsecured Claim is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

   4.6.    *Equity Interests in Renewables (Class 6).*

(a)    *Classification:* Class 6 consists of the Equity Interests in Renewables.

(b)    *Treatment*: Holders of Equity Interests in Class 6 shall receive no property under the Plan and such Equity Interests shall be cancelled as of the Effective Date.

(c)    *Voting*: Holders of Equity Interests in Renewables are Impaired.  Therefore, holders of Equity Interests in Renewables are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and Holders of Equity Interests in Renewables are not entitled to vote to accept or reject the Plan.

   4.7.    *Equity Interests in Intermediate (Class 7).*

(a)    *Classification:* Class 7 consists of all Equity Interests in Intermediate.

(b)    *Treatment*: Holders of Equity Interests in Class 7 shall receive no property under the Plan and such Equity Interests shall be cancelled as of the Effective Date.

(c)    *Voting*: Holders of Equity Interests in Intermediate are Impaired.  Therefore, holders of Equity Interests in Intermediate are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and holders of Equity Interests in Intermediate are not entitled to vote to accept or reject the Plan.

SECTION 5.    **MEANS FOR IMPLEMENTATION**

5.1.    *Exit Facility.*

On the Effective Date, Reorganized Renewables shall be authorized, but not required, to enter into the Exit Facility, the terms and conditions of which shall be acceptable to the First Lien Agent and the Required Lenders. Confirmation shall be deemed approval of the Exit Facility, if any, (including the transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by Reorganized Renewables in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) and authorization for Reorganized Renewables to enter into and execute the Exit Facility, if any, and such other documents as the Exit Facility Lenders may require, subject to such modifications as Reorganized Renewables may deem to be reasonably necessary to consummate the Exit Facility with the consent of the First Lien Agent and the Required Lenders. Reorganized Renewables may use the Exit Facility for any purpose permitted thereunder, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs.

Upon the date the Exit Facility Agreement, if any, becomes effective, (i) the Debtors and Reorganized Renewables are authorized to execute and deliver the Exit Facility Agreement and all other related agreements, documents or instruments to be executed or delivered in connection therewith (collectively, the "Exit Facility Documents") and perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages or indemnities, (ii) the Exit Facility Documents shall constitute the legal, valid and binding obligations of Reorganized Renewables which are parties thereto, enforceable in accordance with their respective terms, and (iii) no obligation, payment, transfer or grant of security under the Exit Facility Documents shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim. The Debtors and Reorganized Renewables, as applicable, and the other persons granting any liens and security interests to secure the obligations under the Exit Facility Documents are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence of perfection of such liens and security interests under the provisions of any applicable federal, state, provincial or other law (whether domestic or foreign) (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

Upon the execution of the Exit Facility Agreement, the Exit Facility Lenders, if any, and holders of the New Secured Term Loans will enter into an Intercreditor Agreement, in form and substance acceptable to the lenders under the Exit Facility, the New Secured Term Loan Agent and the Required Lenders.

5.2.    *Settlement of Certain Claims.*

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one Class shall be

subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, or other similar inter-creditor arrangement.

### 5.3. *Issuance of New Membership Interests.*

The issuance of the New Membership Interests by Reorganized Renewables is authorized without the need for any further corporate action or without any further action by a holder of Claims or Interests.

The New Membership Interests shall consist of the Class A Units, the Class B Units (provided that Class 4A votes to accept the Plan), the Class C Units and the Class D Units. At the close of business on the Effective Date, the Class A and Class C Units shall be issued to the holders of the Class 3A First Lien Credit Agreement Claims. At the close of business on the Effective Date, if Class 4A votes to accept the Plan, the Class B Units shall be issued to the holders of the Class 3A First Lien Credit Agreement Claims. The Class D Units, if any, shall be issued on account of the Management Incentive Program.

All of the New Membership Interests issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable. Each distribution and issuance referred to in Section 4 hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each entity receiving such distribution or issuance.

Upon the Effective Date, the LLC Agreement shall be deemed to become valid, binding and enforceable in accordance with its terms, and each holder of New Membership Interests shall be bound thereby, in each case, without need for execution by any party thereto other than Reorganized Renewables.

### 5.4. *New Secured Term Loans.*

The incurrence of obligations under the New Secured Term Loans by Reorganized Renewables is authorized without the need for any further corporate action or without any further action by a holder of Claims or Interests. On the Effective Date and subsequent to the issuance of the New Membership Interests, Reorganized Renewables, the New Secured Term Loan Agent and holders of the First Lien Credit Agreement Claims will be deemed to execute the New Secured Term Loan Agreement.

Upon the Effective Date, the Intercreditor Agreement, if any, shall be deemed to become valid, binding and enforceable in accordance with its terms, and each lender under the New Secured Term Loan Agreement and the Exit Facility Credit Agreement shall be bound thereby.

### 5.5. *Authorization of Certain Agreements.*

On the Effective Date, Reorganized Renewables is authorized and directed, without any requirement of further action by the equity holders or board of managers of the Debtors, to perform under (i) the Amended DG Marketing Agreement, (ii) the Amended Ethanol Marketing Agreement, and (iii) the Amended Management Agreement, which shall supersede and replace all existing agreements between Renewables, HEH and Gold.

### 5.6.    *Cancellation of Agreements and Securities.*

Except (i) for purposes of evidencing a right to distributions under the Plan, (ii) with respect to executory contracts and unexpired leases assumed by the Debtors, or (iii) otherwise as provided herein, all the agreements and other documents evidencing the Claims, Equity Interests, or rights of any holder of a Claim or Equity Interest Impaired under the Plan shall be cancelled on the Effective Date, provided, however, that the credit agreement governing the First Lien Credit Agreement Claims shall continue in effect solely for the purposes of (a) allowing the First Lien Agent to make distributions on account of Class 3 and to perform such other necessary administrative functions with respect thereto, and (b) permitting such parties to maintain any rights or liens they may have for fees, costs, and expenses thereunder.

### 5.7.    *Managers and Executive Officers.*

On the Effective Date, the term of each member of the current Boards of Managers of the Debtors shall automatically expire. The initial Board of Managers of Reorganized Renewables on and after the Effective Date shall consist of 5 members which shall be persons designated by the First Lien Agent at the direction of the Required Lenders. The persons serving as executive officers of Renewables immediately before the Effective Date shall maintain their current positions after the Effective Date.

### 5.8.    *Section 1145 Exemption.*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any New Membership Interests and any and all settlement agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of the New Membership Interests. In addition, under section 1145 of the Bankruptcy Code, any New Membership Interests and any and all settlement agreements incorporated therein will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of any the New Membership Interests or instruments; (3) the restrictions, if any, on the transferability of the New Membership Interests and instruments; and (4) applicable regulatory approval.

### 5.9.    *Listing of New Membership Interests.*

Reorganized Renewables shall not be obligated to list the New Membership Interests on a national securities exchange. In order to ensure that Reorganized Renewables will not become subject to the reporting requirements of the Exchange Act except in connection with a public offering, the New Membership Interests will be subject to certain trading restrictions to limit the number of record holders thereof as shall be more fully described in the Plan Supplement.

### 5.10.    *Merger or Liquidation of Intermediate.*

Prior to the close of business on the Effective Date, without any requirement of further action by the equity holders or board of managers of the Debtors, Intermediate shall either liquidate or merge with and into Reorganized Renewables, with Reorganized Renewables being the surviving entity, at the option of the First Lien Agent with the consent of the Required Lenders.

5.11. *Continued Corporate Existence of Renewables*.

Renewables will, as Reorganized Renewables, continue to exist after the Effective Date as a separate limited liability company with all the powers of a limited liability company under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution, or otherwise) under applicable state law.

5.12. *Effectuating Documents; Further Transactions*.

On the Effective Date or as soon as reasonably practicable thereafter, Reorganized Renewables may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that Reorganized Renewables determines are necessary or appropriate.

5.13. *Company Action*.

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) adoption or assumption, as applicable, of executory contracts and unexpired leases, (ii) selection of the managers and officers for Reorganized Renewables, (iii) the execution and entry into the Exit Facility Agreement, if any, (iv) the distribution of the New Membership Interests, (v) the execution and entry into the New Secured Term Loan Agreement, and (vi) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or Reorganized Renewables, and any corporate action required by the Debtors or Reorganized Renewables in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, managers or officers of the Debtors or Reorganized Renewables. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or Reorganized Renewables (including, any vice-president, president, chief executive officer, treasurer or chief financial officer of any Debtor or Reorganized Renewables), as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of Reorganized Renewables, including (i) the Exit Facility, if any, (ii) Amended Organizational Documents, (iii) the New Secured Term Loan Agreement and (iv) any and all other agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section shall be effective notwithstanding any requirements under nonbankruptcy law.

Reorganized Renewables shall adopt the Amended Organizational Documents and shall file such documents with the Secretary of State of Delaware. In addition, on or about the Effective Date, pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, the organizational documents for the Debtors, shall be amended, subject to the consent of the First Lien Agent and Required Lenders, as necessary to satisfy the provisions of the Bankruptcy Code and shall include, among other things, (i) a provision prohibiting the issuance of non-voting equity securities and (ii) a provision setting forth an appropriate distribution of voting power among classes of equity securities

possessing voting power. On the Effective Date, the board of managers for Reorganized Renewables shall be deemed to have adopted the restated LLC Agreement for Reorganized Renewables.

### 5.14. *Exemption from Certain Fees and Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### 5.15. *Sources of Consideration for Plan Distributions.*

All consideration necessary for Reorganized Renewables to make payments or distributions pursuant hereto shall be obtained from the Exit Facility, the New Secured Term Loans, the issuance of the New Membership Interests, or Cash from operations.

### 5.16. *Preservation of Rights of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Section 11 of the Plan, Reorganized Renewables shall retain and may enforce all rights to commence and pursue, as appropriate, any and all causes of action, whether arising before or after the Commencement Date, and Reorganized Renewables's rights to commence, prosecute, or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date. Reorganized Renewables may pursue such causes of action, as appropriate, in accordance with the best interests of Reorganized Renewables. No entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any cause of action against them as any indication that the Debtors or Reorganized Renewables, as applicable, will not pursue any and all available causes of action against them. Unless any causes of action against any person or entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors and Reorganized Renewables expressly reserve all causes of action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such causes of action upon, after, or as a consequence of the confirmation or the occurrence of the Effective Date.

Reorganized Renewables reserves and shall retain the foregoing causes of action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any causes of action that the Debtors may hold against any entity shall vest in Reorganized Renewables. Reorganized Renewables, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such causes of action. Reorganized Renewables shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such causes of action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

5.17.   *Consistent Tax Reporting.*

(i)    All parties (including Reorganized Renewables, the holders of equity interests in the Debtors, and the holders of New Membership Interests) shall report for all federal income tax purposes in a manner consistent with the form and timing of (x) the merger or liquidation of Intermediate described in Section 5.10, (y) the subsequent issuance of New Membership Interests described in Section 5.3 and (z) the subsequent issuance of the New Secured Term Loans described in Section 5.4.

(ii)    As soon as possible after the Effective Date, but in no event later than thirty (30) days thereafter, the board of managers of Reorganized Renewables will determine the value of the underlying assets of Renewables as of the Effective Date (as appropriate for federal income tax purposes) and the portions of such value which are allocable, respectively, to the New Membership Interests and the New Secured Term Loans. Such allocation will take into account the relative fair market values of the New Membership Interests and the New Secured Term Loans. The board of managers of Reorganized Renewables will apprise, in writing, all parties of such valuation and allocation. The valuation and allocation shall be used consistently by all parties (including Reorganized Renewables, the holders of membership interests in the Debtors, and the holders of New Membership Interests) for all federal income tax purposes.

(iii)    Consistent with the intent that Reorganized Renewables shall initially be treated as a partnership for federal income tax purposes, no election shall be made by Reorganized Renewables to be taxed as a corporation for federal income tax purposes that is effective on or prior to the Effective Date.

## SECTION 6.   **DISTRIBUTIONS**

6.1.   *Distribution Record Date.*

At the close of business on the Confirmation Date, the transfer ledgers for holders of the First Lien Credit Agreement Claims and Second Lien Credit Agreement Claims shall be closed, and there shall be no further changes in the record holders of such debt. Reorganized Renewables and the Disbursing Agent, if any, shall have no obligation to recognize any transfer of any such debt occurring after the Confirmation Date and shall be entitled instead to recognize and deal for all purposes under the Plan with only those record holders listed on the transfer ledgers as of the close of business on the Confirmation Date.

6.2.   *Date of Distributions.*

Except as otherwise provided herein, distributions and deliveries under the Plan with respect to Allowed Claims shall be made before the close of business on the Effective Date or as soon thereafter as is practicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.3.   *Disbursing Agent.*

On account of the First Lien Credit Agreement Claims and the Second Lien Credit Agreement Claims, all distributions under the Plan shall be made by Reorganized Renewables as Disbursing Agent or such other entity designated by Reorganized Renewables as a Disbursing Agent on

the Effective Date. If the Disbursing Agent is an independent third party designated by Reorganized Renewables to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from Reorganized Renewables on terms acceptable to Reorganized Renewables. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by Reorganized Renewables.

6.4.    *Powers of Disbursing Agent.*

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (ii) make all distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court or pursuant to the Plan.

6.5.    *Delivery of Distributions.*

Except as otherwise provided herein, subject to Bankruptcy Rule 9010, Reorganized Renewables shall make distributions to holders of Allowed Claims at the address for each holder indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of Reorganized Renewables; and, provided further, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any proof of claim filed by that holder. In the event that any distribution to any holder is returned as undeliverable, the First Lien Agent shall use reasonable efforts to assist Reorganized Renewables to determine the current address of such holder, but no distribution to such holder shall be made unless and until Reorganized Renewables has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to Reorganized Renewables, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

6.6.    *Manner of Payment under Plan.*

At the sole option of Reorganized Renewables, any Cash payment to be made hereunder may be made by a check, wire transfer, or such other commercially reasonable manner as the payor shall determine in its sole discretion, or as otherwise required or provided in applicable agreements.

6.7.    *Withholding and Reporting Requirements.*

In connection with the Plan and all distributions thereunder, the Disbursing Agent shall, to the extent applicable as determined in its sole discretion, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.

6.8. *Setoffs*.

The Debtors and Reorganized Renewables may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtors or Reorganized Renewables may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Renewables of any such claim the Debtors or Reorganized Renewables may have against the holder of such Claim. Nothing in the Plan shall be deemed to expand rights to setoff under applicable non-bankruptcy law. Notwithstanding the foregoing, Reorganized Renewables shall be deemed to waive and shall have no right of setoff or recoupment against the holders of the First Lien Credit Agreement Claims.

6.9. *Distributions after Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.10. *Allocation of Distributions between Principal and Interest*.

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

SECTION 7.   **PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS**

7.1. *Objections to Claims*.

The Debtors or Reorganized Renewables shall be entitled to object to Claims. Any objections to Claims shall be served and filed on or before the later of (i) one hundred twenty (120) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

7.2. *Payments and Distributions with Respect to Disputed Claims*.

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.3. *Estimation of Claims*.

The Debtors or Reorganized Renewables may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the

amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, Reorganized Renewables may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 7.4. *Distributions Relating to Disputed Claims.*

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, such holder's pro rata portion of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the holders of Allowed Claims in the same class.

### 7.5. *Disallowed Claims.*

All Claims held by Persons or entities against whom or which any Debtor or Reorganized Renewables has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed not Allowed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or Reorganized Renewables from such party have been paid.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE**

## SECTION 8.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1. *General Treatment.*

Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered in connection with the Plan, as of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties are hereby assumed except for an executory contract or unexpired lease that (i) previously has been assumed or rejected pursuant to Final Order, (ii) previously expired or terminated by its own terms, (iii) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts scheduled in the Plan Supplement, which schedule shall be in form and substance acceptable to the First Lien Agent with the consent of the Required Lenders or (iv) is the subject of a separate motion to assume or reject such executory contract or unexpired lease filed by the Debtors under section 365 of the Bankruptcy Code prior to the Confirmation Date.

8.2.    *T.H. Lee Agreements.*

On the Effective Date, (i) any and all agreements between the Debtors and the T.H. Lee Parties shall be terminated and (ii) the T.H. Lee Parties shall be deemed to have waived any accrued and unpaid management fees and/or other claims against any of the Debtors.

8.3.    *Cure of Defaults.*

Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 8.1 hereof, within thirty (30) days after the Confirmation Date, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, file and serve a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed. The parties to such executory contracts or unexpired leases to be assumed by the Debtors shall have fifteen (15) days from service to object to the cure amounts listed by the Debtors. If there are any objections filed, the Bankruptcy Court shall hold a hearing. The Debtors shall retain their right to reject any of their executory contracts or unexpired leases, including contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults.

8.4.    *Rejection Claims.*

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or Reorganized Renewables, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served on counsel for the Debtors and Reorganized Renewables on or before the date that is thirty (30) days after the Confirmation Date or such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults. Rejection Claims will be treated as General Unsecured Claims under the Plan.

8.5.    *Assignment.*

On and after the Effective Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors and Reorganized Renewables may transfer and assign any of their executory contracts or unexpired leases that have not been rejected without any further act, authority, or notice, subject to the consent of the First Lien Agent and the Required Lenders. Any executory contract or unexpired lease so transferred and assigned shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in sections 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. Any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition on any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

### 8.6.    *Survival of the Debtors' Indemnification Obligations.*

Any obligations of the Debtors pursuant to any separate indemnification agreements with the managers and officers serving on the Commencement Date or pursuant to their operating agreement or other organizational documents to indemnify managing members, members of the board of managers and officers serving on the Commencement Date with respect to actions, suits, and proceedings against such parties, shall not be discharged or impaired by confirmation of the Plan and such obligations shall be deemed and treated as executory contracts assumed by the Debtors hereunder and shall continue as obligations of Reorganized Renewables. The Debtors shall reject all such agreements that apply to managers no longer serving in their capacity as such as of the Commencement Date.

### 8.7.    *Survival of Other Employment Arrangements.*

On and after the Effective Date, Reorganized Renewables may:  (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in each case to the extent disclosed in the Disclosure Statement or the first day pleadings, for, among other things, compensation, health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the managers, officers, and employees of any of the Debtors who served in such capacity at any time and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Commencement Date; provided, however, that the Debtors' or Reorganized Renewables performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan. Nothing in the Plan shall limit, diminish, or otherwise alter Reorganized Renewables's defenses, claims, causes of action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

### 8.8.    *Insurance Policies.*

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the respective Debtors and Reorganized Renewables and shall continue in full force and effect.  All other insurance policies shall revest in Reorganized Renewables.

## SECTION 9.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

### 9.1.    *Conditions Precedent to Confirmation.*

It shall be a condition to confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 9.4 hereof:

(a)    The Confirmation Order, in form and substance satisfactory to the Debtors, the First Lien Agent, and the Required Lenders, shall have been entered and shall be in full force and effect and there shall not be a stay or injunction in effect with respect thereto;  and

(b)      The Plan, the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance acceptable to the First Lien Agent and the Required Lenders, without prejudice to Reorganized Renewables's rights under the Plan to alter, amend, or modify certain of the schedules, documents, and exhibits contained in the Plan Supplement, subject to the consent of the First Lien Agent and the Required Lenders.

Notwithstanding anything to the contrary included herein and for the avoidance of doubt, neither the effectiveness of any new Exit Facility nor the existence of any commitment to provide such Exit Facility shall constitute a condition precedent to the confirmation of the Plan.

### 9.2.    *Conditions Precedent to Occurrence of the Effective Date.*

It shall be a condition to the occurrence of the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 9.4 hereof:

(a)      The Confirmation Order, in form and substance satisfactory to the Debtors, the First Lien Agent, and the Required Lenders, shall have been entered at least fourteen (14) days prior to the Effective Date and shall be in full force and effect and there shall not be a stay or injunction in effect with respect thereto;

(b)      The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are necessary to implement the Plan and required by law, regulation, or order;

(c)      Reorganized Renewables shall have entered into the New Secured Term Loan Agreement; and

(d)      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

Notwithstanding anything to the contrary included herein and for the avoidance of doubt, neither the effectiveness of any new Exit Facility nor the existence of any commitment to provide such Exit Facility shall constitute a condition precedent to the consummation of the Plan.

### 9.3.    *Effect of Failure of Conditions to Effective Date.*

If the conditions precedent specified in Section 9.2 have not been satisfied or waived (i) the Confirmation Order shall be vacated, (ii) no distributions under the Plan shall be made, (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) all the Debtors' obligations with respect to the Claims and the Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

9.4.    *Waiver of Conditions.*

Each of the conditions set forth in Section 9.1 and 9.2 may be waived in whole or in part by the Debtors, with the consent of the First Lien Agent and the Required Lenders, without any notice to other parties in interest or the Bankruptcy Court and without a hearing.

9.5.    *Effective Date.*

The Effective Date shall be a Business Day, specified by the Debtors, that is no more than 5 days after the day on which all of the conditions specified in Sections 9.1 and 9.2 hereof have been satisfied or waived.

## SECTION 10.  ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

10.1.    *Final Fee Applications.*

All final requests for payment of Claims of a Professional shall be filed no later than thirty (30) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Claims shall be determined by the Bankruptcy Court.

10.2.    *Payment of Interim Amounts.*

Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the Interim Compensation Order.

10.3.    *Bar Date for Administrative Expense Claims.*

Except as otherwise provided herein, unless otherwise previously filed, requests for payment of Administrative Expense Claims must be filed and served on Reorganized Renewables pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Bar Date. Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims that do not file and serve such a request by the Administrative Expense Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claims against the Debtors or Reorganized Renewables or their estate and such Administrative Expense Claims shall be deemed discharged as of the Effective Date. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Section 11.7 hereof. Objections to such requests must be filed and served on Reorganized Renewables and the requesting party by the later of (a) sixty (60) days after the Effective Date and (b) thirty (30) days after the filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by the Bankruptcy Court and/or on motion of a party in interest approved by the Bankruptcy Court.

10.4.    *Bar Date for Professional Fee Claims.*

Professionals or other entities asserting a Fee Claim for services rendered before the Confirmation Date must file and serve on Reorganized Renewables and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than the Administrative Bar Date; provided that

Reorganized Renewable shall pay professionals or other entities in the ordinary course of business for any work performed after the Confirmation Date. Objections to any Fee Claim must be filed and served on Reorganized Renewables and the requesting party by the later of (a) sixty (60) days after the Effective Date or (b) thirty (30) days after the filing of the applicable request for payment of the Fee Claims.

10.5. *Post-Effective Date Fees and Expenses.*

Except as otherwise specifically provided in the Plan, from and after the Effective Date, Reorganized Renewables shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred by Reorganized Renewables. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Reorganized Renewables may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## SECTION 11.  EFFECT OF CONFIRMATION

11.1. *Vesting of Assets.*

On the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Estates shall vest in Reorganized Renewables free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided herein. Reorganized Renewables may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

11.2. *Discharge of Claims and Termination of Equity Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Equity Interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Commencement Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and causes of action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a proof of claim or interest based upon such Claim, debt, right, or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Equity Interest based upon such Claim, debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Equity Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

11.3.    *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

11.4.    *Releases.*

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party and any person seeking to exercise the rights of the Debtors' estates, including, without limitation, the Debtors and any successor to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to unconditionally, forever release, waive, and discharge each other Released Party, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever in connection with or related in any way to the Debtors, the operation of the Debtors' businesses, the incurrence by the Debtors of any indebtedness, the Chapter 11 Cases, or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; provided, however, that the foregoing shall not operate as a waiver or release from any causes of action based solely on intentional fraud or criminal misconduct, in each case as determined by a final order entered by a court of competent jurisdiction; provided, further, that the foregoing shall not operate as a release, waiver or discharge of any unfulfilled express contractual obligation of Gold, Renewables or Reorganized Renewables arising prior to the Effective Date pursuant to any accepted purchase order for ethanol or distiller's grains.**

11.5.    *Exculpation.*

Except as otherwise specifically provided in the Plan, the Plan Supplement or related documents, the Exculpated Parties shall neither have, nor incur any liability to any entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to the Chapter 11 Cases or formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order to have constituted intentional fraud, gross negligence, or willful misconduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan.

11.6.    *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date: (i) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (ii) the Debtors and each of their respective managers,

officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any New Membership Interests, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any New Membership Interests.

11.7. *Injunction.*

**Except as otherwise expressly provided in the Plan, the Plan Supplement or related documents, or for obligations issued pursuant to the Plan, all entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Section 11.4, discharged pursuant to Section 11.2, or are subject to exculpation pursuant to Section 11.5 are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against such entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such entities or the property or estate of such entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such entities or against the property or estate of such entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a proof of claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

11.8. *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to Reorganized Renewables and its successors and assigns.

SECTION 12. **RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)    to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the disclosure statement for the Plan or Reorganization, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)    to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(k)    to hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code;

(l)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(o)     to enter a final decree closing the Chapter 11 Cases;

(p)     to recover all assets of the Debtors and property of the Estates, wherever located; and

(q)     to hear and determine any rights, Claims, or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 13.  **MISCELLANEOUS PROVISIONS**

### 13.1.  *Payment of Statutory Fees.*

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 13.2.  *Payment of Fees and Expenses of the Prepetition Agents.*

Reorganized Renewables shall promptly pay in Cash in full reasonable and documented fees and expenses incurred by (i) the First Lien Agent in connection with the restructuring described herein, including, without limitation, the fees and expenses of Akin Gump Strauss Hauer & Feld LLP, one law firm to serve as local counsel to the First Lien Agent, and Capstone Advisory Group, LLC, as counsel and financial advisor to the First Lien Agent, respectively and (ii) the Second Lien Agent, however, only to the extent such fees and expenses are incurred in connection with administering the distributions under the Plan for holders of Second Lien Credit Agreement Claims.  All amounts distributed and paid to the foregoing parties pursuant to the Plan shall not be subject to setoff, recoupment, reduction or allocation of any kind and shall not require the filing or approval of any fee application.

### 13.3.  *Payment of Fees and Expenses of the T.H. Lee Parties.*

Reorganized Renewables shall promptly pay in Cash in full reasonable and documented fees and expenses incurred in connection with these Chapter 11 Cases by Ropes & Gray LLP, as counsel to the T.H. Lee Parties and such other professionals retained by the T.H. Lee Parties to represent its interests in these Chapter 11 Cases (the "T.H. Lee Professionals"), provided, however, that payment of such fees and expenses incurred by the T.H. Lee Professionals shall not exceed $150,000, in the aggregate.  All amounts distributed and paid to the foregoing parties pursuant to the Plan shall not be subject to setoff, recoupment, reduction or allocation of any kind and shall not require the filing or approval of any fee application.

### 13.4.  *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.5.  *Amendments.*

(a)     *Plan Modifications.*  With the consent of the First Lien Agent and the Required Lenders, the Plan may be amended, modified, or supplemented by the Debtors or Reorganized Renewables in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In

addition, after the Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b) *Other Amendments*. Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan, with the consent of the First Lien Agent and the Required Lenders, without further order or approval of the Bankruptcy Court.

13.6. *Request for Expedited Determination of Taxes.*

Reorganized Renewables shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns (other than federal income tax returns) filed by it, or to be filed by it, for any and all taxable periods ending after the Commencement Date through the Effective Date.

13.7. *Effectuating Documents and Further Transactions.*

Each of the officers of Reorganized Renewables is authorized, in accordance with his or her authority under the resolutions of the applicable board of managers, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.8. *Revocation, Withdrawal, or Non-Consummation of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan, at any time prior to the Confirmation Date and to file other plans of reorganization. If the Debtors revoke or withdraw the Plan, the Confirmation Order is not entered, or consummation of the Plan does not occur, (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

13.9. *Severability*.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the consent of the First Lien Agent and the Required Lenders), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan or Reorganization, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.10.  *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

13.11.  *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.12.  *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.13.  *Binding Effect.*

The Plan shall be binding on and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and each of their respective successors and assigns, including, without limitation, Reorganized Renewables, and all other parties in interest in the Chapter 11 Cases.

13.14. *Notices*.

All notices, requests, or demands to or on the Debtors or Reorganized Renewables shall be (i) in writing, (ii) served by certified mail (return receipt requested), hand delivery, overnight delivery service, first class mail, or facsimile transmission, and, (iii) unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

For the Debtors:

HAWKEYE RENEWABLES, LLC
21050 140th Street
Iowa Falls, IA 50126
Attn:  J.D. Schlieman
        Tim Callahan
Telephone:
Telecopier:  (641) 648-8925

- and -

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Attn:  Michael F. Walsh, Esq.
Telephone:  (212) 310-8000
Telecopier:  (212) 310-8007

- and -

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Mark D. Collins
Telephone: (302) 651-7700
Telecopier:

For the First Lien Agent:

CREDIT SUISSE
Eleven Madison Avenue
New York, NY 10010
Attn: Didier Siffer and Mary Haile
Telephone: (212) 325-7418, (212) 538-0457
Telecopier: (212) 743-3878

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park

New York, NY 10036
Attn:  Michael S. Stamer, Esq.
Telephone: 212.872.1000
Telecopier: 212.872.1002

       -and-

Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Attn:  Scott L. Alberino, Esq.
Telephone: 202. 887.4000
Telecopier: 202. 887.4288

Dated:    November 24, 2009
          Wilmington, Delaware

Respectfully submitted,

INTERMEDIATE ON BEHALF OF ITSELF AND RENEWABLES

By:        /s/ *Bruce Rastetter*
Name:  Bruce Rastetter
Title:    Chief Executive Officer

## EXHIBITS AND SCHEDULES

### TO THE PLAN

**Exhibit A**

**New Secured Term Loan Agreement Term Sheet**

## NEW SUBORDINATED SECURED TERM LOANS

### $25,000,000

| | |
|---|---|
| **Borrower:** | Reorganized Renewables[1] ("Borrower") |
| **Administrative and Collateral Agent:** | Credit Suisse or such other institution as determined by holders of a majority in principal amount of First Lien Claims. |
| **Loans:** | Term loans (the "Loans") in aggregate principal amount equal to $25,000,000.  Holders of the Loans shall be referred to herein as the "Lenders". |
| **Maturity:** | The sixth anniversary of the closing date of the Loans. |
| **Interest Rates:** | Interest on the Loans will be paid quarterly in arrears, will be calculated on a 360-day basis, and will accrue at the Applicable Rate.<br><br>At Borrower's election, interest payments may be made in cash or, in lieu thereof, in the form of additional principal on the Loans.<br><br>For purposes hereof, "Applicable Rate" means (a) a rate equal to 12.0% per annum or (b) with respect to payments in kind, a rate equal to 15.0% per annum; *provided*, that in any event, upon the occurrence and during the continuance of an event of default, the Loans will bear interest at an additional 2.0% per annum. |
| **Ranking:** | The Loans will be subordinated in right of payment to all other senior debt of Borrower, including the Exit Facility (defined below). |
| **Security:** | The obligations of Borrower in respect of the Loans shall be secured by a second-priority perfected security interest in substantially all of such party's tangible and intangible assets (including, without limitation, intellectual property and deposit accounts of Borrower). |
| **Mandatory Prepayments:** | To the extent not required to be paid under the Exit Facility, the following amounts shall be applied to prepay the Loans: |
| | • 100% of the net proceeds from any issuance of equity, capital contributions or incurrence of certain indebtedness by Borrower, subject to certain customary exceptions to be agreed upon; and |
| | • 100% of the net proceeds of any sale or other disposition (including as a result of casualty or condemnation and including any purchase price refund in respect of any acquisition) by Borrower of any assets, subject to customary exceptions to be agreed upon. |
| **Optional Prepayments:** | Subject to the concurrent payment of the Applicable Premium, Borrower may prepay the Loans, together with the accrued but unpaid interest thereon to the |

---

[1] All capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan.

|  | date of such prepayment, if any, in whole or in part, from time to time and in minimum amounts to be agreed upon. Optional prepayments of the Loans shall be applied ratably in accordance with the then outstanding amounts thereof and may not be reborrowed. |
|  | For purposes hereof, the "<u>Applicable Premium</u>" shall be a cash amount equal to the percentages of principal amount of the Loans being prepaid set forth below |

|  | <u>Year</u> | <u>Price</u> |
|---|---|---|
|  | Prior to the second anniversary of the closing date of the Loans (the "<u>Closing Date</u>")......................................... | 10.0% |
|  | On or after the second anniversary of the Closing Date but prior to the fourth anniversary of the Closing Date .... | 8.0% |
|  | On or after the fourth anniversary of the Closing Date but prior to Maturity................................................. | 5.0% |

| **Certain Documentation Matters:** | All documents executed in connection with the Loans (the "<u>Credit Documentation</u>") shall be in form and substance acceptable to the First Lien Agent and a majority in principal amount of the First Lien Lenders and shall contain representations, warranties, covenants, events of default (including a cross default to the Exit Facility) and other terms as appropriate, in the determination of the First Lien Agent and holders of a majority in principal amount of First Lien Claims, for financings of this type. |
|---|---|
| *Certain Covenants:* | The Loans will restrict the ability of Borrower to incur additional indebtedness provided that Borrower may incur up to $25 million in indebtedness (the "<u>Permitted Senior Indebtedness</u>") under a senior secured credit facility. The amount of Permitted Senior Indebtedness will be subject to reduction upon any permanent reduction or termination of commitments under the Exit Facility. |
|  | In addition, the Loans will contain financial covenants to be determined by the First Lien Agent, with the consent of holders of a majority in principal amount of First Lien Claims. |
| *Assignments and Participations:* | The Loans may be assigned, and the Lenders may sell participations in their Loans, without the consent of Borrower or any other Lender. In the case of partial assignments (other than to another Lender or to an affiliate of a Lender), the minimum assignment amount shall be $500,000. Participants shall have the same benefits as the Lenders with respect to yield protection and increased cost provisions. Voting rights of participants shall be limited to those matters with respect to which the affirmative vote of the Lender from which it purchased its participation would be required as described under "Voting" below. |
| *Voting:* | Amendments and waivers of the Credit Documents will require the approval of Lenders holding more than 50% of the aggregate principal amount of the Loans then outstanding, except that the consent of each affected Lender will be required with respect to, among other things, (a) reductions of principal, interest or fees under or relating to the Loans, (b) extensions of final maturity of the Loans, (c) releases of all or substantially all of the guarantees with respect to the Loans or Collateral (other than in connection with any sale or financing permitted by the Loans), (d) changes in |

| | |
|---|---|
| | interest or principal payment dates, or (e) modifications of the pro rata sharing and voting provisions and the related definitions. |
| *Expenses and Indemnification:* | Borrower will agree to pay (a) all reasonable and documented out-of-pocket expenses of the Lenders in connection any amendment or waiver with respect to the Loans (including the reasonable fees, disbursements and other charges of counsel and consultants) and (b) all reasonable and documented out-of-pocket expenses of the Lenders (including the fees, disbursements and other charges of counsel and consultants) in connection with the enforcement of the Credit Documentation. |
| | The Lenders (and their affiliates and their respective officers, directors, employees, advisors and agents) will have no liability for, and will be indemnified and held harmless against, any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent determined by a court in a final judgment to have resulted from the gross negligence or willful misconduct of the indemnified party). |
| *Governing Law and Forum:* | State of New York |