# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| **HAWKEYE RENEWABLES, LLC, *et al.*,**[1] | Case No. 09-_____ ( ) |
| **Debtors.** | **(Joint Administration Requested)** |

-----------------------------------------------------------x

## MOTION OF THE DEBTORS PURSUANT TO SECTIONS 105(a), 361, AND 363 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) SCHEDULING A FINAL HEARING

Hawkeye Renewables, LLC ("Renewables") and its parent, Hawkeye

Intermediate, LLC ("Intermediate"), as debtors and debtors in possession (collectively, the

"Debtors"), submit this motion (the "Motion") pursuant to sections 105(a), 361, and 363 of title

11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") for entry of an order, attached hereto as <u>Exhibit A</u> (the

"Interim Order")[2] (i) authorizing the Debtors to use cash collateral (as defined in section 363(a)

of the Bankruptcy Code, "Cash Collateral"); (ii) authorizing the Debtors to provide adequate

protection to the First Lien Agent for the benefit of the First Lien Lenders and to the Second Lien

Agent for the benefit of the Second Lien Lenders for any diminution in value of their respective

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Hawkeye Renewables, LLC (3162) and Hawkeye Intermediate, LLC (5356). The Debtors' corporate headquarters and service address is: 224 S. Bell Avenue, Ames, Iowa 50010.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Interim Order.

interests in the Prepetition Collateral (each as defined herein), including Cash Collateral; and (iii) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order. In support of this Motion, the Debtors respectfully represent:

## Background

1.      On the date hereof (the "Petition Date"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Contemporaneously herewith, the Debtors have filed a motion seeking joint administration of their Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

2.      Prior to the Petition Date, the Debtors solicited from their prepetition first lien lenders ("First Lien Class 3A") and prepetition second lien lenders ("Second Lien Class 4A") votes on the Debtors' *Joint Prepackaged Plan of Reorganization of Hawkeye Renewables, LLC, et al. under Chapter 11 of the Bankruptcy Code* (the "Prepackaged Plan") through their *Disclosure Statement for Debtors' Joint Prepackaged Plan of Reorganization under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement"), pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. The Prepackaged Plan has been accepted by First Lien Class 3A in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code and has been rejected by Second Lien Class 4A. Notwithstanding the rejection of the Prepackaged Plan by Second Lien Class 4A, the Debtors believe that the Prepackaged Plan is confirmable under section 1129(b) of the Bankruptcy Code.

3.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 filings are contained in the Declaration of

Timothy B. Callahan in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief (the "Callahan Declaration"), filed contemporaneously herewith.

## Jurisdiction and Venue

4.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Bankruptcy Rule 4001 Concise Statement

5.    In accordance with Bankruptcy Rule 4001(b), below is a summary of the nature of the Debtors' request and the proposed use of Cash Collateral:[3]

(i)    Parties with Interest in Cash Collateral.  The parties with interests in Cash Collateral (collectively, the "Prepetition Senior Lenders") are (A) Credit Suisse, as administrative and collateral agent (the "First Lien Agent") under that certain First Lien Credit Agreement, dated as of June 30, 2006 (as amended, restated, supplemented, or otherwise modified from time to time, the "First Lien Credit Agreement"), among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), the First Lien Agent, and the lenders party thereto (the "First Lien Lenders" and referred to collectively with the First Lien Agent as the "First Lien Secured Parties"), and (B) Wilmington Trust FSB, as administrative and collateral agent (the "Second Lien Agent" and together with the First Lien Agent, the "Prepetition Agents") under that certain Second Lien Credit Agreement, dated as of June 30, 2006 (as amended, restated, supplemented, or otherwise modified from time to time, the "Second Lien Credit Agreement" and together with the First Lien Credit Agreement, the "Prepetition Credit Agreements"), among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), the Second Lien Agent, and the lenders party thereto (the "Second Lien Lenders" and referred to collectively with the Second Lien Agent as the "Second Lien Secured Parties").  Interim Order ¶ E.

(ii)    Use of Cash Collateral.  The Debtors request authorization to use Cash Collateral in which the Prepetition Senior Lenders may have an interest, in accordance with the terms, conditions, and limitations set forth in this Interim Order and the Approved Budget, without further approval by this Court.  Interim Order ¶ 2.

(iii)    Termination Date.  The Debtors' authorization to use Cash Collateral under the Interim Order will terminate, on the earliest to occur of the following:

---

[3] To the extent the Motion and the Interim Order are inconsistent, the proposed Interim Order shall control.

(a)     the date which is the tenth (10th) calendar day after expiration of the Approved Budget unless a Supplemental Approved Budget (i) has been agreed upon by the First Lien Agent and Required Lenders or (ii) has been approved by the Court in accordance with paragraph 4(a) of the Interim Order (the Approved Budget applies for the first 13 weeks of these Chapter 11 Cases);

(b)     the thirty-fifth (35th) day following the Petition Date, unless a Final Order authorizing the use of Cash Collateral, substantially in accordance with the terms of the Interim Order and otherwise acceptable to the First Lien Agent and Required Lenders in their sole discretion, is entered;

(c)     five (5) business days after the date the First Lien Agent provides the Debtors with written notice of any Debtor's failure to comply with any of the terms or conditions of the Interim Order;

(d)     the date an application is filed by the Debtors seeking to amend, modify, supplement, or extend the Interim Order without the prior written consent of the First Lien Agent and the Required Lenders, or the date of entry of any order reversing, amending, supplementing, staying, vacating, or otherwise modifying the Interim Order without the prior written consent of the First Lien Agent and the Required Lenders;

(e)     the date any material provision of the Interim Order shall for any reason cease to be valid and binding or any Debtor so asserts in any pleading filed in any court;

(f)     the date an application is filed by any Debtor for the approval of any superpriority claim or any lien in any of the Chapter 11 Cases which is *pari passu* with or senior to the First Lien Adequate Protection Liens, First Lien Superpriority Claim, or Prepetition First Priority Liens without the prior written consent of the First Lien Agent and Required Lenders;

(g)     the effective date of any confirmed chapter 11 plan of reorganization in these Chapter 11 Cases;

(h)     the date of (a) the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors approved by the First Lien Agent and the Required Lenders or (b) the acceptance by any Debtor of any offer or bid for the purchase of all or substantially all of the assets of such Debtor or all of the equity of such Debtor which is unacceptable to the First Lien Agent and the Required Lenders;

(i)     the date (a) any of the Chapter 11 Cases is dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor files a motion or other pleading seeking the dismissal or conversion of any of the Chapter 11 Cases pursuant to Bankruptcy Code section 1112 or otherwise or (b) a trustee or an examiner with the powers to operate the business of the Debtors is appointed or elected in any of

the Chapter 11 Cases or any Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the First Lien Agent and the Required Lenders;

(j) the date of the commencement of any action by any Debtor against the First Lien Secured Parties with respect to the First Lien Obligations or the Prepetition First Priority Liens, or in the case of any such action commenced by any person other than the Debtors, the date of entry of an order by the Bankruptcy Court invalidating, disallowing, or limiting in any respect, as applicable, either (i) the enforceability, priority, or validity of the liens securing the obligations owned under the First Lien Credit Agreement or (ii) any of the First Lien Obligations;

(k) the withdrawal, amendment, modification of, or filing of a pleading by the Debtors seeking to amend or modify the Prepackaged Plan or the documents in the plan supplement documents, in a manner not acceptable to the the First Lien Agent and the Required Lenders; or

(l) the date which is thirty (30) calendar days following the occurrence of the Termination Date under section 5(n) of the Restructuring Support Agreement, dated November 24, 2009, among the Debtors, the First Lien Agent, and the other parties signatory thereto (the "RSA"); provided, however, that during such 30-day period following the occurrence of the Termination Date, the Debtors may continue to use Cash Collateral in the ordinary course of the Debtors' business in accordance with the Interim Order and Approved Budget if necessary to preserve the value of the Debtors' business.

Interim Order ¶ 4.

(iv) <u>Adequate Protection.</u> As adequate protection for the Debtors' use of Cash Collateral:

(a) Subject to certain limitations outlined in the Interim Order, the Debtors will be authorized and directed to pay, when due and payable, the reasonable and documented fees and expenses incurred by: (i) Akin Gump Strauss Hauer & Feld LLP, as counsel to the First Lien Agent; (ii) such Delaware counsel as the First Lien Agent may retain; (iii) Capstone Advisory Group, as financial advisor to the First Lien Agent; and (iv) such other professionals and/or consultants retained by the First Lien Agent (each of the professionals in (i) through (iv) being the "First Lien Professionals"), in each case in connection with protecting the rights and interests of the First Lien Agent and First Lien Lenders in connection with the Chapter 11 Cases (the "Adequate Protection Reimbursement Claims"). All amounts paid as Adequate Protection Reimbursement Claims are deemed permitted uses of Cash Collateral.

(b) Subject to the Carve-Out, the First Lien Agent, for the benefit of the First Lien Lenders, will be granted: (i) first priority postpetition security interests in and liens (the "First Lien Adequate Protection Liens") on all of the Collateral and (ii)

first priority superpriority administrative expense claims under Bankruptcy Code section 507(b) (the "First Lien Superpriority Claim") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code to secure an amount equal to the aggregate diminution in the value in the interests of the First Lien Agent and the First Lien Lenders in the First Lien Prepetition Collateral (including the Cash Collateral). The First Lien Adequate Protection Liens and First Lien Superpriority Claim will be subject and subordinate only to: (i) those valid, enforceable, unavoidable, and properly perfected liens existing on the Petition Date, including, without limitation, those liens that are permitted under section 6.02 of the First Lien Credit Documents with priority over the Prepetition First Priority Liens (the "First Lien Permitted Priority Liens") and (ii) solely upon the occurrence of the Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth in the Interim Order.

(c)     Subject to the Carve-Out, the Second Lien Agent, for the benefit of the Second Lien Secured Parties, will be granted: (i) second priority postpetition security interests in and liens (the "Second Lien Adequate Protection Liens" and together with the First Lien Adequate Protection Liens, the "Adequate Protection Liens") on all of the Collateral and (ii) second priority superpriority administrative expense claims under Bankruptcy Code section 507(b) (the "Second Lien Superpriority Claim" and together with the First Lien Superpriority Claim, the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code to secure an amount equal to the aggregate diminution in the value in the interests of the Second Lien Agent and the Second Lien Secured Parties in the Second Lien Prepetition Collateral (including the Cash Collateral). The Second Lien Adequate Protection Liens and Second Lien Adequate Protection Priority Claim will be subject and subordinate only to: (i) the Prepetition First Priority Liens; (ii) the First Lien Adequate Protection Liens; (iii) the First Lien Superpriority Claim; (iv) those valid, enforceable, unavoidable, and properly perfected liens existing on the Petition Date, including, without limitation, those liens that are permitted under section 6.02 of the Second Lien Credit Documents with priority over Prepetition Second Priority Liens (the "Second Lien Permitted Priority Liens" and, together with the First Lien Permitted Priority Liens, the "Permitted Priority Liens"); and (v) solely upon the occurrence of the Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth in the Interim Order.

Interim Order ¶ 6.

(v)     Carve Out. The "Carve Out" means (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6); (ii) to the extent allowed at any time by the Bankruptcy Court, whether by interim order, procedural order, or otherwise, all unpaid fees, disbursements, costs, and expenses incurred by professionals or professional firms retained by (x) the Debtors pursuant to Bankruptcy Code section

327 and (y) any official committee of unsecured creditors appointed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503, or 1103 (collectively, the "Professionals") and owed pursuant to such Professionals' respective engagement letters (other than any success fee, transaction fee, or other similar fee set forth in such Professionals' respective engagement letters), which are incurred prior to the Termination Date, and (iii) fees and expenses of Professionals in an aggregate amount not to exceed $750,000, which are incurred on and after the Termination Date (the "Termination Carve-Out"), provided such fees and expenses (in the aggregate) are ultimately allowed by the Bankruptcy Court, subject to the rights of any party in interest to object to the allowance of any such fees and expenses in clauses (ii) and (iii) above. Interim Order ¶ 8.

## The Proposed Use of Cash Collateral

6.     The Debtors do not have available sources of working capital and

financing to carry on the operation of their business during the pendency of these Chapter 11

Cases without the use of Cash Collateral. To operate in chapter 11 in a manner consistent with

their ordinary course practice, the Debtors must have access to cash that is currently encumbered

by the liens of their secured lenders. Cash Collateral will be used to make payments to vendors

and employees and to satisfy the other ordinary costs of operations, all in accordance with the

Approved Budget attached to the Interim Order and any Supplemental Budget. Allowing the

Debtors to use Cash Collateral will minimize the damage caused by these Chapter 11 Cases and

will enable the Debtors to avoid any disruption to their operations, or damage to the confidence

of their vendors, that might otherwise arise from nonpayment of operational expenses which

arise in the ordinary course of the Debtors' business. In the absence of authority to use Cash

Collateral, the continued operation of the Debtors' business, even for a limited period of time,

would not be possible, and serious and irreparable harm to the Debtors and their estates would

occur. The use of Cash Collateral is therefore critical to preserve and maintain the going concern

value of the Debtors, for the benefit of all stakeholders.

7.     Recognizing the importance of obtaining authority to continue to use Cash Collateral in the ordinary course, the Debtors approached an ad hoc steering committee for the First Lien Lenders (the "First Lien Steering Committee") prior to the commencement of these Chapter 11 Cases to discuss the terms upon which the First Lien Secured Parties would agree to the Debtors' use of Cash Collateral. After extensive arm's-length negotiations, the parties agreed on the form of Interim Order annexed hereto as Exhibit A, which will allow the Debtors to continue to operate their business in the ordinary course during these Chapter 11 Cases. The Debtors' authority to use Cash Collateral pursuant to the Interim Order will continue through the date of the earliest occurrence of any one of the events specified in paragraph 5(iii) of this Motion.

8.     The Debtors have the consent of the First Lien Secured Parties to use Cash Collateral, so long as such use complies with the terms of the Interim Order attached hereto. While the Debtors do not have explicit consent to use Cash Collateral from the Second Lien Secured Parties, such consent can be inferred from the terms of that certain Intercreditor Agreement attached hereto as Exhibit B (the "Intercreditor Agreement"), dated as of June 30, 2006, among THL-Hawkeye Acquisition LLC (merged with and into Renewables), Intermediate, the First Lien Agent and the Second Lien Agent. Under the terms of the Intercreditor Agreement "the Second Lien Collateral Agent . . . agrees that no Second Lien Secured Party shall contest, or support any other person in contesting . . . any request by the First Lien Collateral Agent or any other First Lien Secured Party for adequate protection." Intercreditor Agreement § 6.01(b). The Intercreditor Agreement, however, provides that if an adequate protection lien is granted to the First Lien Secured Parties, the Second Lien Secured Parties will also be granted such adequate

protection in the same priorities as existed with respect to the prepetition Collateral. Id. The terms of the Interim Order comport to this requirement.

9.     The Intercreditor Agreement also binds the Second Lien Secured Parties to "not oppose or object to the use of any Collateral constituting cash collateral . . . unless the First Lien Secured Parties, or a representative authorized by the First Lien Secured Parties, shall oppose or object to such use of cash collateral" Id. § 6.01(a)(i). Since the First Lien Secured Parties have consented to the use of Cash Collateral, the Second Lien Secured Parties are obligated to not oppose such use. Finally, any opposition by the Second Lien Secured Parties to the Debtors' use of Cash Collateral requested herein may give rise to causes of actions against such parties by the Debtors. See Intercreditor Agreement § 10.09 ("[The] provisions of this Agreement shall . . . inure to the benefit of the parties hereto . . . all of whom are intended to be bound by, and to be third party beneficiaries of, this Agreement.").

## Proposed Adequate Protection

10.     To protect the Prepetition Senior Lenders from any diminution in value of their respective interests in Cash Collateral, the Debtors propose to grant adequate protection, in the form of postpetition payments to the First Lien Professionals and liens and claims in favor of the Prepetition Senior Lenders. Specifically, the Prepetition Agents will receive, on behalf of the Prepetition Senior Lenders, as adequate protection for the Debtors' use of Cash Collateral, (a) the Adequate Protection Reimbursement Claims, (b) the Adequate Protection Liens, and (c) the Superpriority Claims.

## Provisions to Be Highlighted under Local Rule 4001-2

11.     The following are terms of the proposed use of Cash Collateral that are required to be highlighted pursuant to Local Rule 4001-2:

- <u>Cross-Collateralization Provisions.</u> Not applicable.

- <u>Binding Findings of Fact, Stipulations, and Waivers.</u> Pursuant to the Interim Order, the Debtors stipulate that

   (i)      as of the Petition Date, (X) each of the Debtors was jointly and severally liable to the First Lien Secured Parties in respect of obligations under the First Lien Credit Agreement in the aggregate principal amount of not less than (a) $533,545,500.50 on account of outstanding term loans and revolving loans made under the First Lien Credit Agreement (plus accrued and unpaid interest thereon) and (b) $11,191,466 on account of obligations arising from the termination of certain Hedging Agreements (as defined in the First Lien Credit Agreement) (plus accrued and unpaid interest thereon), and (Y) each of the Debtors was jointly and severally liable to the First Lien Secured Parties in respect of obligations under the First Lien Credit Agreement for unpaid fees, expenses, and charges chargeable or reimbursable under the First Lien Credit Agreement (collectively, the "<u>First Lien Obligations</u>");

   (ii)     as of the Petition Date, (X) each of the Debtors was jointly and severally liable to the Second Lien Secured Parties in respect of obligations under the Second Lien Credit Agreement in the aggregate principal amount of not less than $150,000,000 on account of outstanding term loans made under the Second Lien Credit Agreement (plus accrued and unpaid interest thereon) and (Y) each of the Debtors was jointly and severally liable to the Second Lien Secured Parties in respect of obligations under the Second Lien Credit Agreement for unpaid fees, expenses, and charges chargeable or reimbursable under the Second Lien Credit Agreement (collectively, the "<u>Second Lien Obligations</u>");

   (iii)    as of the Petition Date, all of the Prepetition Secured Debt is unconditionally due and owing by the Debtors to the Prepetition Secured Parties;

   (iv)    as of the Petition Date, all claims in respect of the Prepetition Secured Debt are not, and will not be, subject to any avoidance, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any other applicable law or regulation by the Debtors;

   (v)      the Prepetition Lender Liens (X) constitute valid, binding, enforceable, and properly perfected liens on the Prepetition Collateral that, prior to the entry of the Interim Order, were subject

only to those liens described in the Prepetition Loan Documents; (Y) will not be subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any other applicable law or regulation by the Debtors; and (Z) are subject and subordinate only to (a) the Carve-Out and (b) Permitted Priority Liens;

(vi)     none of the Prepetition Secured Parties are or will be deemed to be control persons or insiders of the Debtors by virtue of any of the actions taken by such parties in respect of or in connection with the Prepetition Secured Debt;

(vii)    as of the Petition Date, the Debtors have not brought, and are not aware of, any claims or causes of action belonging to the Debtors that exist or are likely to arise against the Prepetition Secured Parties or the First Lien Released Parties; and

(viii)   as of the Petition Date, there were no other perfected liens on or security interests in the Prepetition Collateral except for the Prepetition Lender Liens and the Permitted Priority Liens.

Interim Order ¶ F.

- <u>Findings of Fact Not Subject to 60 or 75 Day Investigation Period.</u>  Any official committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code (a "<u>Creditors' Committee</u>") or other party in interest will have the later of forty (40) days from the date of such Creditors' Committee's formation or fifty-five (55) days from the Petition Date (or any subsequent date that may be agreed to in writing by the First Lien Agent in its sole discretion or by an order of the Court, for cause shown, after notice and a hearing) (the "<u>Investigation Termination Date</u>") to investigate the validity, perfection, enforceability, and extent of the Prepetition Secured Debt and Prepetition Lender Liens and any potential claims or causes of action of the Debtors or their estates against the Prepetition Agents or Prepetition Secured Parties in respect of the Prepetition Secured Debt.  Interim Order ¶ 9.

- <u>Section 506(c) Waiver.</u>  Subject to the entry of the Final Order, the Interim Order waives the Debtors' rights to charge the Prepetition Collateral under section 506(c) of the Bankruptcy Code (subject to the entry of the Final Order).  Interim Order ¶ 5(b).

- <u>Liens on Chapter 5 Causes of Action.</u>  The Interim Order grants the Prepetition Senior Lenders a lien on causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof (subject to the entry of the Final Order).  Interim Order ¶ 6(b).

- Provisions that Use Postpetition Loans From a Prepetition Secured Creditor to Pay Part or All of that Secured Creditor's Prepetition Debt (Other than as Provided in section 552(b) of the Bankruptcy Code). Not applicable.

- Provisions that Provide Disparate Treatment for Professionals Retained by a Creditors' Committee and Those Professionals Retained by the Debtor in Connection with a Carve-Out. The Carve-Out does not provide for disparate treatment of professionals retained by a Creditors Committee. Interim Order ¶ 8.

- Non-Consensual Priming Liens. Not applicable.

**The Proposed Use of Cash Collateral Should Be Approved**

**A.     The Use of Cash Collateral is Warranted and Should Be Approved**

12.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

13.     As set forth above, the use of Cash Collateral is necessary for ordinary course operating costs and expenses at the outset of, and during, these Chapter 11 Cases. The Debtors do not have available sources of working capital and financing to carry on the operation of their business during these Chapter 11 Cases without the use of Cash Collateral. The Debtors' ability to maintain business relationships with their vendors, suppliers, and customer and to meet payroll and other operating expenses is essential to the Debtors' continued viability and the value of their business as a going concern. The use of Cash Collateral is therefore critical to the preservation and maintenance of the going concern value of the Debtors, as well as the value of the Collateral. Additionally, the First Lien Lenders have consented to the use of Cash Collateral

in accordance with the Approved Budget or Supplemental Approved Budget, provided that the Court approves the adequate protection provided in the Interim Order.

## B. The Proposed Adequate Protection Should Be Approved

14. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used by a debtor in possession, the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis. See MNBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396 (10th Cir. 1987); Martin v. U.S. (In re Martin), 761 F.2d 472 (8th Cir. 1985); In re Shaw Indus., Inc., 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003).

15. The focus of the adequate protection requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 554 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted). "However, neither the legislative history nor the Bankruptcy Code require the Court to protect a creditor beyond what was bargained for by the parties." Id. at 619.

16. The proposed adequate protection offered by the Debtors to the Prepetition Agents, on behalf of the Prepetition Senior Lenders, is appropriate. The Prepetition Senior Lenders are all receiving Adequate Protection Liens and Superpriority Claims in the same priority as existed prior to the Petition Date to adequately protect against the diminution of the

value of their Collateral. The Debtors believe that it is in the best interests of their estates, creditors, and all parties in interest that they reach a consensual rather than a litigated resolution with the First Lien Lenders regarding the use of Cash Collateral and provide the Prepetition Senior Lenders with the adequate protection described herein. The adequate protection will sufficiently protect the Prepetition Secured Lenders' interests in the Cash Collateral. Accordingly, the proposed adequate protection is fair and reasonable and sufficient to satisfy the requirement of section 363(c)(2) of the Bankruptcy Code.

## The Interim Approval Should Be Granted

17.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

18.     Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct an expedited preliminary hearing on the Motion and (i) authorize the Debtors to use the Cash Collateral of the Prepetition Senior Lenders in order to (a) maintain and finance the ongoing operations of the Debtors in the ordinary course of business during the pendency of the Chapter 11 Cases and (b) avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest and (ii) schedule the Final Hearing on the relief requested herein.

19.     Absent authorization from the Court to use Cash Collateral on an interim basis pending a Final Hearing, the Debtors will be immediately and irreparably harmed. As set forth above, the Debtors' ability to use Cash Collateral on the terms described herein is critical to their ability to operate their business in the ordinary course. Without the liquidity provided by

the use of Cash Collateral, the Debtors' business will be brought to an immediate halt, and reaching the goals of the Prepackaged Plan would, therefore, be frustrated. In addition, the Debtors' ability to maintain business relationships with their vendors, suppliers, and customer and to meet payroll and other operating expenses will be compromised without the use of Cash Collateral. Serious and irreparable harm to the Debtors and their estates would occur, with disastrous consequences for the Debtors, their estates, and creditors if the Debtors do not obtain entry of the Interim Order immediately.

### Notice

20.     No trustee, examiner, or creditors' committee has been appointed in these Chapter 11 Cases. The Debtors shall serve notice of this Motion on: (a) the U.S. Trustee, (b) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis), and (c) counsel to the agents for the Debtors' prepetition secured lenders (the "Notice Parties"). As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). The Debtors submit that no other or further notice need be provided.

### No Previous Request

21.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order, substantially similar to the proposed form of order attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 21, 2009
      Wilmington, Delaware

*Katherine Good*

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Mark D. Collins (No. 2981)
L. Katherine Good (No. 5101)
(302) 651-7700

- and -

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Michael F. Walsh
(212) 310-8000

*Proposed Attorneys for the Debtors and Debtors in Possession*

# EXHIBIT A

**Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------x
      :

**In re**                        :      **Chapter 11**
      :

**HAWKEYE RENEWABLES, LLC, *et al.*,**    :      **Case No. 09-_____ (___)**
      :

         **Debtors.**           :      **Jointly Administered**
      :

------------------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE, AND (III) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion"), dated December 21, 2009, of Hawkeye Renewables, LLC ("Renewables") and its parent, Hawkeye Intermediate, LLC ("Intermediate"), as debtors and debtors in possession (collectively, the "Debtors"), for interim and final orders authorizing them to, among other things, (i) use Cash Collateral (as defined below) pursuant to sections 363 of title 11 of the United States Code (the "Bankruptcy Code"), and (ii) provide adequate protection, pursuant to Bankruptcy Code sections 105(a), 361, and 363 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and having sought the following relief:

    (a)     This Court's authorization, pursuant to sections 361 and 363 of the Bankruptcy Code, to use the Cash Collateral (as defined below) (which Cash Collateral shall be used in accordance with the budget, including any variances therefrom and the financial covenants, attached hereto as Exhibit A (as such budget may be extended, varied, supplemented, or otherwise modified in accordance with the provisions of this Interim Order or the Final Order, the "Approved Budget")), and provide certain adequate protection to the Prepetition Secured Parties (as defined below) against the diminution in the value of the Prepetition Collateral, the

use, sale or lease of the Prepetition Collateral or the imposition of the automatic stay pursuant to Bankruptcy Code section 362; and

(b)     This Court's approval pursuant to Bankruptcy Code sections 361, and 363 of the form and manner of adequate protection being granted to the Prepetition Secured Parties who have been granted prepetition liens and security interests under the following documents (collectively, the "Prepetition Loan Documents"):

(i)     the First Lien Credit Agreement dated as of June 30, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "First Lien Credit Agreement"), among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), Credit Suisse, as administrative and collateral agent (the "First Lien Agent"), and the lenders party thereto (the "First Lien Lenders", referred to collectively with the First Lien Agent as the "First Lien Secured Parties");

(ii)     the First Lien Guarantee and Collateral Agreement (the "First Lien Guarantee" and, together with the First Lien Credit Agreement, the "First Lien Credit Documents") dated as of June 30, 2006 among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), the subsidiaries of Renewables from time to time party thereto and Credit Suisse, as collateral agent;

(iii)     the Second Lien Credit Agreement dated as of June 30, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Credit Agreement" and, together with the First Lien Credit Agreement, the "Prepetition Credit Agreements"), among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), Wilmington Trust FSB, as administrative and collateral agent (the "Second Lien Agent" and, together with the First Lien Agent, the "Prepetition Agents") and the lenders party

2

thereto (the "Second Lien Lenders", referred to collectively with the Second Lien Agent as the "Second Lien Secured Parties");

      (iv)    the Second Lien Guarantee and Collateral Agreement (the "Second Lien Guarantee" and, together with the Second Lien Credit Agreement, the "Second Lien Credit Documents") dated as of June 30, 2006 among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), the subsidiaries of Renewables from time to time party thereto and Credit Suisse, as collateral agent.

      (c)    This Court's scheduling an interim hearing (the "Interim Hearing") pursuant to Bankruptcy Rule 4001(c)(2) to consider the entry of an interim order in the form hereof (this "Interim Order") which, among other things, authorizes the use of Cash Collateral and grants adequate protection to the First Lien Secured Parties and Second Lien Secured parties (collectively referred to herein as the "Prepetition Secured Parties"), as provided in this Interim Order;

      (d)    This Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2), a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") which, among other things, grants, on a final basis, authorization for the Debtors to use the Cash Collateral and adequate protection to the Prepetition Secured Parties as provided in the Final Order;

      (e)    This Court's finding, pursuant to Bankruptcy Rules 2002 and 4001(c)(1), and the Local Rules of this Court that notice of the Interim Hearing is sufficient having been given to (i) the United States Trustee (the "U.S. Trustee"), (ii) counsel to any known secured creditors of record, (iii) counsel to the Prepetition Agents, (iv) the Prepetition Secured Parties, (v) the thirty (30) largest unsecured creditors of the Debtors, (vi) any party asserting a Lien against any of the

Debtors' assets, and (vii) the Internal Revenue Service (collectively, the "Notice Parties"); and such notice being sufficient and adequate, and no other or further notice being required; and

The Interim Hearing having been held on December __, 2009; and based upon all of the pleadings filed with this Court, the evidence presented at the Interim Hearing and the entire record herein; and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and this Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion, as modified herein on an interim basis, is in the best interests of the Debtors, their estates, and their creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND (FINDINGS OF FACT AND CONCLUSIONS OF LAW):**

A.    Disposition. The Motion is granted on an interim basis in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of the Interim Order that have not been withdrawn, waived or settled, and all reservation of rights included therein, are hereby denied and overruled.

B.    Petition Date. On December 21, 2009 (the "Petition Date"), the Debtors commenced their chapter 11 cases (the "Chapter 11 Cases") by filing their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their affairs as a debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner or committee has been appointed in the Chapter 11 Cases.

C.    Jurisdiction; Venue. This Court has jurisdiction over the Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §§157(b)(2)(D) and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Venue for the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

4

D.      Prepetition Indebtedness.  For purposes of this Interim Order, the term "Prepetition Secured Debt" shall mean all Obligations (as defined in the Prepetition Credit Agreements) owed to the Prepetition Secured Parties under the Prepetition Loan Documents (other than contingent obligations for which no claim has been made) as set forth in paragraph F below.

E.      Prepetition Lender Liens.

(i)      To secure the First Lien Obligations (as defined below) under the First Lien Credit Agreement, the Debtors granted the First Lien Agent, on behalf of the First Lien Lenders, valid first priority liens (the "Prepetition First Priority Liens") upon and in substantially all of the Debtors' assets, and all proceeds and products of such assets (the "First Lien Prepetition Collateral").

(ii)      To secure the Second Lien Obligations (as defined below) under the Second Lien Credit Agreement, the Debtors granted the Second Lien Agent, on behalf of the Second Lien Lenders, valid second priority liens (the "Prepetition Second Priority Liens," and, together with the Prepetition First Priority Liens, the "Prepetition Lender Liens") upon and in substantially all of the Debtors' assets, and all proceeds and products of such assets (the "Second Lien Prepetition Collateral" and, together with the First Lien Prepetition Collateral, the "Prepetition Collateral").  Pursuant to and to the extent set forth in that certain Intercreditor Agreement (the "Intercreditor Agreement") dated as of June 30, 2006 among THL-Hawkeye Acquisition LLC (merged with and into Renewables), Intermediate, the subsidiaries of THL-Hawkeye Acquisition LLC and Intermediate from time to time party thereto and each of the Prepetition Agents, the Prepetition Second Priority Liens are subject to and subordinate in priority to the Prepetition First Priority Liens.

RLF1 3518809v.1

F.    Debtors' Stipulations.    Subject to paragraph 9(a) of this Interim Order, the Debtors acknowledge, represent, stipulate, and agree that:

(i)    ***Prepetition Indebtedness:***

(a)    As of the Petition Date, (i) each of the Debtors was jointly and severally liable to the First Lien Secured Parties in respect of obligations under the First Lien Credit Agreement in the aggregate principal amount of not less than (A) $533,545,500.50 on account of outstanding term loans and revolving loans made under the First Lien Credit Agreement (plus accrued and unpaid interest thereon), and (B) $11,191,466 on account of obligations arising from the termination of certain Hedging Agreements (as defined in the First Lien Credit Agreement) (plus accrued and unpaid interest thereon), and (ii) each of the Debtors was jointly and severally liable to the First Lien Secured Parties in respect of obligations under the First Lien Credit Agreement for unpaid fees, expenses and charges chargeable or reimbursable under the First Lien Credit Agreement (collectively, the "First Lien Obligations").

(b)    As of the Petition Date, (i) each of the Debtors was jointly and severally liable to the Second Lien Secured Parties in respect of obligations under the Second Lien Credit Agreement in the aggregate principal amount of not less than $150,000,000 on account of outstanding term loans made under the Second Lien Credit Agreement (plus accrued and unpaid interest thereon), and (ii) each of the Debtors was jointly and severally liable to the Second Lien Secured Parties in respect of obligations under the Second Lien Credit Agreement for unpaid fees, expenses and charges chargeable or reimbursable under the Second Lien Credit Agreement (collectively, the "Second Lien Obligations").

(c)    As of the Petition Date, all of the Prepetition Secured Debt is unconditionally due and owing by the Debtors to the Prepetition Secured Parties.

(d)     As of the Petition Date, all claims in respect of the Prepetition Secured Debt are not, and shall not be, subject to any avoidance, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation by the Debtors.

(ii)     The Prepetition Lender Liens (i) constitute valid, binding, enforceable, and properly perfected liens on the Prepetition Collateral that, prior to the entry of this Interim Order, were subject only to those liens described in the Prepetition Loan Documents; (ii) shall not be subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation by the Debtors; and (iii) are subject and subordinate only to (a) the Carve-Out (as defined below) and (b) Permitted Priority Liens (as defined below).

(iii)     None of the Prepetition Secured Parties are or shall be deemed to be control persons or insiders of the Debtors by virtue of any of the actions taken by such parties in respect of or in connection with the Prepetition Secured Debt.

(iv)     As of the Petition Date, the Debtors have not brought, and are not aware of, any claims or causes of action belonging to the Debtors that exist or are likely to arise against the Prepetition Secured Parties or the First Lien Released Parties (as defined below).

(v)     As of the Petition Date, there were no other perfected liens on or security interests in the Prepetition Collateral except for the Prepetition Lender Liens and the Permitted Priority Liens.

G.     Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in Bankruptcy Code section 363, in which the Prepetition Secured Parties have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise.

H.     Use of Cash Collateral.  The Debtors have an immediate and critical need to use the Cash Collateral to operate their businesses and effectuate a reorganization of their business, which will be used in accordance with the terms of this Interim Order and subject to the Approved Budget.  Without the use of Cash Collateral, the Debtors will not be able to continue to operate their businesses.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of certain parties and to adequately protect the non-consenting parties' interests in the Prepetition Collateral.

I.     Good Cause.  Good cause has been shown for entry of this Interim Order. The Debtors have an immediate and critical need to use Cash Collateral in order to continue to operate their businesses in the ordinary course in accordance with the Approved Budget, cash collateralize issued and outstanding letters of credit, preserve the value of the Debtors' businesses, and effectuate a reorganization of their businesses.  The Debtors' use of Cash Collateral has been deemed sufficient to meet the Debtors' immediate postpetition liquidity needs, subject to the terms of this Interim Order and the Approved Budget.  The Debtors' estates will be immediately and irreparably harmed if this Interim Order is not entered.  Good, adequate and sufficient cause has, therefore, been shown for the immediate grant of the relief sought in the Motion, as modified herein.

J.     <u>Consent to Use of Cash Collateral</u>. The First Lien Secured Parties consent to the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Interim Order, and in accordance with the Approved Budget.

K.     <u>Good Faith</u>. Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Interim Order have been negotiated at arms' length and in good faith and are in the best interests of the Debtors, their estates and their creditors.

L.     <u>Immediate Entry of Interim Order</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The Motion and this Interim Order comply with Local Bankruptcy Rule 4001-2. The permission granted herein to use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing business and further enhance the Debtors' prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.     <u>Motion Granted</u>. The Motion is granted on an interim basis, subject to the terms set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. This Interim Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

RLF1 3518809v.1

2.   <u>Authorization to Use Cash Collateral</u>. Subject to the terms of this Interim Order, upon entry of this Interim Order, the Debtors are authorized to use Cash Collateral in which the First Lien Secured Parties may have an interest, in accordance with the terms, conditions, and limitations set forth in this Interim Order and the Approved Budget, without further approval by this Court. Any dispute in connection with the use of Cash Collateral shall be heard by this Court.

3.   <u>Supplemental Approved Budget</u>.

(a)   Not later than one month prior to the expiration of the Approved Budget, the Debtors may provide to the First Lien Agent an updated budget for an additional 13-week period in substantially the same format as Exhibit A, which, upon acceptance by the First Lien Agent and the Required Lenders (as defined in the that certain restructuring support agreement among the Debtors, the First Lien Agent and the other parties signatory thereto, dated as of November 24, 2009 (the "<u>RSA</u>")), shall become the Approved Budget for such period for purposes of this Interim Order (each, a "<u>Supplemental Approved Budget</u>"); <u>provided</u>, <u>however</u>, that (i) such acceptance shall not be unreasonably withheld and (ii) a Supplemental Approved Budget may be proposed and accepted as described above at any time. In the event the Debtors, the First Lien Agent and the Required Lenders fail to agree on a Supplemental Approved Budget, the Debtors may ask the Court to determine whether the acceptance by the First Lien Agent and the Required Lenders was unreasonably withheld; <u>provided</u>, <u>further</u>, <u>however</u>, the Court's determination of whether acceptance of the Supplemental Approved Budget by the First Lien Agent and the Required Lenders was unreasonably withheld shall apply only to a revised 13-week budget and shall not apply to the variances and financial covenants set forth in <u>Exhibit A</u>.

(b)     The Prepetition Secured Parties shall have no obligation with respect to the Debtors' use of the Collateral (as defined below), Prepetition Collateral or Cash Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the Approved Budget or to pay (directly or indirectly from their Collateral or Prepetition Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget. Cash Collateral used under this Interim Order shall be used by the Debtors in accordance with the Approved Budget and this Interim Order. The First Lien Secured Parties' consent to the Approved Budget shall not be construed as consent to the use of any Cash Collateral beyond the Termination Date, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

4.     Termination of Cash Collateral Usage.

(a)     Notwithstanding anything in this Interim Order to the contrary, the use of Cash Collateral authorized herein shall terminate without prior notice or order of the Court or any further action by the First Lien Secured Parties, upon the occurrence of the "Termination Date". The Termination Date shall occur (notice of which shall be provided thereafter to the Debtors, the U.S. Trustee, the Second Lien Agent, and any official committee appointed in these cases) on the earliest to occur of:

      i.    The date which is the tenth calendar day after expiration of the Approved Budget unless a Supplemental Approved Budget (i) has been agreed upon by the First Lien Agent and Required Lenders, or (ii) has been approved by the Court in accordance with section 4(a) of this Interim Order;

     ii.    The date of the Final Hearing (which date shall not be later than thirty-five (35) calendar days after the Petition Date) if a Final Order authorizing the use of Cash Collateral, substantially in accordance with the terms of this Interim Order and otherwise acceptable to the First Lien Agent and Required Lenders in their sole discretion, is not entered within thirty-five (35) calendar days of the Petition Date;

iii.    Five (5) business days after the date the First Lien Agent provides the Debtors with written notice of any Debtor's failure to comply with any of the terms or conditions of this Interim Order;

iv.    The date an application is filed by the Debtors seeking to amend, modify, supplement or extend this Interim Order without the prior written consent of the First Lien Agent and the Required Lenders; or the date of entry of any order reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the prior written consent of the First Lien Agent and the Required Lenders;

v.    The date any material provision of this Interim Order shall for any reason cease to be valid and binding or any Debtors shall so assert in any pleading filed in any court;

vi.    The date an application is filed by any Debtor for the approval of any superpriority claim or any lien in any of the Chapter 11 Cases which is *pari passu* with or senior to the First Lien Adequate Protection Liens, First Lien Superiority Claim, or Prepetition First Priority Liens without the prior written consent of the First Lien Agent and Required Lenders;

vii.    The effective date of any confirmed chapter 11 plan of reorganization in these Chapter 11 Cases;

viii.    The date of (a) the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors approved by the First Lien Agent and the Required Lenders, (b) the acceptance by any Debtor of any offer or bid for the purchase of all or substantially all of the assets of such Debtor or all of the equity of such Debtor which is unacceptable to the First Lien Agent and the Required Lenders;

ix.    The date (a) any of the Chapter 11 Cases shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal or conversion of any of the Chapter 11 Cases pursuant to Bankruptcy Code section 1112 or otherwise; or (b) a trustee or an examiner with the powers to operate the business of the Debtors is appointed or elected in any of the Chapter 11 Cases or any Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the First Lien Agent and the Required Lenders;

x.    The date of the commencement of any action by any Debtor against the First Lien Secured Parties with respect to the First Lien

Obligations or the Prepetition First Priority Liens, or in the case of any such action commenced by any person other than the Debtors, the date of entry of an order by the Bankruptcy Court invalidating, disallowing or limiting in any respect, as applicable, either (i) the enforceability, priority, or validity of the liens securing the obligations owned under the First Lien Credit Agreement or (ii) any of the First Lien Obligations;

xi.     The withdrawal, amendment, modification of, or filing of a pleading by the Debtors seeking to amend or modify the Plan (as defined in the RSA) or the documents in the plan supplement documents, in a manner not acceptable the First Lien Agent and Required Lenders; or

xii.     The date which is thirty (30) calendar days following the occurrence of the Termination Date under section 5(n) of the RSA; provided, however, that during such 30 day period following the occurrence of the Termination Date, the Debtors may continue to use Cash Collateral in the ordinary course of the Debtors' business in accordance with the Interim Order and Approved Budget if necessary to preserve the value of the Debtors' business.

(b)     The First Lien Agent, with the consent of the Required Lenders, may waive the occurrence of the Termination Date in its sole discretion. The Debtors' authority to use Cash Collateral shall automatically terminate upon the occurrence of the Termination Date unless waived in writing by the First Lien Agent in the exercise of its sole discretion, all without further order or relief from the Court, provided, however, the Debtors may use Cash Collateral after the Termination Date solely for purposes of making payments or disbursements in respect of accrued and unpaid payroll, taxes and other similar fiduciary amounts. Upon the occurrence of the Termination Date, all Adequate Protection Obligations (as defined below) shall be immediately due and payable and the Prepetition Secured Parties shall have all rights and remedies provided in this Interim Order and under applicable law. Notwithstanding anything herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under this Interim Order shall survive the Termination Date.

5.    <u>Restriction on Use of Cash Collateral</u>.

(a)    From and after the Petition Date, all proceeds of the Prepetition Collateral, including, without limitation, all of the Debtors' existing or future Cash Collateral, shall not, directly or indirectly, be used for any payments, expenses or disbursements of the Debtors except for (i) those payments, expenses and/or disbursement that are expressly permitted under this Interim Order or other order entered by this Court (as reviewed and approved by the First Lien Agent) and are consistent with the Approved Budget, and (ii) compensation and reimbursement of fees and expenses payable pursuant to sections 330 and 331 of the Bankruptcy Code and payable to attorneys, accountants, investment bankers, financial advisors, or other professional persons retained by the Debtors or any official committee appointed in these cases and permitted or awarded pursuant to an order of this Court; <u>provided</u>, <u>however</u>, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause (ii) and shall not affect the right of any party in interest to object to the allowance and payments of any such amounts.

(b)    Subject to the Carve-Out, no administrative expense claims, including fees and expenses of professionals, shall be charged or assessed against or recovered from the Prepetition Collateral or Collateral or attributed to the Prepetition Secured Parties with respect to their respective interests in the Prepetition Collateral or Collateral pursuant to the provisions of Bankruptcy Code section 506(c) or otherwise by, through, or on behalf of the Debtors, without the prior written consent of the affected Prepetition Secured Parties, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Prepetition Secured Parties. Except as set forth herein, the Prepetition Secured Parties have not consented or agreed to the additional use of the Prepetition Collateral or Collateral. The First

Lien Secured Parties shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or the Prepetition Collateral.

(c)     Subject to paragraph 9(a) hereof, and notwithstanding anything herein to the contrary, no Cash Collateral, Prepetition Collateral or proceeds thereof, or any portion of the Carve-Out may be used directly or indirectly by the Debtors, the Second Lien Secured Parties, any official committee appointed in these cases, including the Creditors' Committee (as defined below), and any trustee appointed in the Chapter 11 Cases or any successor cases, or any other person, party or entity to (i) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Secured Debt; (ii) assert or prosecute any Claims and Defenses (as defined below) against the First Lien Secured Parties or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors; (iii) prevent, hinder, or otherwise delay the First Lien Secured Parties' assertion, enforcement, or realization on the Cash Collateral, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with the Interim Order; (iv) seek to modify any of the rights granted to the First Lien Secured Parties hereunder; or (v) apply to the Court for authority to approve superpriority claims or grant liens in the Collateral or any portion thereof that are senior to, or on parity with, the First Lien Adequate Protection Liens, First Lien Superpriority Claims or Prepetition First Priority Liens, unless all First Lien Obligations under the First Lien Credit Documents, this Interim Order and the Final Order have been refinanced or paid in full or otherwise agreed to by the First Lien Agent and Required Lenders; provided, however, that up to $25,000 of Cash Collateral in the aggregate may be used to pay the allowed fees and expenses of professionals retained by the Creditors' Committee incurred directly in connection with investigating, but not initiating or

prosecuting, any Claims and Defenses against the First Lien Secured Parties or with regard to the

First Lien Obligations or Prepetition First Priority Liens.

6.     Adequate Protection.  The Prepetition Secured Parties are entitled, pursuant to

Bankruptcy Code sections 361, and 363(c) and (e), to adequate protection of their interests in the

respective Prepetition Collateral, including Cash Collateral, equal to the aggregate diminution in

value of the Prepetition Secured Parties' interests in the Prepetition Collateral (the "Adequate

Protection Obligations").  The Prepetition Secured Parties are hereby provided with the

following forms of adequate protection:

(a)     Fees and Expenses.  The Debtors are authorized and directed to pay, when

due and payable, the reasonable and documented fees and expenses incurred by: (i) Akin Gump

Strauss Hauer & Feld LLP, as counsel to the First Lien Agent; (ii) such Delaware counsel as the

First Lien Agent may retain; (iii) Capstone Advisory Group, financial advisor to the First Lien

Agent; and (iv) such other professionals and/or consultants retained by the First Lien Agent

(each of the professionals in (i) through (iv) being the "First Lien Professionals"), in each case in

connection with protecting the rights and interests of the First Lien Agent and First Lien Lenders

in connection with the Chapter 11 Cases.  The Debtors are hereby authorized and directed to pay

all fees, costs, and expenses in accordance with the terms of this Interim Order, without the First

Lien Agent, the First Lien Lenders or the First Lien Professionals having to file any further

application with this Court for approval or payment of such fees, costs or expenses.  Any such

fees, costs and expenses incurred by the First Lien Professionals shall be paid within fifteen (15)

calendar days of delivery of a detailed invoice to the Debtors; provided, however, that if the

Debtors object to the reasonableness of such fees and expenses and cannot resolve the objection

within fifteen (15) days of service of such invoice(s), the Debtors shall file, and serve upon such

First Lien Professional, an objection with the Court (the "Fee Objection") limited to the issue of the reasonableness of the disputed fees and expenses; provided, further, that the Debtors shall timely pay in accordance with this Interim Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed. Following such adjudication by this Court (to the extent this Court finds such amounts to be reasonable), the Debtors shall remit such payments promptly to such First Lien Professional. All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.

(b) Adequate Protection Liens and Adequate Protection Superpriority Claim for First Lien Secured Parties. Subject to the Carve-Out, the First Lien Agent, for the benefit of the First Lien Lenders, is hereby granted: (i) valid, enforceable, non-avoidable and fully perfected, first priority postpetition security interests in and liens (effective and perfected upon the date of entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) (the "First Lien Adequate Protection Liens") on all of the Collateral; and (ii) first priority superpriority administrative expense claims under Bankruptcy Code section 507(b) (the "First Lien Superpriority Claim") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 552 (subject to entry of a Final Order), 726 (to the extent permitted by law), 1113 and 1114, whether or not such expenses or claims arise in these Chapter 11 Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom, to secure in each case an amount equal to the

17

aggregate diminution in the value (which shall be calculated in accordance with Bankruptcy Code section 506(a)) in the interests of the First Lien Agent and the First Lien Lenders in the First Lien Prepetition Collateral (including the Cash Collateral) including, without limitation, any such diminution in value resulting from (a) depreciation, physical deterioration, use, sale, loss or decline in market value of the First Lien Prepetition Collateral; (b) the Carve-Out; or (c) imposition of the automatic stay under section 362 of the Bankruptcy Code or otherwise. For purposes of this Interim Order, the term "Collateral" shall include, without limitation, all prepetition and postpetition property, assets and interests in property and assets of the Debtor (or any successor trustee or other estate representative in the Chapter 11 Case or Successor Case), and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Case or Successor Case), of any kind or nature whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired or created, whether existing prior to the Petition Date or arising after the Petition Date, including, without limitation, all accounts, inventory, contracts, investment property, instruments, documents, chattel paper, patents, trademarks, copyrights, licenses, general intangibles, payment intangibles, machinery and equipment, real property (including all facilities), capital stock of each subsidiary of the Debtor, deposit accounts, commercial tort claims and other causes of action, Cash Collateral, Avoidance Actions and the proceeds thereof (subject to the entry of a Final Order), and all proceeds of any of the collateral described above. The First Lien Adequate Protection Liens and First Lien Superpriority Claim shall be subject and subordinate only to: (i) those valid, enforceable, unavoidable, and properly perfected liens existing on the Petition Date, including, without limitation, those liens that are permitted under section 6.02 of the First Lien Credit Documents with priority over the Prepetition First Priority

Liens (the "First Lien Permitted Priority Liens"), and (ii) solely upon the occurrence of the Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth in this Interim Order.

(c)     Adequate Protection Liens and Adequate Protection Superpriority Claim for Second Lien Secured Parties.  Subject to the Carve-Out, the Second Lien Agent, for the benefit of the Second Lien Secured Parties, is hereby granted: (i) valid, enforceable, non-avoidable and fully perfected, second priority postpetition security interests in and liens (effective and perfected upon the date of entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments (the "Second Lien Adequate Protection Liens" and, together with the First Lien Adequate Protection Liens, the "Adequate Protection Liens") on all of the Collateral; and (ii) second priority superpriority administrative expense claims under Bankruptcy Code section 507(b) (the "Second Lien Superpriority Claim" and, together with the First Lien Superpriority Claim, the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 552 (subject to entry of a Final Order), 726 (to the extent permitted by law), 1113 and 1114, whether or not such expenses or claims arise in these Chapter 11 Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom, to secure in each case an amount equal to the aggregate diminution in the value (which shall be calculated in accordance with Bankruptcy Code section 506(a)) in the interests of the Second Lien Agent and the Second Lien Secured

Parties in the Second Lien Prepetition Collateral (including the Cash Collateral) including, without limitation, any such diminution in value resulting from (a) depreciation, physical deterioration, use, sale, loss or decline in market value of the First Lien Prepetition Collateral; (b) the Carve-Out; (c) the grant of the First Lien Adequate Protection Liens and First Lien Superpriority Claim; or (d) imposition of the automatic stay under section 362 of the Bankruptcy Code or otherwise. The Second Lien Adequate Protection Liens and Second Lien Adequate Protection Priority Claim shall be subject and subordinate only to: (i) the Prepetition First Priority Liens; (ii) the First Lien Adequate Protection Liens; (iii) the First Lien Superpriority Claims; (iv) those valid, enforceable, unavoidable, and properly perfected liens existing on the Petition Date, including, without limitation, those liens that are permitted under section 6.02 of the Second Lien Credit Documents with priority over Prepetition Second Priority Liens (the "Second Lien Permitted Priority Liens" and, together with the First Lien Permitted Priority Liens, the "Permitted Priority Liens"); and (v) solely upon the occurrence of the Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth in this Interim Order.

7.     Additional Reporting Obligations. The Debtors shall prepare and furnish to the First Lien Agent, in form and substance acceptable to the First Lien Agent, a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Approved Budget, on a line-by-line basis showing any percentage variance to the proposed corresponding line item of the Approved Budget (i) for such weekly period and (ii) on a cumulative basis for the period of the Approved Budget or such other budget period, as applicable, and showing a calculation of the covenants and the Debtors' compliance or non-compliance, which shall be certified by the chief financial officer (the "Budget Reconciliation").

Such Budget Reconciliation shall be provided to the First Lien Agent so as actually to be received within four (4) business days following the end of each prior week.

8.    Carve-Out.

(a)    As used in this Interim Order, "Carve Out" means (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6); (ii) to the extent allowed at any time by the Bankruptcy Court, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses incurred by professionals or professional firms retained by (x) the Debtors pursuant to Bankruptcy Code section 327 and (y) any official committee of unsecured creditors appointed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 (collectively, the "Professionals") and owed pursuant to such professionals' respective engagement letters (other than any success fee, transaction fee, or other similar fee set forth in such Professionals' respective engagement letter), which are incurred prior to the Termination Date, and (iii) fees and expenses of Professionals in an aggregate amount not to exceed $750,000, which are incurred on and after the Termination Date (the "Termination Carve-Out"), provided such fees and expenses (in the aggregate) are ultimately allowed by the Bankruptcy Court, subject to the rights of any party in interest to object to the allowance of any such fees and expenses in clauses (ii) and (iii) hereof. For the avoidance of doubt, so long as the Termination Date shall not have occurred, Cash Collateral may be used (i) for payment of fees and expenses of Professionals allowed and payable under Bankruptcy Code sections 330 and 331 (and the same shall not reduce the Termination Carve-Out to the extent such fees and expenses are incurred prior to the Termination Date) and (ii) for payments contemplated to be made pursuant to "first day" orders pursuant to "first day" motions satisfactory in form and substance to the First Lien Agent.

(b)     No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Priority Liens, having a lien or administrative priority superior to or *pari passu* with that of the Adequate Protection Liens granted by this Interim Order, shall be granted while any portion of the Prepetition Secured Debt remains outstanding or in effect without the prior written consent of the First Lien Agent.

9.     Investigation Period.

(a)     The Adequate Protection Liens, the Superpriority Claims, and the Prepetition Lender Liens shall be senior to, and no Collateral or Prepetition Collateral may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any successor cases), any creditor or party in interest, any Committee or any other party in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter against the First Lien Secured Parties in connection with (i) invalidating, setting aside, avoiding, subordinating, recharacterizing, or challenging, in whole or in part, any claims or liens arising under or with respect to the Prepetition Secured Debt, the Collateral, or the Prepetition Collateral, or (ii) preventing, hindering, or delaying, whether directly or indirectly, the First Lien Secured Parties' assertions or enforcement of their liens, security interests, or realization upon any of the Collateral or the Prepetition Collateral. Notwithstanding anything herein to the contrary, any official committee of unsecured creditors appointed pursuant to Bankruptcy Code section 1102 (a "Creditors' Committee") or other party in interest shall have the later of forty (40) days from the date of such Creditors' Committee formation or fifty-five (55) days from the Petition Date (or any subsequent date that may be agreed to in writing by the First Lien Agent in its sole discretion or by an order of the Court, for

cause shown, after notice and a hearing) (the "Investigation Termination Date") to investigate the validity, perfection, enforceability, and extent of the Prepetition Secured Debt and Prepetition Lender Liens and any potential claims of the Debtors or their estates against the Prepetition Agents or Prepetition Secured Parties in respect of the Prepetition Secured Debt and Prepetition Lender Liens, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action (all such claims, defenses and other actions described in the Paragraph are collectively defined as the "Claims and Defenses").

   (b) Any challenge to the Prepetition Secured Debt or Prepetition Lender Liens or the assertion of any other claims or causes of action of the Debtors or their estates against the Prepetition Agents or the Prepetition Secured Parties must be made by a party in interest with standing who timely and properly commences an adversary proceeding on or before the Investigation Termination Date. If no such action is properly filed on or before the Investigation Termination Date, all holders of claims and interests as well as other parties in interest shall be forever barred from bringing or taking any such action, and the Debtors stipulations made in paragraph F and the release (as set forth below in paragraph 10) shall be binding on all parties in interest. If such an action is timely and properly brought, any claim or action that is not brought shall be forever barred. In the event of a timely and successful challenge by plaintiff in such an action, this Court shall fashion the appropriate remedy with respect to the Prepetition Secured Parties after hearing from all parties.

   (c) Nothing in this Interim Order vests or confers on any Creditors' Committee or any other person or entity standing or authority to bring, assert, commence, continue, prosecute, or litigate any cause of action belonging to the Debtors or their estates,

including, without limitation, the Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Secured Debt.

10. _Release_. Subject to entry of the Final Order and the rights set forth in paragraph 9(a) above, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in the Chapter 11 Cases or successor cases) and any party acting by, through, or under the Debtors or their estates, forever and irrevocably (i) release, discharge, waive, and acquit the First Lien Secured Parties, their participants and each of their respective affiliates, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "First Lien Released Parties") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses existing as of the Petition Date, with respect to or relating to the First Lien Obligations, the Prepetition First Priority Liens, the First Lien Loan Documents, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the First Lien Secured Parties; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the First Lien Obligations and the Prepetition First Priority Liens.

11. _Equities of the Case_. Subject to and effective upon entry of the Final Order and in light of the subordination of their liens to the Carve-Out, the First Lien Secured Parties shall be

entitled to all benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, product, offspring, or profits of any of their collateral.

12.    Additional Perfection Measures.

(a)    Pursuant to this Interim Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection, and all liens on any deposit accounts or securities shall, pursuant to this Interim Order be, and they hereby are deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the New York Uniform Commercial Code as in effect as of the date hereof in favor of the Prepetition Secured Parties).

(b)    None of the Debtors or the Prepetition Agents shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Adequate Protection Liens.

RLF1 3518809v.1

(c)     The Prepetition Agents may, but shall not be obligated to, obtain consents from any landlord, licensor or other party in interest, file mortgages, financing statements, notices of lien or similar instruments, or otherwise record or perfect such security interests and liens, in which case:

i.     all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

ii.     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(d)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the Prepetition Agents may, but shall not be obligated to, file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of Collateral or Prepetition Collateral, as applicable, and such filings by the Prepetition Agents shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

13.     Automatic Stay Modified.  The automatic stay provisions of Bankruptcy Code sections 362 are hereby vacated and modified to the extent necessary to permit the First Lien Agent to exercise, upon the occurrence of the Termination Date, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court: (i) terminate the Debtors' use of Cash Collateral; (ii) declare all Adequate Protection Obligations owed to the First Lien Secured  Parties to be immediately due and payable; (iii) set off and apply immediately any and all amounts in accounts maintained by the Debtors with the First Lien Agent against the Adequate Protection Obligations owed to the

First Lien Secured Parties and otherwise enforce rights against the Collateral in the possession of

any of the First Lien Secured Parties for application towards the First Lien Adequate Protection

Obligations; and (iv) take any other actions or exercise any other rights or remedies permitted

under this Interim Order or applicable law to effect the repayment and satisfaction of the

Adequate Protection Obligations owed to the First Lien Secured Parties; provided, however, that

the First Lien Agent, shall provide five (5) business days written notice (the "Waiting Period")

(by facsimile, telecopy, or electronic mail) to the Debtors, their counsel, and counsel to any

statutory committee appointed in these cases prior to exercising any enforcement rights or

remedies in respect of the Collateral (other than the rights described in clauses (i) or (ii) above

(to the extent they might be deemed remedies in respect of the Collateral)), and provided, further

however, that if the Termination Date occurs after the First Lien Agent provides the Debtors with

five (5) business days written notice of any Debtor's failure to comply with any of the terms or

conditions of this Interim Order, the Debtors may continue to use Cash Collateral during the

Waiting Period in the ordinary course of the Debtors' business in accordance with the Interim

Order and Approved Budget if necessary to preserve the value of the Debtors' business. The

rights and remedies of the First Lien Secured Parties specified herein are cumulative and not

exclusive of any rights or remedies that they may otherwise have.

  14. Collateral Rights.

   (a) In the event that any party who has both received notice of the Interim

Hearing and holds a lien or security interest in Collateral or Prepetition Collateral that is junior

and/or subordinate to the Adequate Protection Liens or the Prepetition Lender Liens in such

Collateral or Prepetition Collateral receives or is paid the proceeds of such Collateral or

Prepetition Collateral, or receives any other payment with respect thereto from any other source,

such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral in trust for the First Lien Secured Parties and shall immediately turn over such proceeds to the First Lien Agent.

(b)     If the First Lien Agent or First Lien Lenders shall at any time exercise any of their respective rights and remedies hereunder or under applicable law in order to effect payment or satisfaction of the Adequate Protection Obligations owed to the First Lien Secured Parties or to receive any amounts or remittances due hereunder, including, without limitation, foreclosing upon and selling all or a portion of the Collateral, the First Lien Agent shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as the First Lien Agent shall elect in its sole discretion, subject to the Waiting Period. No holder of a lien shall be entitled to object on the basis of the existence of any such lien to the exercise by the First Lien Agent of its respective rights and remedies under this Interim Order or other applicable law to effect satisfaction of the Adequate Protection Obligations owed to the First Lien Secured Parties or to receive any amounts or remittances due hereunder, provided that the First Lien Agent has complied with paragraph 13 of this Interim Order. Subject to the rights set forth in paragraph 9 hereof, all proceeds and payments delivered to the First Lien Agent pursuant to this paragraph 14 may be applied to the Adequate Protection Obligations owed to the First Lien Lenders, as determined by the First Lien Agent, in its sole discretion, and in no event shall the First Lien Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any such collateral or otherwise.

(c)     Each Debtor shall not sell, lease, transfer or otherwise dispose of its interest in the Collateral outside the ordinary course of business, or seek authority of this Court

28

to do any of the foregoing, without the prior written consent of the First Lien Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by the First Lien Agent or Required Lenders); provided, that the Debtors may sell, lease, transfer or otherwise dispose of its interest in the Collateral outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the First Lien Agent if, in the reasonable judgment of the Debtors, such Collateral is worth less than $100,000; provided, further, however, that the nothing herein shall limit the right of the First Lien Agent of the First Lien Lenders to object to such sale, lease, transfer or other disposition. In the event of any such sale, lease, transfer, license, or other disposition of property outside the ordinary course of business, to the extent permitted by the First Lien Credit Documents and this Interim Order, of any Debtor that constitutes Collateral, the Debtors are authorized and directed, without further notice or order of this Court, to immediately pay to the First Lien Agent, for the benefit of the First Lien Lenders, 100% of the Net Cash Proceeds (as defined in the First Lien Credit Agreement) resulting therefrom on the fifth business day following receipt of such proceeds.

(d)     In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, the Debtors are authorized and directed to pay to the First Lien Agent, for the benefit of the First Lien Lenders, 100% of any insurance proceeds, condemnation award, or similar payment on the fifth business day following receipt of payment by the Debtors.

15.     Successors and Assigns. The provisions of this Interim Order shall be binding upon the Debtors, the Prepetition Secured Parties, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the Prepetition Secured Parties and each of their respective successors and assigns including, without limitation, any trustee, responsible

officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code. The provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest.

16.     <u>Binding Nature of Agreement</u>. Except with respect to the plan of reorganization confirmed by the Court and accepted by the First Lien Secured Parties, the rights, remedies, powers, privileges, liens, and priorities of the Prepetition Secured Parties shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent cases under the Bankruptcy Code unless and until the Prepetition Secured Debt has first been indefeasibly paid in full in cash (including cash collateralization of certain letters of credit but excluding contingent obligations for which no claim has been made) and completely satisfied in accordance with the Prepetition Loan Documents.

17.     <u>Priorities Among Prepetition Secured Parties</u>. Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to the adequate protection granted hereunder), such relative priorities and rights shall continue to be governed by the Prepetition Loan Documents and the Intercreditor Agreement, and the adequate protection rights granted hereunder to each of the First Lien Secured Parties and Second Lien Secured Parties shall have the same relative seniority and priority vis-à-vis as exists with respect to the Prepetition Secured Debt and Prepetition Lender Liens; <u>provided</u>, <u>however</u>, that except as otherwise agreed by the First Lien Agent and Required Lenders and subject to applicable law, the Second Lien Secured

Parties shall not be entitled to receive any payments or distributions from the Debtors until the First Lien Obligations and Adequate Protection Obligations owed to the First Lien Secured Parties have been indefeasibly paid in full in cash.

18.   <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

19.   <u>No Waiver by Failure to Seek Relief</u>.  The delay or failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the Prepetition Secured Parties.

20.   <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the Prepetition Loan Documents, the terms and provisions of this Interim Order shall govern.

21.   <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

22.   <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded to the Prepetition Secured Parties under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of the Chapter 11 Cases or (ii) converting the Chapter 11 Cases into cases under Chapter 7 of the Bankruptcy Code, and (b) the Adequate

Protection Liens and the Superpriority Claims shall continue in these Chapter 11 Cases, in any such successor cases or after any such dismissal. Except as otherwise provided herein, the Adequate Protection Liens and the Superpriority Claims shall maintain their priorities as provided in this Interim Order and the Final Order, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of these Chapter 11 Cases into cases pursuant to Chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until the First Lien Obligations are indefeasibly paid in full in cash.

23. <u>Final Hearing Date</u>. The Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion shall be held on _____, 2009 at \_\_:\_\_ \_.m. (as the same may be adjourned or continued by this Court) before The Honorable _____, at the United States Bankruptcy Court for the District of Delaware.

24. <u>Adequate Notice</u>. The Debtors shall promptly mail copies of this Interim Order, proposed Final Order and notice of the Final Hearing to the Notice Parties, any known party effected by the terms of the Final Order, and any other party requesting notice after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with this Court and served so as to be actually received no later than five business (5) days prior to the Final Hearing by the following: (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Michael Walsh, Esq. (michael.walsh@weil.com), counsel to the Debtors; (ii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Michael S. Stamer, Esq. (mstamer@akingump.com) and 1333 New Hampshire Avenue, NW, Washington, DC 20036, Attn: Scott L. Alberino, Esq. (salberino@akingump.com), as counsel to the First Lien Agent;

32

(iii) counsel to any statutory committee appointed in these cases, and (iv) the Office of the United States Trustee, J. 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081 (Attn: Joseph J. McMahon, Esq. (joseph.mcmahon@usdoj.gov)).

25. <u>Intercreditor Agreement</u>. Neither the entry of this Interim Order nor the contents thereof create, or give rise to, any duty or obligations of the First Lien Secured Parties to the Second Lien Secured Parties under the Intercreditor Agreement or otherwise. Entry of this Interim Order shall not alter, limit, or result in a waiver of rights, duties or remedies of the Prepetition Secured Parties under the Intercreditor Agreement, and the rights of the Prepetition Secured Parties thereunder are reserved.

26. <u>Entry of Interim Order; Effect</u>. This Interim Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's docket in the Chapter 11 Cases.

27. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Interim Order.

28. <u>Binding Effect of Interim Order</u>. The terms of this Interim Order shall be binding on any trustee appointed under Chapter 7 or Chapter 11 of the Bankruptcy Code.

29. <u>Waiver of Requirement to File Proofs of Claim</u>. Neither the First Lien Agent nor the First Lien Lenders shall be required to file proofs of claim with respect to any of the First Lien Prepetition Debt.

RLF1 3518809v.1

Dated: _____, 2009
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

34

# Exhibit A

# Approved Budget

# Hawkeye Renewables Cash Collateral Budget

| ($ in 000's) | Filing Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 12/27/09 | 1/3/10 | 1/10/10 | 1/17/10 | 1/24/10 | 1/31/10 | 2/7/10 | 2/14/10 | 2/21/10 | 2/28/10 | 3/7/10 | 3/14/10 | 3/21/10 | |
| **Operating Cash Receipts** | | | | | | | | | | | | | | |
| Ethanol | 8,342 | 8,616 | 8,962 | 8,962 | 8,962 | 8,962 | 8,449 | 8,449 | 8,449 | 8,449 | 8,236 | 8,236 | 8,236 | 111,312 |
| Distillers Grains | 1,309 | 1,300 | 1,303 | 1,321 | 1,321 | 1,321 | 1,357 | 1,298 | 1,298 | 1,298 | 1,270 | 1,317 | 1,317 | 17,029 |
| **Total Operating Receipts** | 9,651 | 9,917 | 10,265 | 10,284 | 10,284 | 10,284 | 9,806 | 9,747 | 9,747 | 9,747 | 9,505 | 9,552 | 9,552 | 128,341 |
| **Operating Cash Disbursements** | | | | | | | | | | | | | | |
| **Commodity Disbursements** | | | | | | | | | | | | | | |
| Corn | (5,891) | (6,142) | (5,648) | (5,436) | (5,436) | (5,436) | (5,528) | (5,474) | (5,474) | (5,474) | (5,486) | (5,480) | (5,480) | (72,388) |
| Natural Gas | (561) | (649) | (649) | (649) | (649) | (649) | (591) | (591) | (591) | (591) | (653) | (653) | (653) | (8,132) |
| Chemicals | (253) | (258) | (258) | (258) | (258) | (258) | (258) | (258) | (258) | (258) | (258) | (258) | (258) | (3,346) |
| Denaturant | (147) | (150) | (150) | (150) | (150) | (150) | (150) | (150) | (150) | (150) | (150) | (150) | (150) | (1,952) |
| **Non-Commodity Disbursements** | | | | | | | | | | | | | | |
| Rail Car Leases | - | - | (555) | - | - | - | (555) | - | - | - | (555) | - | - | (1,665) |
| Electricity | (716) | (702) | (730) | (730) | (730) | (730) | (730) | (730) | (730) | (730) | (730) | (730) | (730) | (9,451) |
| Freight Expense | (56) | - | (57) | - | (57) | - | (57) | - | (57) | - | (57) | - | (57) | (400) |
| Payroll and Bonuses | (232) | (260) | (260) | (260) | (260) | (260) | (260) | (260) | (260) | (260) | (260) | (260) | (260) | (3,551) |
| Production, Maintenance and Other | - | (980) | (550) | - | - | - | (550) | - | - | - | (550) | - | - | (2,630) |
| Management Fees | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (520) |
| Maintenance CapEx | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Working Capital Effect of Filing [3] | (6,318) | (2,500) | (955) | - | - | - | - | - | - | - | - | - | - | (9,773) |
| **Total Operating Disbursements** | (14,213) | (11,681) | (9,853) | (7,524) | (7,581) | (7,524) | (8,720) | (7,504) | (7,561) | (7,504) | (8,740) | (7,572) | (7,629) | (113,606) |
| **Total Operating Net Cash Flow** | (4,562) | (1,765) | 412 | 2,760 | 2,703 | 2,760 | 1,086 | 2,243 | 2,186 | 2,243 | 766 | 1,980 | 1,923 | 14,735 |
| **Non-Operating Receipts / (Disbursements)** | | | | | | | | | | | | | | |
| Restructuring and Other Professional Fees [2] | - | - | - | - | - | (50) | - | - | (1,570) | - | - | - | (1,570) | (3,190) |
| Hedge Funding | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest / Principal Income | 6 | 5 | 5 | 6 | 6 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 91 |
| **Total Non-Op. Receipts / (Disbursements)** | 6 | 5 | 5 | 6 | 6 | (43) | 7 | 7 | (1,562) | 8 | 8 | 8 | (1,561) | (3,099) |
| **Net Cash Flow** | (4,556) | (1,759) | 417 | 2,765 | 2,709 | 2,716 | 1,093 | 2,250 | 623 | 2,251 | 774 | 1,989 | 362 | 11,635 |
| Beginning Cash | 33,750 | 29,194 | 27,435 | 27,853 | 30,618 | 33,327 | 36,043 | 37,136 | 39,386 | 40,010 | 42,261 | 43,035 | 45,024 | 33,750 |
| Net Cash Flow | (4,556) | (1,759) | 417 | 2,765 | 2,709 | 2,716 | 1,093 | 2,250 | 623 | 2,251 | 774 | 1,989 | 362 | 11,635 |
| **Ending Book Cash** | 29,194 | 27,435 | 27,853 | 30,618 | 33,327 | 36,043 | 37,136 | 39,386 | 40,010 | 42,261 | 43,035 | 45,024 | 45,385 | 45,385 |
| **Assumptions:** | | | | | | | | | | | | | | |
| Ethanol Blended Price per Gallon, net [3] | 1.81 | 1.92 | 1.92 | 1.92 | 1.92 | 1.92 | 1.80 | 1.80 | 1.80 | 1.80 | 1.75 | 1.75 | 1.75 | 1.75 |
| Corn Blended Price per Bushel [3] | 3.92 | 3.98 | 3.98 | 3.98 | 3.98 | 3.98 | 4.01 | 4.01 | 4.01 | 4.01 | 4.01 | 4.01 | 4.01 | 4.01 |

Note: Budget does not project emergence date.

(1) Working capital effect represents working capital contraction at filing due to change in payment terms relating to suppliers and includes prepayment and customer deposits.

(2) Does not include fees to be paid post-emergence or professional fees for unsecured creditors committee should one be appointed.

(3) Projections reflect management's estimates of the commodity prices it could realize in the coming weeks for the entire 13 week period. Blended prices include ethanol sold forward and corn purchased forward at pre-contracted levels.

## Financial Covenants

1.    **Financial Covenants**

I.    **Non-Commodity Disbursement Covenant:** The Debtors' may make non-commodity disbursements in excess of the amount set forth in the Approved Budget for those particular disbursement line items so long as the percentage deviation for all cumulative non-commodity disbursement line items during the applicable Calculation Period (as defined below) shall not exceed fifteen percent (15%) in the aggregate, of the amount set forth in the Approved Budget for all cumulative non-commodity disbursement line items for such Calculation Period (the "Non-Commodity Covenant"). Non-commodity disbursements include all disbursements except for the following excluded disbursements:

    a.    Professional fees and expenses,

    b.    Corn, natural gas, miscellaneous chemicals and denaturant (together, "Commodity Disbursements"),

    c.    Posting of margin for and/or realized losses from approved Financial Hedging Transactions (as defined below),

    d.    Disbursements up to $500,000 for necessary but unplanned repairs, maintenance and capital expenditures required for plant operations that are not included in the Approved Budget, and

    e.    Deposits made with a financial institution or a third party to collateralize letters of credit or guarantees issued in lieu of vendor deposits and/or prepayments, provided that financial institutions and/or third parties that will receive such deposits require the advance approval of the First Lien Agent.

II.   **Minimum Cash Balance Covenant:** The Debtors' may not make Commodity Disbursements in excess of the amounts set forth in the Approved Budget for those particular line items during the applicable Calculation Period if the Debtors' actual ending cash balance is lower than the Minimum Cash Balance (as defined below) for two consecutive weeks (the "Minimum Cash Balance Covenant" and, together with the Non-Commodity Covenant, the "Covenants"). The Minimum Cash Balance is the actual cash balance at the beginning of the Calculation Period less (x) $7.5 million and (y) the following amounts actually disbursed during the Calculation Period:

    a.    Vendor deposits, vendor prepayments and critical vendor payments up to the respective amount included in the Approved Budget.

    b.    Deposits made with a financial institution or a third party to collateralize letters of credit or guarantees issued in lieu of vendor deposits and/or prepayments,

provided that financial institutions and/or third parties that will receive such deposits require the advance approval of the First Lien Agent.

c. Professional fees and expenses,

d. Posting of margin for and/or realized losses from approved Financial Hedging Transactions (as defined below), and

e. Disbursements up to $500,000 for necessary but unplanned repairs, maintenance and capital expenditures required for plant operations that are not included in the Approved Budget

If the Debtors' determine that a non-budgeted disbursement(s) was for expenses incurred due to a change in business conditions brought about by the Debtors' Chapter 11 filing and such disbursement(s) would cause a default of a Covenant, the Debtors may request that the First Lien Agents and Required Lenders consent to the exclusion of such disbursement(s) from the relevant Covenant calculation, provided, however, any such exclusion from a Covenant calculation shall require the prior approval of the First Lien Agent and the Required Lenders.

2. **Financial Hedging Activities**. Financial hedging transactions, which include futures, options and swaps cleared through a broker on a commodity exchange or OTC market ("Financial Hedging Transactions"), shall not be permitted absent the prior approval of a risk management committee appointed by the First Lien Agent and the Required Lenders. Financial Hedging Transactions existing on the Petition Date shall be considered approved. For the avoidance of doubt, Financial Hedging Transactions exclude ordinary course forward physical sales of ethanol and distillers grains and forward physical purchases of corn, natural gas, denaturant and chemicals ("Forward Physical Sales and Purchases"). Forward Physical Sales and Purchases include sales and purchase agreements with counterparties in which the actual physical commodity is expected to be delivered under the contract.

3. **Non-Debtor Affiliate Distributions**. Distributions and payments to Hawkeye Energy Holdings, LLC ("HEH") and any affiliates (to include members of HEH and any affiliate, but excluding Hawkeye Grain, LLC) shall be prohibited other than payments made in the ordinary course of the Debtors' business pursuant to the following agreements:

i. Amended and Restated Services Agreement dated January 28, 2009 between HEH and Hawkeye Renewables LLC,

ii. Exclusive Ethanol Marketing Agreement dated May 30, 2008 between Hawkeye Gold, LLC ("Gold") and Hawkeye Renewables LLC (including, for the avoidance of doubt, all purchase orders entered into pursuant to such agreement), and

iii. Distiller's Grains Marketing Agreements dated October 19, 2007 between Gold and Hawkeye Renewables LLC (including, for the avoidance of doubt, all purchase orders entered into pursuant to such agreement).

4. **Calculation Period**. The applicable calculation period (the "Calculation Period") will include the period commencing on the first day of the Approved Budget or Supplemental Approved Budget and ending on the last day of the then current week, provided, however, that the first Calculation Period shall end on the last day of the second week of the Approved Budget or Supplemental Approved Budget.

# Exhibit B

**Intercreditor Agreement**

# INTERCREDITOR AGREEMENT

dated as of

June 30, 2006,

among

## THL-HAWKEYE ACQUISITION LLC
(to be merged with and into HAWKEYE RENEWABLES, LLC),

as Borrower,

### HAWKEYE INTERMEDIATE, LLC,

as Holdings,

the Subsidiaries of THL-ACQUISITION LLC and HAWKEYE INTERMEDIATE, LLC
from time to time party hereto,

### CREDIT SUISSE,

as First Lien Collateral Agent

and

### CREDIT SUISSE,

as Second Lien Collateral Agent

THIS IS THE INTERCREDITOR AGREEMENT REFERRED TO IN (A) THE FIRST LIEN GUARANTEE AND COLLATERAL AGREEMENT OF EVEN DATE HEREWITH AMONG THL-HAWKEYE ACQUISITION LLC (TO BE MERGED WITH AND INTO HAWKEYE RENEWABLES, LLC), HAWKEYE INTERMEDIATE, LLC, CERTAIN SUBSIDIARIES OF HAWKEYE RENEWABLES, LLC AND CREDIT SUISSE, (B) THE SECOND LIEN GUARANTEE AND COLLATERAL AGREEMENT OF EVEN DATE HEREWITH AMONG THL-HAWKEYE ACQUISITION LLC (TO BE MERGED WITH AND INTO HAWKEYE RENEWABLES, LLC), HAWKEYE INTERMEDIATE, LLC, CERTAIN SUBSIDIARIES OF HAWKEYE RENEWABLES, LLC AND CREDIT SUISSE, AND (C) THE OTHER SECURITY DOCUMENTS REFERRED TO IN THE CREDIT AGREEMENTS REFERRED TO HEREIN.

[CS&M Ref No. 5865-457]

TABLE OF CONTENTS

# ARTICLE I

## DEFINITIONS

SECTION 1.01.  Certain Defined Terms....................................................................2
SECTION 1.02.  Other Defined Terms ....................................................................2
SECTION 1.03.  Terms Generally............................................................................7

# ARTICLE II

## LIEN PRIORITIES

SECTION 2.01.  Relative Priorities.........................................................................7
SECTION 2.02.  Prohibition on Contesting Liens ...................................................8
SECTION 2.03.  No New Liens ...............................................................................8
SECTION 2.04.  Similar Liens and Agreements......................................................8

# ARTICLE III

## ENFORCEMENT OF RIGHTS; MATTERS RELATING TO COLLATERAL

SECTION 3.01.  Exercise of Rights and Remedies .................................................9
SECTION 3.02.  No Interference .............................................................................11
SECTION 3.03.  Rights as Unsecured Creditors.....................................................13
SECTION 3.04.  Automatic Release of Second Priority Liens................................13
SECTION 3.05.  Insurance and Condemnation Awards ..........................................14

# ARTICLE IV

## PAYMENTS

SECTION 4.01.  Application of Proceeds.................................................................14
SECTION 4.02.  Payment Over...............................................................................14
SECTION 4.03.  Certain Agreements with Respect to Unenforceable Liens ................15

# ARTICLE V

## BAILMENT FOR PERFECTION OF CERTAIN SECURITY INTERESTS