UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re                                        : Chapter 11
                                             :
HAWKEYE RENEWABLES, LLC, *et al.*,[1]        : Case No. 09-14461 (KJC)
                                             :
Debtors.                                     : (Jointly Administered)
                                             :
---------------------------------------------------------------x   Re: Docket Nos. 9, 45, 68

## DEBTORS' REPLY TO LIMITED OBJECTION OF SECOND LIEN AGENT TO APPROVAL OF FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, AND (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE

Hawkeye Renewables, LLC ("Renewables") and its parent, Hawkeye Intermediate, LLC ("Intermediate"), as debtors and debtors in possession (collectively, the "Debtors"), respectfully represent:

### Background

1. On December 21, 2009 (the "Petition Date"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Hawkeye Renewables, LLC (3162) and Hawkeye Intermediate, LLC (5356). The Debtors' corporate headquarters and service address is: 224 S. Bell Avenue, Ames, Iowa 50010.

2. On December 21, 2009, the Debtors filed the Motion of the Debtors Pursuant to Sections 105(a), 361, and 363 of the Bankruptcy Code For Entry of an Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing [Docket No. 9] (the "Motion").[2]

3. On December 22, 2009, the Court entered the Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code, and (III) Scheduling a Final Hearing [Docket No. 45] (the "Interim Order").

4. On January 15, 2010, Wilmington Trust FSB (the "Second Lien Agent") filed the Limited Objection of the Second Lien Agent to Approval of Final Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, and (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code [Docket No. 68] (the "Objection"). The Second Lien Agent's objection argues that the second lien lenders should receive adequate protection in the form of payment of their professional fees and releases for prepetition acts.

## Preliminary Statement

5. The Debtors believe that the First Lien Lenders are the only party in interest in any controversy regarding the use of Cash Collateral. As stated in the Disclosure Statement, the First Lien Lenders are significantly undersecured. See Disclosure Statement, 24-26 [Docket No. 5]. Nonetheless, the Debtors are providing the Second Lien Lenders with the form of adequate protection required by the Intercreditor Agreement with the First Lien Lenders and the Debtors. A copy of the Intercreditor Agreement is attached hereto as Exhibit A. Neither the documents

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

nor the law requires the Debtors to provide exactly the same form of adequate protection to the Second Lien Lenders as provided to the First Lien Lenders. Therefore, the Second Lien Agent has no support for the proposition that the debtors are acting in a punitive way under the proposed Cash Collateral Order. Most importantly, it is not appropriate to use these estates' limited assets to fund a valuation fight. The Second Lien Agent and the Second Lien Lenders are sophisticated financial entities, capable of funding their own legal expenses. Moreover, based on the limited value of the Debtors' estates, any expenses paid to Second Lien Lenders and their Agent would further reduce the recovery to the First Lien Lenders.

### The Second Lien Lenders are Receiving the Adequate Protection Required by the Intercreditor Agreement

6. The Intercreditor Agreement governs the rights of the Second Lien Agent and the Second Lien Lenders to seek adequate protection in the event of a chapter 11 filing of the Debtors. First, Section 6.01(a)(i) of the Intercreditor Agreement provides that the Second Lien Lenders and the Second Lien Agent

> will not oppose or object to the use of any Collateral constituting cash collateral under Section 363 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law, unless the [First Lien Lenders], or a representative authorized by the [First Lien Lenders] shall oppose or object to the use of such cash collateral . . . .

As the Second Lien Agent is well aware, the First Lien Lenders fully support the relief requested in the Motion. Second, Section 6.01(a)(iii) of the Intercreditor Agreement provides that the Second Lien Lenders and the Second Lien Agent,

> except to the extent permitted in paragraph (b) of this Section 6.01, in connection with the use of cash collateral as described in clause (i) above or a DIP Financing, will not request adequate protection or any other relief in connection with such use of cash collateral, DIP Financing or DIP Financing Liens . . . .

Section 6.01(b) of the Intercreditor Agreement provides that the Second Lien Lenders and the Second Lien Agent shall not contest <u>any</u> request for adequate protection by the First Lien Lenders. Third, Section 6.01(b) continues by delineating the only form of adequate protection that the Second Lien Lenders or the Second Lien Agent may request:

> [I]f, in connection with any . . . use of cash collateral . . . any First Lien Secured Party is granted adequate protection in the form of a Lien on additional collateral, the Second Lien Collateral Agent may, for itself and on behalf of the other Second Lien Secured Parties, seek or request adequate protection in the form of a Lien on such additional collateral, which Lien will be subordinated to the First Priority Liens . . . on the same basis as the other Second Priority Liens are subordinated to the First Priority Liens under [the Intercreditor Agreement].

Intercreditor Agreement, § 6.01(b). It is clear from these provisions that the adequate protection that the Second Lien Lenders may request is limited, while the adequate protection for the First Lien Lenders is not. The Interim Order and the proposed Final Order already provide adequate protection liens to the Second Lien Lenders with the same priority as those provided in the Loan Documents, without any need for action from the Second Lien Agent. The Second Lien Agent should not now be allowed to renegotiate the form of adequate protection that was agreed by the parties in the Intercreditor Agreement.

**The Debtors Are Not Required to Provide Additional Adequate Protection**

7. Based on the Disclosure Statement and the Callahan Declaration, the value of the collateral is significantly less than the amount of the First Lien Lender claims. See Callahan Declaration, ¶¶ 11-13, 21 (the outstanding claims of the First Lien Lenders is approximately $593 million, and the value of the Debtors is in the range of $191 to $228 million, with a midpoint of $210 million (which is approximately 35% of the claims of the First Lien Lenders)) [Docket No. 3]; see also Disclosure Statement, 24-26 [Docket No. 5]. Therefore, the Debtors' continued use of Cash Collateral cannot result in a decline in the Second Lien Lenders' interest

in the Cash Collateral. Hence, the Second Lien Lenders are not entitled to additional adequate protection.

### The Debtors Should Not Be Required to Release Second Lien Lenders

8.  The Debtors' proposed Prepackaged Plan provides a broad standard release to significant parties in interest in the Chapter 11 Cases, including the Second Lien Lenders. The Debtors are hopeful that the Prepackaged Plan will be confirmed within the next 45 – 60 days. However, the Debtors have not had an opportunity to investigate the acts of the Second Lien Lenders or their agent to make a determination whether a release by the Debtors would be appropriate prior to confirmation or in the event confirmation of the Prepackaged Plan does not occur. As an example, the Second Lien Agent's Objection is certainly a violation of the Intercreditor Agreement. In any event, as described above, there is no requirement to provide a release to the Second Lien Lenders at this time as a form of adequate protection.

### The Debtors are not Required to Pay the Second Lien Agent Fees

9.  Payment of the Second Lien Agent's fees also is not required by the Intercreditor Agreement. The fact that the Debtors do not pay the Second Lien Agent's fees in no way limits the ability of the Second Lien Lenders to contest the Prepackaged Plan. The Second Lien Lenders and the Second Lien Agent are sophisticated financial institutions and are ably represented by experienced counsel; if they disagree with the Debtors' conclusions in the Prepackaged Plan and the Disclosure Statement, they can use their own funds to prove their case. Additionally, in its Objection, the Second Lien Agent indicates that it would be a proper party to play the role of unsecured creditors' committee. However, the Second Lien Agent's interest are very distinct from other unsecured creditors in these cases, and allowing its singular interest to

replace the varied interests of the other unsecured creditors in these cases at the expense of the Debtors would be inappropriate.

10. Finally, the fact that the prepetition Second Lien Credit Agreement includes an obligation to pay fees and expenses is not justification for the payment of such amounts after the commencement of a chapter 11 case. See e.g. In re Global Industrial Technologies, Inc., 344 B.R. 382, 385 (Bankr. W. D. Pa., 2006) (holding that there is no entitlement of unsecured creditors to collect postpetition fees an expenses based on contractual provisions in an indenture) (citing United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365 (1988)).

## CONCLUSION

WHEREFORE the Debtors request that the Court enter the proposed Order filed by the Debtors and that Second Lien Agent's Objection be denied.

Dated: January 19, 2010
Wilmington, Delaware

/s/ Katherine Good
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Mark D. Collins (No. 2981)
L. Katherine Good (No. 5101)
(302) 651-7700

- and -

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Michael F. Walsh
(212) 310-8000

*Proposed Attorneys for the Debtors and Debtors in Possession*