IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: 
In re: : Chapter 11
:
HAWKEYE RENEWABLES, LLC., et al.,[1] : Case No. 09-14461 (KJC)
:
: (Jointly Administered)
:
Debtors. : Hearing Date: January 19, 2010 at 2:00 p.m.
---------------------------------------------------------------x

**FIRST LIEN AGENT'S (A) REPLY TO LIMITED OBJECTION OF SECOND LIEN AGENT TO APPROVAL OF FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, AND (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND (B) JOINDER TO THE DEBTORS' REPLY**

Credit Suisse AG, Cayman Islands Branch, in its capacity as administrative and collateral agent (the "First Lien Agent")[2] under the Debtors' prepetition first lien credit agreement (the "First Lien Credit Agreement"), hereby submits this (A) Reply to the Limited Objection of Second Lien Agent to Approval of Final Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, and (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code [Docket No. 68] (the "Limited Objection") and (B) Joinder to the Debtors' Reply (defined below) in response thereto (the "Reply"). In support of its Reply, the First Lien Agent respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Hawkeye Renewables, LLC (3162) and Hawkeye Intermediate, LLC (5356). The Debtors' corporate headquarters and service address is: 224 S. Bell Avenue, Ames, Iowa 50010.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Interim Order.

## BACKGROUND

1. On December 21, 2009 (the "Petition Date"), Hawkeye Renewables, LLC and its parent, Hawkeye Intermediate, LLC, (collectively, the "Debtors") commenced their chapter 11 cases by each filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their business and managing their affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner or committee has been appointed in these cases.

2. On December 21, 2009, the Debtors filed the Motion of the Debtors Pursuant to Sections 105(a), 361, and 363 of the Bankruptcy Code for Entry of an Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing (the "Motion") [Docket No. 9]. On December 22, 2009, the Court approved the interim order (the "Interim Order") granting the relief requested in the Motion and scheduling a final hearing for January 19, 2010.

3. On January 15, 2010, the Second Lien Agent filed a Limited Objection, arguing that certain adequate protection rights that were granted to the First Lien Parties in the Interim Order – specifically the releases (the "Releases") and the reimbursement of fees and expenses (the "Expense Reimbursement") – should be granted to the Second Lien Parties.

4. On January 18, 2010, the Debtors' filed a reply to the Limited Objection (the "Debtors' Reply").

5. On June 30, 2006, THL-Hawkeye Acquisition LLC (merged with and into Renewables), Intermediate, the subsidiaries of THL-Hawkeye Acquisition LLC and Intermediate from time to time party thereto and each of the Prepetition Agents entered into an intercreditor agreement (the "Intercreditor Agreement") governing the respective rights of the

Prepetition Agents and the Prepetition Lenders. Through the Intercreditor Agreement, the Prepetition Secured Parties created contractual obligations to each other that govern potential disputes, including those which may arise during these Chapter 11 Cases.

6. The Intercreditor Agreement limits the rights of the Second Lien Agent to object to the use of Cash Collateral. Specifically, section 6.01(a) provides:

> (a) Until the Discharge of First Lien Obligations has occurred, the Second Lien Collateral Agent, for itself and on behalf of the other Second Lien Secured Parties, agrees that, in the event of any Insolvency or Liquidation Proceeding, the Second Lien Secured Parties:
>
> (i) ***will not oppose or object to the use of any Collateral constituting cash collateral*** under Section 363 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law, unless the First Lien Secured Parties, or a representative authorized by the First Lien Secured Parties, shall oppose or object to such use of cash collateral....

See Intercreditor Agreement, § 6.01(a)(i) (emphasis added).

7. Moreover, the Intercreditor Agreement prohibits the Second Lien Agent from requesting adequate protection or any other relief in connection with the use of cash collateral except in certain limited circumstances:

> [E]xcept to the extent permitted by paragraph (b) of this Section 6.01, in connection with the use of cash collateral as described in clause (i) above or a DIP Financing, ***will not request adequate protection or any other relief in connection with such use of cash collateral***, DIP Financing or DIP Financing Liens; ...

See Intercreditor Agreement, § 6.01(a)(iii) (emphasis added).

8. Under section 6.01(b) of the Intercreditor Agreement, the Second Lien Parties may only request adequate protection if the First Lien Parties are granted adequate protection in the form of a lien on additional collateral. In that situation, the Second Lien Party may "seek or

3

request additional adequate protection in the form of a Lien on such additional collateral, which Lien will be subordinated to the First Priority Liens and DIP Financing Liens. . . ." *See* Intercreditor Agreement, § 6.01(b). This is the only type of adequate protection that the Second Lien Parties are contractually permitted to seek. Both the Interim Order and the Final Order comport to, and go beyond, this requirement by granting the Second Lien Parties the Second Lien Adequate Protection Liens and the Second Lien Superpriority Claims.

## ARGUMENT

A. **The Second Lien Agent Has Waived Its Right to Oppose the Debtors' Consensual Use of Cash Collateral and to Request Additional Adequate Protection**

9. The Second Lien Agent, on behalf of the Second Lien Lenders, has waived its right to object to entry of the final cash collateral order and to request additional adequate protection under the express terms of the Intercreditor Agreement. This Court has jurisdiction to interpret and enforce the express terms of the Intrecreditor Agreement and should overrule the Limited Objection on this basis alone.

10. The Intercreditor Agreement was entered into in connection with the issuance of the First Lien Debt and Second Lien Debt and is a critical agreement which governs the relative rights among holders of such debt. The enforceability of the Intercreditor Agreement does not appear to be in dispute as the Second Lien Agent does not take the position that the Intercreditor Agreement is unenforceable under applicable non-bankruptcy law.

11. Section 510(a) of the Bankruptcy Code provides that "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a). Bankruptcy courts have recognized that intercreditor/subordination agreements should be enforced because failure to do

so would impair the contract rights of creditors and unfairly allow subordinate creditors a second opportunity to negotiate their rights. *See In re ION Media Network, Inc.*, Case No. 09-13125, 2009 WL 4047995, *6 (Bankr. S.D.N.Y. November 24, 2009) (finding that "plainly worded contracts establishing priorities and limiting obstructionist, destabilizing and wasteful behavior should be enforced and creditor expectations should be appropriately fulfilled"); *In re Enron Creditors Recovery Corp, et al.*, 370 B.R. 64, 70-71 (Bankr. S.D.N.Y. 2007) (finding that failure to enforce subordination agreements according to their terms would cause lending institutions to discontinue or severely alter their subordinated lending practices "to the detriment of the entire business community"). Here, the same concerns exist. The Second Lien Agent seeks a second bite at the apple by asking this Court to selectively override provisions of the Intercreditor Agreement which it argues are prejudicial notwithstanding the fact that the Second Lien Agent previously bargained away such rights. The Court has no legal or equitable authority to rewrite the terms of the Intercreditor Agreement. To do so would contravene section 510(a) of the Bankruptcy Code and alter the bargained for rights of the First Lien Lenders.

12. In a similar situation, one court recently concluded that a second lien lender, as a result of a similar intercreditor agreement, lacked standing to oppose a financing arrangement supported by the debtors' first lien lenders. In *Aurelius Capital Master. Ltd. v. TOUSA Inc. (In re TOUSA Inc.)*, 2009 U.S. Dist. LEXIS 12735 (S.D. Fla. Feb. 5, 2009) (hereinafter "TOUSA"), the District Court for the Southern District of Florida, before reaching the merits of the appeal, concluded that the second lien agent's appeal of the debtors' cash collateral order was "non-justiciable for reasons of standing." *Id.* at *26. Specifically, the District Court concluded that the agent for the second lien lenders, who was party to an intercreditor agreement that

barred it from requesting any form of adequate protection or any other relief in connection with the use of the cash, "had bargained away its right to object by entering into the Intercreditor Agreement." *Id.* at *30. Thus, following the debtors' agreement with the first lien lenders concerning the consensual use of cash collateral, the second lien agent had no standing to raise objections or otherwise make any request with respect to the financing arrangement.

13. The recent holding in *TOUSA* is another in a series of opinions where courts have enforced certain prebankruptcy agreements that limit or waive a junior lender's statutory bankruptcy rights if the agreement is enforceable as a matter of applicable non-bankruptcy law. *See In re ION Media Network, Inc.*, Case No. 09-13125, 2009 WL 4047995, *6 (Bankr. S.D.N.Y. November 24, 2009) (finding an intercreditor agreement enforceable under section 510 (a) of the Bankruptcy Code); *In re Aerosol Packaging, LLC*, 362 B.R. 43 (Bankr. N.D. Ga. 2006) (upholding a senior creditor's right to vote a junior creditor's claim pursuant to prepetition subordination agreement); *In re Curtis Center Ltd. P'ship,* 192 B.R. 648, 660 (Bankr. E.D. Pa. 1996) (upholding bankruptcy related waiver in the intercreditor agreement related to voting restrictions, noting that "[t]he language of the subordination agreement is plain and unambiguous. The terms of this pre-petition agreement are fully enforceable in this Bankruptcy case pursuant to 11 U.S.C. § 510(a)."); *In re Inter Urban Broad. Of Cincinnati, Inc.*, 1994 U.S. Dist. LEXIS 16546, at *6-7 (E.D. La. 1994) (same).

14. Here, the express terms of the Intercreditor Agreement clearly prohibit the Second Lien Agent from (i) objecting to a proposed use of cash collateral supported by the First Lien Agent and First Lien Lenders and (ii) requesting adequate protection, other than subordinate liens on new collateral. *See* Intercreditor Agreement, § 6.01. Moreover, the Intercreditor Agreement provides that in the event of an insolvency proceeding, the Intercreditor Agreement

will survive and continue in full force and effect. *See* Intercreditor Agreement, § 10.03 ("The terms of this Agreement shall survive, and shall continue in full force and effect, in any Insolvency or Liquidation Proceeding."). For these reasons, the Court should find that the Second Lien Agent has waived its right to object to entry of the Final Order and should overrule the Limited Objection.

B. **The Second Lien Agent Has Not Established That It has an Interest in Cash Collateral Entitled to Adequate Protection**

15. Further, as explained in more detail in the Debtors' Reply, the Second Lien Agent has not established that it has an interest in cash collateral which entitles it to adequate protection. Section 363(p)(2) of the Bankruptcy Code provides that an entity asserting an interest in property in a hearing under section 363 of the Bankruptcy Code has the burden of proof with respect to the validity, priority and extent of such interest. 11 U.S.C. § 363(p)(2). Here, the Second Lien Agent fails to carry this burden. The Second Lien Agent has offered no evidence in its Limited Objection to contravene the Debtors' position on valuation reflected in the Callahan Declaration and Disclosure Statement, which indicates that the Second Lien Lenders are out of the money by approximately $400 million. *See In re Dunckle Assocs., Inc.*, 19 B.R. 481, 485 n.10 (Bankr. E.D. Pa. 1982) (explaining that the law is well settled that valueless junior secured positions or unsecured deficiency claims are not entitled to adequate protection). Furthermore, the Second Lien Agent fails to cite a single case in the Limited Objection which supports the position that an out of the money junior lienholder is entitled to adequate protection much less the protections sought by the Second Lien Agent. Accordingly, the Limited Objection should be overruled due to the Second Lien Agent's failure to establish that it is entitled to adequate protection as a matter of law.

## RESERVATION OF RIGHTS

16. The First Lien Agent, on behalf itself and the First Lien Lenders, reserves all rights with respect to enforcement of the Intercreditor Agreement, including all rights to seek damages and other relief thereunder.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Motion and the Debtors' Reply, the First Lien Agent requests that the Court enter an order (i) granting the relief requested in the Motion, (ii) overruling the Limited Objection, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, DE
January 19, 2010

/s/ _____
Robert J. Dehney, Esq.
Gregory T. Donilon, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
Telephone: 302.658.9200
Facsimile: 302.425.3089
gdonilon@mnat.com
rdehney@mnat.com

*Attorneys for the First Lien Agent*

- and -

Michael S. Stamer, Esq.
Natalie E. Levine, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002
mstamer@akingump.com
nlevine@akingump.com

- and -

Scott L. Alberino, Esq.
Joanna F. Newdeck, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone: 202.887.4000
Facsimile: 202.887.4288
salberino@akingump.com
jnewdeck@akingump.com

*Attorneys for the First Lien Agent*