**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
---------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11
                                          :
HAWKEYE RENEWABLES, LLC, et al.,          :        Case No. 09-14461 (KJC)
                                          :
          Debtors.                        :        Jointly Administered
                                          :        Re: Docket Nos. 9 & 45
---------------------------------------------------------------x
```

**FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT
TO SECTION 363 OF THE BANKRUPTCY CODE AND (II) PROVIDING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES
PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE**

Upon the motion (the "Motion"), dated December 21, 2009, of Hawkeye Renewables,

LLC ("Renewables") and its parent, Hawkeye Intermediate, LLC ("Intermediate"), as debtors

and debtors in possession (collectively, the "Debtors"), for interim and final orders (the "Interim

Order" and "Final Order," respectively, and collectively, the "Orders") authorizing them to,

among other things, (i) use Cash Collateral (as defined below) pursuant to sections 363 of title 11

of the United States Code (the "Bankruptcy Code"), and (ii) provide adequate protection,

pursuant to Bankruptcy Code sections 105(a), 361, and 363 and Rules 2002, 4001 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and having sought the

following relief:

(a)     This Court's authorization, pursuant to sections 361 and 363 of the Bankruptcy

Code, to use the Cash Collateral (as defined below) (which Cash Collateral shall be used in

accordance with the budget, including any variances therefrom and the financial covenants,

attached hereto as Exhibit A (as such budget may be extended, varied, supplemented, or

otherwise modified in accordance with the provisions of the Interim Order or this Final Order,

the "Approved Budget")), and provide certain adequate protection to the Prepetition Secured

Parties (as defined below) against the diminution in the value of the Prepetition Collateral, the use, sale or lease of the Prepetition Collateral or the imposition of the automatic stay pursuant to Bankruptcy Code section 362; and

(b)     This Court's approval pursuant to Bankruptcy Code sections 361, and 363 of the form and manner of adequate protection being granted to the Prepetition Secured Parties who have been granted prepetition liens and security interests under the following documents (collectively, the "Prepetition Loan Documents"):

(i)     the First Lien Credit Agreement dated as of June 30, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "First Lien Credit Agreement"), among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), Credit Suisse, as administrative and collateral agent (the "First Lien Agent"), and the lenders party thereto (the "First Lien Lenders", referred to collectively with the First Lien Agent as the "First Lien Secured Parties");

(ii)     the First Lien Guarantee and Collateral Agreement (the "First Lien Guarantee" and, together with the First Lien Credit Agreement, the "First Lien Credit Documents") dated as of June 30, 2006 among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), the subsidiaries of Renewables from time to time party thereto and Credit Suisse, as collateral agent;

(iii)     the Second Lien Credit Agreement dated as of June 30, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Credit Agreement" and, together with the First Lien Credit Agreement, the "Prepetition Credit Agreements"), among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), Wilmington Trust FSB, as administrative and collateral agent (the "Second Lien

2

Agent" and, together with the First Lien Agent, the "Prepetition Agents") and the lenders party thereto (the "Second Lien Lenders", referred to collectively with the Second Lien Agent as the "Second Lien Secured Parties");

(iv)    the Second Lien Guarantee and Collateral Agreement (the "Second Lien Guarantee" and, together with the Second Lien Credit Agreement, the "Second Lien Credit Documents") dated as of June 30, 2006 among Intermediate, THL-Hawkeye Acquisition LLC (merged with and into Renewables), the subsidiaries of Renewables from time to time party thereto and Credit Suisse, as collateral agent.

(c)    This Court's finding, pursuant to Bankruptcy Rules 2002 and 4001(c)(1), and the Local Rules of this Court that notice of the Motion, the relief requested therein, the Interim Hearing having been given to (i) the United States Trustee (the "U.S. Trustee"), (ii) counsel to any known secured creditors of record, (iii) counsel to the Prepetition Agents, (iv) the Prepetition Secured Parties, (v) the thirty (30) largest unsecured creditors of the Debtors, (vi) any party asserting a Lien against any of the Debtors' assets, and (vii) the Internal Revenue Service (collectively, the "Notice Parties"); and such notice being sufficient and adequate, and no other or further notice being required; and

The Interim Hearing having been held by this Court on December 22, 2009 and this Court having entered the Interim Order that, among other things, (i) authorized the Debtors' use of Cash Collateral (as defined below), (ii) granted the adequate protection described in the Interim Order, and (iii) scheduled a final hearing (the "Final Hearing") to consider entry of the Final Order.

Due and appropriate notice of the Motion, the final relief requested therein and the Final Hearing, as well as the Interim Order, having been served by the Debtors upon the notice parties in accordance with the terms of the Interim Order.

The Final Hearing having been held on January 19, 2010; and based upon all of the pleadings filed with this Court, the evidence presented at the Interim Hearing, the Final Hearing and the entire record herein; and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and this Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion, as modified herein on an interim basis, is in the best interests of the Debtors, their estates, and their creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND (FINDINGS OF FACT AND CONCLUSIONS OF LAW):**

A.  Disposition.  The Motion is granted on a final basis in accordance with the terms of this Final Order.  Any objections to the Motion with respect to the entry of the Final Order that have not been withdrawn, waived or settled, and all reservation of rights included therein, are hereby denied and overruled.

B.  Petition Date.  On December 21, 2009 (the "Petition Date"), the Debtors commenced their chapter 11 cases (the "Chapter 11 Cases") by filing their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner or committee has been appointed in the Chapter 11 Cases.

C.  Jurisdiction; Venue.  This Court has jurisdiction over the Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §§157(b)(2)(D) and 1334.

4

This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Venue for the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

D.    Prepetition Indebtedness.  For purposes of this Final Order, the term "Prepetition Secured Debt" shall mean all Obligations (as defined in the Prepetition Credit Agreements) owed to the Prepetition Secured Parties under the Prepetition Loan Documents (other than contingent obligations for which no claim has been made) as set forth in paragraph F below.

E.    Prepetition Lender Liens.

(i)    To secure the First Lien Obligations (as defined below) under the First Lien Credit Agreement, the Debtors granted the First Lien Agent, on behalf of the First Lien Lenders, valid first priority liens (the "Prepetition First Priority Liens") upon and in substantially all of the Debtors' assets, and all proceeds and products of such assets (the "First Lien Prepetition Collateral").

(ii)    To secure the Second Lien Obligations (as defined below) under the Second Lien Credit Agreement, the Debtors granted the Second Lien Agent, on behalf of the Second Lien Lenders, valid second priority liens (the "Prepetition Second Priority Liens, and, together with the Prepetition First Priority Liens, the "Prepetition Lender Liens") upon and in substantially all of the Debtors' assets, and all proceeds and products of such assets (the "Second Lien Prepetition Collateral" and, together with the First Lien Prepetition Collateral, the "Prepetition Collateral").  Pursuant to and to the extent set forth in that certain Intercreditor Agreement (the "Intercreditor Agreement") dated as of June 30, 2006 among THL-Hawkeye Acquisition LLC (merged with and into Renewables), Intermediate, the subsidiaries of THL-Hawkeye Acquisition LLC and Intermediate from time to time party thereto and each of the

Prepetition Agents, the Prepetition Second Priority Liens are subject to and subordinate in priority to the Prepetition First Priority Liens.

F.  Debtors' Stipulations.  Subject to paragraph 9(a) of this Final Order, the Debtors acknowledge, represent, stipulate, and agree that:

(i)  ***Prepetition Indebtedness:***

(a)  As of the Petition Date, (i) each of the Debtors was jointly and severally liable to the First Lien Secured Parties in respect of obligations under the First Lien Credit Agreement in the aggregate principal amount of not less than (A) $533,545,500.50 on account of outstanding term loans and revolving loans made under the First Lien Credit Agreement (plus accrued and unpaid interest thereon), and (B) $11,191,466 on account of obligations arising from the termination of certain Hedging Agreements (as defined in the First Lien Credit Agreement) (plus accrued and unpaid interest thereon), and (ii) each of the Debtors was jointly and severally liable to the First Lien Secured Parties in respect of obligations under the First Lien Credit Agreement for unpaid fees, expenses and charges chargeable or reimbursable under the First Lien Credit Agreement (collectively, the "First Lien Obligations").

(b)  As of the Petition Date, (i) each of the Debtors was jointly and severally liable to the Second Lien Secured Parties in respect of obligations under the Second Lien Credit Agreement in the aggregate principal amount of not less than $150,000,000 on account of outstanding term loans made under the Second Lien Credit Agreement (plus accrued and unpaid interest thereon), and (ii) each of the Debtors was jointly and severally liable to the Second Lien Secured Parties in respect of obligations under the Second Lien Credit Agreement for unpaid fees, expenses and charges chargeable or reimbursable under the Second Lien Credit Agreement (collectively, the "Second Lien Obligations").

(c) As of the Petition Date, all of the Prepetition Secured Debt is unconditionally due and owing by the Debtors to the Prepetition Secured Parties.

(d) As of the Petition Date, all claims in respect of the Prepetition Secured Debt are not, and shall not be, subject to any avoidance, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation by the Debtors.

(ii) The Prepetition Lender Liens (i) constitute valid, binding, enforceable, and properly perfected liens on the Prepetition Collateral that, prior to the entry of this Final Order, were subject only to those liens described in the Prepetition Loan Documents; (ii) shall not be subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation by the Debtors; and (iii) are subject and subordinate only to (a) the Carve-Out (as defined below) and (b) Permitted Priority Liens (as defined below).

(iii) None of the Prepetition Secured Parties are or shall be deemed to be control persons or insiders of the Debtors by virtue of any of the actions taken by such parties in respect of or in connection with the Prepetition Secured Debt.

(iv) As of the Petition Date, the Debtors have not brought, and are not aware of, any claims or causes of action belonging to the Debtors that exist or are likely to arise against the Prepetition Secured Parties or the First Lien Released Parties (as defined below).

RLF1 3528066v.2

(v)     As of the Petition Date, there were no other perfected liens on or security interests in the Prepetition Collateral except for the Prepetition Lender Liens and the Permitted Priority Liens.

G.     Cash Collateral.  For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in Bankruptcy Code section 363, in which the Prepetition Secured Parties have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date, arising pursuant to this Final Order, or otherwise.

H.     Use of Cash Collateral.  The Debtors have an immediate and critical need to use the Cash Collateral to operate their businesses and effectuate a reorganization of their business, which will be used in accordance with the terms of this Final Order and subject to the Approved Budget.  Without the use of Cash Collateral, the Debtors will not be able to continue to operate their businesses.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of certain parties and to adequately protect the non-consenting parties' interests in the Prepetition Collateral.

I.     Good Cause.  Good cause has been shown for entry of this Final Order. The Debtors have a critical need to use Cash Collateral in order to continue to operate their businesses in the ordinary course in accordance with the Approved Budget, cash collateralize issued and outstanding letters of credit, preserve the value of the Debtors' businesses, and effectuate a reorganization of their businesses.  The Debtors' use of Cash Collateral has been deemed sufficient to meet the Debtors' immediate postpetition liquidity needs, subject to the terms of the Orders and the Approved Budget.  The Debtors' estates will be immediately and

8

irreparably harmed if this Final Order is not entered. Good, adequate and sufficient cause has, therefore, been shown for the immediate grant of the relief sought in the Motion, as modified herein.

J.      Consent to Use of Cash Collateral. The First Lien Secured Parties consent to the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Final Order, and in accordance with the Approved Budget.

K.      Good Faith. Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Final Order have been negotiated at arms' length and in good faith and are in the best interests of the Debtors, their estates and their creditors.

L.      Immediate Entry of Final Order. The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The Motion and this Final Order comply with Local Bankruptcy Rule 4001-2. The permission granted herein to use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Final Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing business and further enhance the Debtors' prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.      Motion Granted. The Motion is granted on a final basis, subject to the terms set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved

are hereby overruled on their merits. This Final Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

2.      Authorization to Use Cash Collateral. Subject to the terms of this Final Order, upon entry of this Final Order, the Debtors are authorized to use Cash Collateral in which the First Lien Secured Parties may have an interest, in accordance with the terms, conditions, and limitations set forth in this Final Order and the Approved Budget, without further approval by this Court. Any dispute in connection with the use of Cash Collateral shall be heard by this Court.

3.      Supplemental Approved Budget.

(a)      Not later than one month prior to the expiration of the Approved Budget, the Debtors may provide to the Prepetition Agents an updated budget for an additional 13-week period in substantially the same format as Exhibit A, which, upon acceptance by the First Lien Agent and the Required Lenders (as defined in the that certain restructuring support agreement among the Debtors, the First Lien Agent and the other parties signatory thereto, dated as of November 24, 2009 (the "RSA")), shall become the Approved Budget for such period for purposes of this Final Order (each, a "Supplemental Approved Budget"); provided, however, that (i) such acceptance shall not be unreasonably withheld and (ii) a Supplemental Approved Budget may be proposed and accepted as described above at any time. In the event the Debtors, the First Lien Agent and the Required Lenders fail to agree on a Supplemental Approved Budget, the Debtors may ask the Court to determine whether the acceptance by the First Lien Agent and the Required Lenders was unreasonably withheld; provided, further, however, the Court's determination of whether acceptance of the Supplemental Approved Budget by the First Lien

10

Agent and the Required Lenders was unreasonably withheld shall apply only to a revised 13-week budget and shall not apply to the variances and financial covenants set forth in Exhibit A.

(b)     The Prepetition Secured Parties shall have no obligation with respect to the Debtors' use of the Collateral (as defined below), Prepetition Collateral or Cash Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the Approved Budget or to pay (directly or indirectly from their Collateral or Prepetition Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget.  Cash Collateral used under this Final Order shall be used by the Debtors in accordance with the Approved Budget and this Final Order.  The First Lien Secured Parties' consent to the Approved Budget shall not be construed as consent to the use of any Cash Collateral beyond the Termination Date, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

4.     Termination of Cash Collateral Usage.

(a)     Notwithstanding anything in this Final Order to the contrary, the use of Cash Collateral authorized herein shall terminate without prior notice or order of the Court or any further action by the First Lien Secured Parties, upon the occurrence of the "Termination Date".  The Termination Date shall occur (notice of which shall be provided thereafter to the Debtors, the U.S. Trustee, the Second Lien Agent, and any official committee appointed in these cases) on the earliest to occur of:

    i.    The date which is the tenth calendar day after expiration of the Approved Budget unless a Supplemental Approved Budget (i) has been agreed upon by the First Lien Agent and Required Lenders, or (ii) has been approved by the Court in accordance with section 4(a) of this Final Order;

    ii.    Five (5) business days after the date the First Lien Agent provides the Debtors with written notice of any Debtor's failure to comply with any of the terms or conditions of this Final Order;

11

iii.     The date an application is filed by the Debtors seeking to amend, modify, supplement or extend this Final Order without the prior written consent of the First Lien Agent and the Required Lenders; or the date of entry of any order reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order without the prior written consent of the First Lien Agent and the Required Lenders;

iv.     The date any material provision of this Final Order shall for any reason cease to be valid and binding or any Debtors shall so assert in any pleading filed in any court;

v.     The date an application is filed by any Debtor for the approval of any superpriority claim or any lien in any of the Chapter 11 Cases which is *pari passu* with or senior to the First Lien Adequate Protection Liens, First Lien Superpriority Claim, or Prepetition First Priority Liens without the prior written consent of the First Lien Agent and Required Lenders;

vi.     The effective date of any confirmed chapter 11 plan of reorganization in these Chapter 11 Cases;

vii.     The date of (a) the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors approved by the First Lien Agent and the Required Lenders, (b) the acceptance by any Debtor of any offer or bid for the purchase of all or substantially all of the assets of such Debtor or all of the equity of such Debtor which is unacceptable to the First Lien Agent and the Required Lenders;

viii.     The date (a) any of the Chapter 11 Cases shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal or conversion of any of the Chapter 11 Cases pursuant to Bankruptcy Code section 1112 or otherwise; or (b) a trustee or an examiner with the powers to operate the business of the Debtors is appointed or elected in any of the Chapter 11 Cases or any Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the First Lien Agent and the Required Lenders;

ix.     The date of the commencement of any action by any Debtor against the First Lien Secured Parties with respect to the First Lien Obligations or the Prepetition First Priority Liens, or in the case of any such action commenced by any person other than the Debtors, the date of entry of an order by the Bankruptcy Court invalidating, disallowing or limiting in any respect, as applicable, either (i) the

RLF1 3528066v.2

enforceability, priority, or validity of the liens securing the obligations owned under the First Lien Credit Agreement or (ii) any of the First Lien Obligations;

x.   The withdrawal, amendment, modification of, or filing of a pleading by the Debtors seeking to amend or modify the Plan (as defined in the RSA) or the documents in the plan supplement documents, in a manner not acceptable the First Lien Agent and Required Lenders; or

xi.   The date which is thirty (30) calendar days following the occurrence of the Termination Date under section 5(n) of the RSA; provided, however, that during such 30 day period following the occurrence of the Termination Date, the Debtors may continue to use Cash Collateral in the ordinary course of the Debtors' business in accordance with the Final Order and Approved Budget if necessary to preserve the value of the Debtors' business.

(b)   The First Lien Agent, with the consent of the Required Lenders, may waive the occurrence of the Termination Date in its sole discretion. The Debtors' authority to use Cash Collateral shall automatically terminate upon the occurrence of the Termination Date unless waived in writing by the First Lien Agent in the exercise of its sole discretion, all without further order or relief from the Court, provided, however, the Debtors may use Cash Collateral after the Termination Date solely for purposes of making payments or disbursements in respect of accrued and unpaid payroll, taxes and other similar fiduciary amounts. Upon the occurrence of the Termination Date, all Adequate Protection Obligations (as defined below) shall be immediately due and payable and the Prepetition Secured Parties shall have all rights and remedies provided in the Orders and under applicable law. Notwithstanding anything herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under the Orders shall survive the Termination Date.

5.   Restriction on Use of Cash Collateral.

(a)   From and after the Petition Date, all proceeds of the Prepetition Collateral, including, without limitation, all of the Debtors' existing or future Cash Collateral, shall not,

directly or indirectly, be used for any payments, expenses or disbursements of the Debtors except for (i) those payments, expenses and/or disbursement that are expressly permitted under the Orders or other order entered by this Court (as reviewed and approved by the First Lien Agent) and are consistent with the Approved Budget, and (ii) compensation and reimbursement of fees and expenses payable pursuant to sections 330 and 331 of the Bankruptcy Code and payable to attorneys, accountants, investment bankers, financial advisors, or other professional persons retained by the Debtors or any official committee appointed in these cases and permitted or awarded pursuant to an order of this Court; provided, however, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause (ii) and shall not affect the right of any party in interest to object to the allowance and payments of any such amounts.

(b)     Upon entry of this Final Order providing for such relief, subject to the Carve-Out, no administrative expense claims, including fees and expenses of professionals, shall be charged or assessed against or recovered from the Prepetition Collateral or Collateral or attributed to the Prepetition Secured Parties with respect to their respective interests in the Prepetition Collateral or Collateral pursuant to the provisions of Bankruptcy Code section 506(c) or otherwise by, through, or on behalf of the Debtors, without the prior written consent of the affected Prepetition Secured Parties, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Prepetition Secured Parties. Except as set forth herein, the Prepetition Secured Parties have not consented or agreed to the additional use of the Prepetition Collateral or Collateral.  The Prepetition Secured Parties shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or the Prepetition Collateral.

(c)     Subject to paragraph 9(a) hereof, and notwithstanding anything herein to the contrary, no Cash Collateral, Prepetition Collateral or proceeds thereof, or any portion of the Carve-Out may be used directly or indirectly by the Debtors, the Second Lien Secured Parties, any official committee appointed in these cases, including the Creditors' Committee (as defined below), and any trustee appointed in the Chapter 11 Cases or any successor cases, or any other person, party or entity to (i) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Secured Debt; (ii) assert or prosecute any Claims and Defenses (as defined below) against the Prepetition Secured Parties or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors; (iii) prevent, hinder, or otherwise delay the First Lien Secured Parties' assertion, enforcement, or realization on the Cash Collateral, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with this Final Order; (iv) seek to modify any of the rights granted to the First Lien Secured Parties hereunder; or (v) apply to the Court for authority to approve superpriority claims or grant liens in the Collateral or any portion thereof that are senior to, or on parity with, the First Lien Adequate Protection Liens, First Lien Superpriority Claims or Prepetition First Priority Liens, unless all First Lien Obligations under the First Lien Credit Documents, the Interim Order and this Final Order have been refinanced or paid in full or otherwise agreed to by the First Lien Agent and Required Lenders; provided, however, that up to $25,000 of Cash Collateral in the aggregate may be used to pay the allowed fees and expenses of professionals retained by the Creditors' Committee incurred directly in connection with investigating, but not initiating or prosecuting, any Claims and Defenses against the First Lien Secured Parties or with regard to the First Lien Obligations or Prepetition First Priority Liens.

15

6.     Adequate Protection.  The Prepetition Secured Parties are entitled, pursuant to

Bankruptcy Code sections 361, and 363(c) and (e), to adequate protection of their interests in the

respective Prepetition Collateral, including Cash Collateral, equal to, or to the extent of, the

aggregate diminution in value of the Prepetition Secured Parties' interests in the Prepetition

Collateral (the "Adequate Protection Obligations").  The Prepetition Secured Parties are hereby

provided with the following forms of adequate protection:

(a)     Fees and Expenses.  The Debtors are authorized and directed to pay, when

due and payable, the reasonable and documented fees and expenses incurred by:  (i) Akin Gump

Strauss Hauer & Feld LLP, as counsel to the First Lien Agent; (ii) Morris, Nichols, Arsht &

Tunnell LLP, as Delaware counsel as the First Lien Agent may retain; (iii) Capstone Advisory

Group, financial advisor to the First Lien Agent; and (iv) such other professionals and/or

consultants retained by the First Lien Agent (each of the professionals in (i) through (iv) being

the "First Lien Professionals"), in each case in connection with protecting the rights and interests

of the First Lien Agent and First Lien Lenders in connection with the Chapter 11 Cases.  The

Debtors are hereby authorized and directed to pay all fees, costs, and expenses in accordance

with the terms of this Final Order, without the First Lien Agent, the First Lien Lenders or the

First Lien Professionals having to file any further application with this Court for approval or

payment of such fees, costs or expenses.  Any such fees, costs and expenses incurred by the First

Lien Professionals shall be paid within fifteen (15) calendar days of delivery of a detailed

invoice to the Debtors, the Office of the United States Trustee (attn:  Joseph J. McMahon, Jr.),

and counsel to any official committee that may be appointed; provided, however, that if any of

and counsel to the Second Lien Agent

the aforementioned parties object to the reasonableness of such fees and expenses and cannot

resolve the objection within fifteen (15) days of service of such invoice(s), the objecting party

16

shall file, and serve upon such First Lien Professional, an objection with the Court (the "Fee Objection") ; provided, further, that the Debtors shall timely pay in accordance with this Final Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed. Following such adjudication , the Debtors shall remit such payments promptly to such First Lien Professional as directed by this Court. All amounts paid as adequate protection are deemed permitted uses of Cash Collateral. Nothing in the Order prejudices or otherwise affects the rights of any party in interest to seek to, *inter alia*, disgorge amounts paid under this subparagraph and/or recharacterize such payments as payments on account of principal obligations, subject to the provisions of paragraph 9(a) herein.

(b)     Adequate Protection Liens and Adequate Protection Superpriority Claim for First Lien Secured Parties. Subject to the Carve-Out and the Permitted First Lien Priority Liens (defined below), the First Lien Agent, for the benefit of the First Lien Lenders, is hereby granted: (i) valid, enforceable, non-avoidable and fully perfected, first priority postpetition security interests in and liens (effective and perfected upon the date of entry of the Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) (the "First Lien Adequate Protection Liens") on all of the Collateral; and (ii) first priority superpriority administrative expense claims under Bankruptcy Code section 507(b) (the "First Lien Superpriority Claim") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552, 1113 and 1114, whether or not such expenses or claims arise in these Chapter 11

17

Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom, to secure in each case an amount equal to the aggregate diminution in the value (which shall be calculated in accordance with Bankruptcy Code section 506(a)) in the interests of the First Lien Agent and the First Lien Lenders in the First Lien Prepetition Collateral (including the Cash Collateral) including, without limitation, any such diminution in value resulting from (a) depreciation, physical deterioration, use, sale, loss or decline in market value of the First Lien Prepetition Collateral; (b) the Carve-Out; or (c) imposition of the automatic stay under section 362 of the Bankruptcy Code. For purposes of this Final Order, the term "Collateral" shall include, without limitation, all prepetition and postpetition property, assets and interests in property and assets of the Debtor (or any successor trustee or other estate representative in the Chapter 11 Case or Successor Case), and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Case or Successor Case), of any kind or nature whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired or created, whether existing prior to the Petition Date or arising after the Petition Date, including, without limitation, all accounts, inventory, contracts, investment property, instruments, documents, chattel paper, patents, trademarks, copyrights, licenses, general intangibles, payment intangibles, machinery and equipment, real property (including all facilities), capital stock of each subsidiary of the Debtor, deposit accounts, commercial tort claims and other causes of action, Cash Collateral, Avoidance Actions and the proceeds thereof, and all proceeds of any of the collateral described above; provided, however, that commercial tort claims, causes of action and/or Avoidance Actions against the Prepetition Agents, the Prepetition Lenders and/or the liens securing the Prepetition Obligations and proceeds of the foregoing shall be excluded from the term "Collateral." The

First Lien Adequate Protection Liens and First Lien Superpriority Claim shall be subject and subordinate only to: (i) those valid, enforceable, unavoidable, and properly perfected liens existing on the Petition Date, including, without limitation, those liens that are permitted under section 6.02 of the First Lien Credit Documents with priority over the Prepetition First Priority Liens (the "First Lien Permitted Priority Liens"), and (ii) solely upon the occurrence of the Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth in this Final Order.

(c)     Adequate Protection Liens and Adequate Protection Superpriority Claim for Second Lien Secured Parties.  Subject to the Carve-Out and the Second Lien Permitted Priority Liens (defined below), the Second Lien Agent, for the benefit of the Second Lien Secured Parties, is hereby granted: (i) valid, enforceable, non-avoidable and fully perfected, second priority postpetition security interests in and liens (effective and perfected upon the date of entry of the Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments (the "Second Lien Adequate Protection Liens" and, together with the First Lien Adequate Protection Liens, the "Adequate Protection Liens") on all of the Collateral; and (ii) second priority superpriority administrative expense claims under Bankruptcy Code section 507(b) (the "Second Lien Superpriority Claim" and, together with the First Lien Superpriority Claim, the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552, 1113 and 1114, whether or not such expenses or claims arise

19

in these Chapter 11 Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom, to secure in each case an amount equal to the aggregate diminution in the value (which shall be calculated in accordance with Bankruptcy Code section 506(a)) in the interests of the Second Lien Agent and the Second Lien Secured Parties in the Second Lien Prepetition Collateral (including the Cash Collateral) including, without limitation, any such diminution in value resulting from (a) depreciation, physical deterioration, use, sale, loss or decline in market value of the First Lien Prepetition Collateral; (b) the Carve-Out; (c) the grant of the First Lien Adequate Protection Liens and First Lien Superpriority Claim; or (d) imposition of the automatic stay under section 362 of the Bankruptcy Code. The Second Lien Adequate Protection Liens and Second Lien Adequate Protection Priority Claim shall be subject and subordinate only to: (i) the Prepetition First Priority Liens; (ii) the First Lien Adequate Protection Liens; (iii) the First Lien Superpriority Claims; (iv) those valid, enforceable, unavoidable, and properly perfected liens existing on the Petition Date, including, without limitation, those liens that are permitted under section 6.02 of the Second Lien Credit Documents with priority over Prepetition Second Priority Liens (the "Second Lien Permitted Priority Liens" and, together with the First Lien Permitted Priority Liens, the "Permitted Priority Liens"); and (v) solely upon the occurrence of the Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth in this Final Order.

7. Additional Reporting Obligations. The Debtors shall prepare and furnish to the Prepetition Agents, in form and substance acceptable to the First Lien Agent, a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Approved Budget, on a line-by-line basis showing any percentage variance to the proposed corresponding line item of the Approved Budget (i) for such weekly period and (ii) on

20

a cumulative basis for the period of the Approved Budget or such other budget period, as applicable, and showing a calculation of the covenants and the Debtors' compliance or non-compliance, which shall be certified by the chief financial officer (the "Budget Reconciliation"). Such Budget Reconciliation shall be provided to the Prepetition Agents so as actually to be received within four (4) business days following the end of each prior week.

      8.    Carve-Out.

      (a)    As used in the Orders, "Carve Out" means (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6); (ii) to the extent allowed at any time by the Bankruptcy Court, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses incurred by professionals or professional firms retained by (x) the Debtors pursuant to Bankruptcy Code section 327 and (y) any official committee of unsecured creditors appointed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 (collectively, the "Professionals") and owed pursuant to such professionals' respective engagement letters (other than any success fee, transaction fee, or other similar fee set forth in such Professionals' respective engagement letter), which are incurred prior to the Termination Date, and (iii) fees and expenses of Professionals in an aggregate amount not to exceed $750,000, which are incurred on and after the Termination Date (the "Termination Carve-Out"), provided such fees and expenses (in the aggregate) are ultimately allowed by the Bankruptcy Court, subject to the rights of any party in interest to object to the allowance of any such fees and expenses in clauses (ii) and (iii) hereof. For the avoidance of doubt, so long as the Termination Date shall not have occurred, Cash Collateral may be used (i) for payment of fees and expenses of Professionals allowed and payable under Bankruptcy Code sections 330 and 331 (and the same shall not reduce the Termination Carve-

21

Out to the extent such fees and expenses are incurred prior to the Termination Date) and (ii) for payments contemplated to be made pursuant to "first day" orders pursuant to "first day" motions satisfactory in form and substance to the First Lien Agent.

(b)     No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Priority Liens, having a lien or administrative priority superior to or *pari passu* with that of the Adequate Protection Liens granted by this Final Order, shall be granted while any portion of the Prepetition Secured Debt remains outstanding or in effect without the prior written consent of the First Lien Agent.

9.     Investigation Period.

(a)     Subject to paragraph 5(a) of this Final Order, no Collateral or Prepetition Collateral may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any successor cases), any creditor or party in interest, any Committee or any other party in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter against the Prepetition Secured Parties in connection with (i) invalidating, setting aside, avoiding, subordinating, recharacterizing, or challenging, in whole or in part, any claims or liens arising under or with respect to the Prepetition Secured Debt, the Collateral, or the Prepetition Collateral, or (ii) preventing, hindering, or delaying, whether directly or indirectly, the First Lien Secured Parties' assertions or enforcement of their liens, security interests, or realization upon any of the Collateral or the Prepetition Collateral. Notwithstanding anything herein to the contrary, any official committee of unsecured creditors appointed pursuant to Bankruptcy Code section 1102 (a "Creditors' Committee") or other party in interest shall have the later of forty (40) days from

22

the date of such Creditors' Committee formation or fifty-five (55) days from the Petition Date (or any subsequent date that may be agreed to in writing by the First Lien Agent in its sole discretion or by an order of the Court, for cause shown, after notice and a hearing) (the "Investigation Termination Date") to investigate the amount, validity, perfection, priority, enforceability, and extent of the Prepetition Secured Debt and Prepetition Lender Liens and any potential claims of the Debtors or their estates against the Prepetition Agents or Prepetition Secured Parties in respect of the Prepetition Secured Debt and Prepetition Lender Liens, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action against the Prepetition Agents or the Prepetition Secured Parties (all such claims, defenses and other actions, other than claims and defenses arising under or related to the Intercreditor Agreement, described in the Paragraph are collectively defined as the "Claims and Defenses").

(b)     Any challenge to the Prepetition Secured Debt or Prepetition Lender Liens or the assertion of any other claims or causes of action of the Debtors or their estates against the Prepetition Agents or the Prepetition Secured Parties must be made by a party in interest with standing who timely commences an adversary proceeding or a contested matter, as appropriate, on or before the Investigation Termination Date. If no such item is filed on or before the Investigation Termination Date, all holders of claims and interests as well as other parties in interest shall be forever barred from bringing or taking any such action, and the Debtors stipulations made in paragraph F and the release (as set forth below in paragraph 10) shall be binding on all parties in interest. Subject to the right to amend such an action under applicable law, if such an action is timely brought, any claim or action that is not brought shall be forever

23

barred. In the event of a timely challenge by plaintiff in such an action, this Court shall fashion the appropriate remedy with respect to the Prepetition Secured Parties.

(c)     Nothing in the Orders vests or confers on any Creditors' Committee or any other person or entity standing or authority to bring, assert, commence, continue, prosecute, or litigate any cause of action belonging to the Debtors or their estates, including, without limitation, the Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Secured Debt.

10.     Release.  Upon entry of this Final Order and subject to the rights set forth in paragraph 9(a) above, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in the Chapter 11 Cases or successor cases) and any party acting by, through, or under the Debtors or their estates, forever and irrevocably (i) release, discharge, waive, and acquit the First Lien Secured Parties, their participants and each of their respective affiliates, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "First Lien Released Parties") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses existing as of the Petition Date, with respect to or relating to the First Lien Obligations, the Prepetition First Priority Liens, the First Lien Loan Documents, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the First Lien Secured Parties; and (ii) waive any and all defenses

24

(including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Secured Debt and the Prepetition Lender Liens.

11.    Equities of the Case.  Upon entry of a Final Order providing for such relief, the First Lien Secured Parties shall be entitled to all benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, product, offspring, or profits of any of their collateral.

12.    Additional Perfection Measures.

(a)    Pursuant to this Final Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection, and all liens on any deposit accounts or securities shall, pursuant to this Final Order be, and they hereby are deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the New York Uniform Commercial Code as in effect as of the date hereof in favor of the Prepetition Secured Parties).

(b)    None of the Debtors or the Prepetition Agents shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property,

or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Adequate Protection Liens.

(c)     The Prepetition Agents may, but shall not be obligated to, obtain consents from any landlord, licensor or other party in interest, file mortgages, financing statements, notices of lien or similar instruments, or otherwise record or perfect such security interests and liens, in which case:

i.      all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of the Interim Order; and

ii.     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(d)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the Prepetition Agents may, but shall not be obligated to, file a true and complete copy of this Final Order in any place at which any such instruments would or could be filed, together with a description of Collateral or Prepetition Collateral, as applicable, and such filings by the Prepetition Agents shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of the Interim Order.

13.    <u>Automatic Stay Modified</u>.  The automatic stay provisions of Bankruptcy Code sections 362 are hereby vacated and modified to the extent necessary to permit the First Lien Agent to exercise, upon the occurrence of the Termination Date, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court:  (i) terminate the Debtors' use of Cash Collateral; (ii) declare all

26

Adequate Protection Obligations owed to the First Lien Secured Parties to be immediately due and payable; (iii) set off and apply immediately any and all amounts in accounts maintained by the Debtors with the First Lien Agent against the Adequate Protection Obligations owed to the First Lien Secured Parties and otherwise enforce rights against the Collateral in the possession of any of the First Lien Secured Parties for application towards the First Lien Adequate Protection Obligations; and (iv) take any other actions or exercise any other rights or remedies permitted under the Interim Order, Final Order or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations owed to the First Lien Secured Parties; provided, however, that the First Lien Agent, shall provide five (5) business days written notice (the "Waiting Period") (by facsimile, telecopy, or electronic mail) to the Debtors, their counsel, counsel to any statutory committee appointed in these cases, and counsel to the United States Trustee prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses (i) or (ii) above (to the extent they might be deemed remedies in respect of the Collateral)), and provided, further however, that if the Termination Date occurs after the First Lien Agent provides the Debtors with five (5) business days written notice of any Debtor's failure to comply with any of the terms or conditions of this Final Order, the Debtors may continue to use Cash Collateral during the Waiting Period in the ordinary course of the Debtors' business in accordance with this Final Order and Approved Budget if necessary to preserve the value of the Debtors' business. The rights and remedies of the First Lien Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have.

14.     Collateral Rights.

(a)     In the event that any party who has both received notice of the Final Hearing and holds a lien or security interest in Collateral or Prepetition Collateral that is junior and/or subordinate to the Adequate Protection Liens or the Prepetition Lender Liens in such Collateral or Prepetition Collateral receives or is paid the proceeds of such Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral in trust for the First Lien Secured Parties and shall immediately turn over such proceeds to the First Lien Agent.

(b)     If the First Lien Agent or First Lien Lenders shall at any time exercise any of their respective rights and remedies hereunder or under applicable law in order to effect payment or satisfaction of the Adequate Protection Obligations owed to the First Lien Secured Parties or to receive any amounts or remittances due hereunder, including, without limitation, foreclosing upon and selling all or a portion of the Collateral, the First Lien Agent shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as the First Lien Agent shall elect in its sole discretion, subject to the Waiting Period. No holder of a lien shall be entitled to object on the basis of the existence of any such lien to the exercise by the First Lien Agent of its respective rights and remedies under this Final Order or other applicable law to effect satisfaction of the Adequate Protection Obligations owed to the First Lien Secured Parties or to receive any amounts or remittances due hereunder, provided that the First Lien Agent has complied with paragraph 13 of this Final Order. Subject to the rights set forth in paragraph 9 hereof, all proceeds and payments delivered to the First Lien Agent pursuant to this paragraph 14 may be applied to the Adequate Protection Obligations owed to the First Lien Lenders, as determined by the First Lien Agent, in

its sole discretion, and in no event shall the First Lien Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any such collateral or otherwise.

(c)     Each Debtor shall not sell, lease, transfer or otherwise dispose of its interest in the Collateral outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the First Lien Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by the First Lien Agent or Required Lenders); provided, that the Debtors may sell, lease, transfer or otherwise dispose of its interest in the Collateral outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the First Lien Agent if, in the reasonable judgment of the Debtors, such Collateral is worth less than $100,000; provided, further, however, that the nothing herein shall limit the right of the First Lien Agent of the First Lien Lenders to object to such sale, lease, transfer or other disposition. In the event of any such sale, lease, transfer, license, or other disposition of property outside the ordinary course of business, to the extent permitted by the First Lien Credit Documents and this Final Order, of any Debtor that constitutes Collateral, the Debtors are authorized and directed, without further notice or order of this Court, to immediately pay to the First Lien Agent, for the benefit of the First Lien Lenders, 100% of the Net Cash Proceeds (as defined in the First Lien Credit Agreement) resulting therefrom on the fifth business day following receipt of such proceeds.

(d)     In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, the Debtors are authorized and directed to pay to the First Lien Agent, for the benefit of the First Lien Lenders, 100% of any insurance proceeds,

29

condemnation award, or similar payment on the fifth business day following receipt of payment by the Debtors.

15.    <u>Successors and Assigns</u>.  The provisions of this Final Order shall be binding upon the Debtors, the Prepetition Secured Parties, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the Prepetition Secured Parties and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.  The provisions of this Final Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest.

16.    <u>Binding Nature of Agreement</u>.  Except with respect to ~~the~~ *a* plan of reorganization confirmed by the Court ~~and accepted by the First Lien Secured Parties~~, the rights, remedies, powers, privileges, liens, and priorities of the Prepetition Secured Parties *as provided in the Final Order* shall not be modified, altered or impaired in any manner by any subsequent order ~~(including a confirmation order), by~~ *a* ~~any plan of reorganization or liquidation~~ in these Chapter 11 Cases, by the dismissal (with respect to liens only) or conversion of these Chapter 11 Cases or in any subsequent cases under the Bankruptcy Code unless and until the Prepetition Secured Debt has first been indefeasibly paid in full in cash (including cash collateralization of certain letters of credit but excluding contingent obligations for which no claim has been made) and completely satisfied in accordance with the Prepetition Loan Documents.

17.    <u>Priorities Among Prepetition Secured Parties</u>.  Notwithstanding anything to the contrary herein or in any other order of this Court, but subject to paragraph 9 of this Final Order, in determining the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect

to the adequate protection granted hereunder), such relative priorities and rights shall continue to be governed by the Prepetition Loan Documents and the Intercreditor Agreement, and the adequate protection rights granted hereunder to each of the First Lien Secured Parties and Second Lien Secured Parties shall have the same relative seniority and priority vis-à-vis as exists with respect to the Prepetition Secured Debt and Prepetition Lender Liens; provided, however, that except as otherwise agreed by the First Lien Agent and Required Lenders and subject to applicable law, the Second Lien Secured Parties shall not be entitled to receive any payments or distributions from the Debtors until the First Lien Obligations and Adequate Protection Obligations owed to the First Lien Secured Parties have been indefeasibly paid in full in cash.

18. No Waiver. This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

19. No Waiver by Failure to Seek Relief. The delay or failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the Prepetition Secured Parties.

20. Priority of Terms. To the extent of any conflict between or among (a) the Motion, any other order of this Court, the Interim Order or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the Prepetition Loan Documents, the terms and provisions of this Final Order shall govern.

RLF1 3528066v.2

21.    No Third Party Beneficiary.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

22.    Survival.  Except as otherwise provided herein, (a) the protections afforded to the Prepetition Secured Parties under the Orders, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of the Chapter 11 Cases (with respect to liens only) or (ii) converting the Chapter 11 Cases into cases under Chapter 7 of the Bankruptcy Code, and (b) the Adequate Protection Liens and the Superpriority Claims shall continue in these Chapter 11 Cases, in any such successor cases or, in the case of liens only, after any such dismissal.  Except as otherwise provided herein, the Adequate Protection Liens and the Superpriority Claims shall maintain their priorities as provided in the Interim Order and the Final Order, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of these Chapter 11 Cases into cases pursuant to Chapter 7 of the Bankruptcy Code or, in the case of liens only, dismissal of any of these Chapter 11 Cases, or by any other act or omission until the First Lien Obligations are indefeasibly paid in full in cash.

23.    Intercreditor Agreement.  Neither the entry of this Interim Order nor the contents thereof create, or give rise to, any duty or obligations of the First Lien Secured Parties to the Second Lien Secured Parties under the Intercreditor Agreement or otherwise.  Entry of this Final Order shall not alter, limit, or result in a waiver of rights, duties or remedies of the Prepetition Secured Parties under the Intercreditor Agreement, and the rights of the Prepetition Secured Parties thereunder are reserved.

24. _Entry of Final Order; Effect_.  This Final Order shall take effect and be fully enforceable _nunc pro tunc_ to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Final Order on this Court's docket in the Chapter 11 Cases.

25. _Retention of Jurisdiction_.  This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Final Order.

26. _Binding Effect of Final Order_.  The terms of this Final Order shall be binding on any trustee appointed under Chapter 7 or Chapter 11 of the Bankruptcy Code.

27. _Waiver of Requirement to File Proofs of Claim_.  Neither the First Lien Agent, nor the First Lien Lenders, ~~the Second Lien Agent, nor the Second Lien Lenders~~ shall be required to file proofs of claim with respect to any of the First Lien Prepetition Debt.

Dated: Jun 19, 2010
Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

33