# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

----------------------------------------------------------x
                                              :
**In re**                                     :    **Chapter 11**
                                              :
**HAWKEYE RENEWABLES, LLC, *et al.*,**[1]     :    **Case No. 09-14461 (KJC)**
                                              :    **(Jointly Administered)**
       **Debtors.**              :
                                              :    **Obj. Deadline: February 9, 2010 at 4:00 p.m.**
                                              :    **Hearing Date: February 16, 2010 at 4:00 p.m.**
----------------------------------------------------------x

## APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) FOR AUTHORITY TO RETAIN AND EMPLOY BLACKSTONE ADVISORY PARTNERS, L.P. AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE

Hawkeye Renewables, LLC ("Renewables") and its parent, Hawkeye

Intermediate, LLC ("Intermediate"), as debtors and debtors in possession (collectively, the

"Debtors"), hereby submit this application (the "Application") pursuant to sections 327(a) and

328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authority to retain and

employ Blackstone Advisory Partners, L.P. ("Blackstone") to serve as financial advisor *nunc pro*

*tunc* to the Petition Date (as defined below) to the Debtors in these chapter 11 cases. In support

of this Application, the Debtors respectfully represent:

### Background

1.      On December 21, 2009 (the "Petition Date"), each of the Debtors

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their business

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Hawkeye Renewables, LLC (3162) and Hawkeye Intermediate, LLC (5356). The Debtors' corporate headquarters and service address is: 224 S. Bell Avenue, Ames, Iowa 50010.

and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Contemporaneously herewith, the Debtors have filed a motion seeking joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

2.　　　Prior to the Petition Date, the Debtors solicited from their prepetition first lien lenders ("First Lien Class 3A") and prepetition second lien lenders ("Second Lien Class 4A") votes on the Debtors' *Joint Prepackaged Plan of Reorganization of Hawkeye Renewables, LLC, et al. under Chapter 11 of the Bankruptcy Code* (the "Prepackaged Plan") through their *Disclosure Statement for Debtors' Joint Prepackaged Plan of Reorganization under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement"), pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. The Prepackaged Plan has been accepted by First Lien Class 3A in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code and has been rejected by Second Lien Class 4A. Notwithstanding the rejection of the Prepackaged Plan by Second Lien Class 4A, the Debtors believe that the Prepackaged Plan is confirmable under section 1129(b) of the Bankruptcy Code.

3.　　　Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 filings is contained in the Declaration of Timothy B. Callahan in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief (the "Callahan Declaration"), filed contemporaneously herewith.

**Jurisdiction and Venue**

4.　　　This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.      By this Application, the Debtors request entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), authorizing the Debtors to retain and employ Blackstone for the purpose of providing necessary financial advisory services in connection with the Debtors' chapter 11 cases in accordance with the terms of (i) that certain letter agreement between the parties (the "Letter Agreement"), dated December 9, 2008 and effective as of October 1, 2008 (the "Effective Date"), which is attached hereto as Exhibit B, and (ii) that certain indemnification agreement (the "Indemnification Agreement"), dated December 9, 2008, which is attached to the Letter Agreement as Attachment A.

## Basis for Relief Requested

6.      Pursuant to section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code modifies sections 101(14) (definition of "disinterested person") and 327(a) of the Bankruptcy Code in chapter 11 cases by providing that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). Pursuant to section 328 of the Bankruptcy Code, a debtor in possession may, with the Court's approval, employ professional persons under section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

7.　　As required by Bankruptcy Rule 2014(a), this Application sets forth the following: (a) the specific facts showing the necessity for Blackstone's employment, (b) the reasons for the Debtors' selection of Blackstone as financial advisor in connection with the chapter 11 cases, (c) the professional services to be rendered by Blackstone, (d) the arrangement between the Debtors and Blackstone with respect to Blackstone's compensation, and (e) to the best of the Debtors' knowledge, the extent of Blackstone's connections, if any, to certain parties in interest in these chapter 11 cases.

## Facts Relevant to the Relief Requested

### *The Debtors' Desire to Retain Blackstone*

8.　　Recently, the Debtors have faced a number of challenges which, taken together, have had a negative impact on the Debtors' liquidity and overall financial performance, thereby necessitating the commencement of these chapter 11 cases. To address this growing liquidity crisis, the Debtors retained Blackstone to provide financial advisory services to the Debtors in connection with a restructuring of certain liabilities of the Debtors and the potential sale, merger, or other disposition of all or a portion of the Debtors or their assets (a "Transaction") and to assist the Debtors in analyzing, structuring, negotiating, and effecting a "Restructuring" (as defined in the Letter Agreement) or Transaction pursuant to the terms of the Letter Agreement. As a result of its significantly overleveraged capital structure and ongoing liquidity deficiency (deficiency without an indefinite forbearance on interest payments), the Debtors had no alternative but to seek relief under chapter 11 of the Bankruptcy Code.

### *Blackstone's Qualifications*

9.　　Blackstone is a preeminent financial and restructuring advisor with a reputation for creativity in complex business situations. The Debtors have selected Blackstone as financial advisor because of Blackstone's diverse experience, knowledge, recognized

expertise, and reputation in the restructuring field, its understanding of the issues involved in chapter 11 cases, and because the Debtors believe that Blackstone possesses the resources and is well qualified to provide the financial advisory services that will be required.

10. Blackstone's Restructuring and Reorganization Advisory Group (the "Restructuring Group") is a leading advisor to companies as well as creditors in large, complex, and high profile restructurings and bankruptcies. Established in 1991, the Restructuring Group has advised companies and creditors in more than 175 distressed situations, both in and out of bankruptcy proceedings, involving more than $700 billion of total liabilities. The Restructuring Group's clients include companies, creditors, corporate parents, financial sponsors, and acquirors of troubled companies. The Restructuring Group is particularly active in large, complex, and high-profile bankruptcies and restructurings. The Restructuring Group has advised the following clients, among others, in their chapter 11 reorganizations: AbitibiBowater, Inc., Apex Silver Mines Ltd., Delta Air Lines, Inc., Delphi Corporation, Enron Corporation, Flying J Inc., Global Crossing Limited, Vencor, Inc., Lyondell Chemical Company, The Pacific Lumber Company / Scotia Pacific Company LLC and SemGroup, L.P. As a result of its work on a significant share of major restructuring assignments, the Restructuring Group is one of the most seasoned and experienced restructuring advisors on Wall Street. The Restructuring Group's senior professionals have well in excess of 150 years of combined experience in restructuring assignments.

11. Michael Genereux, a Senior Managing Director in the Restructuring Group, will continue to lead all of the day-to-day aspects of this assignment. Mr. Genereux has been providing restructuring services at Blackstone full-time since 2003. He is well-suited to provide the services required by the Debtors and his advisory experience extends across many

industries, including energy, media, industrial and consumer products, gaming, and telecom. His most notable assignments include Allied Holdings, Bally Total Fitness (representing the company and subsequently the senior lenders), Bear Stearns Asset Management regarding its High-Grade Structured Credit Strategies and Enhanced Leverage Funds, Calpine, Crane, Delta Air Lines, Inc., Education Finance Partners, Fleming Companies, Interstate Bakeries, Mercedes Homes, MoneyGram International, R.H. Donnelley, Station Casinos, TOUSA, Inc., Vitro, S.A.B. de C.V., and Yonkers Racing Corporation.

12.     The following Blackstone professionals will be responsible for providing professional services to the Debtors:  Michael Genereux, Senior Managing Director, and Kenneth Nguyen, Associate.  Additional staff will be provided as needed.

*Blackstone's Retention*

13.     As set forth above, the Debtors employed Blackstone on the Effective Date to assist the Debtors in the evaluation of strategic alternatives and to serve as their financial advisor in connection with their restructuring efforts.  Since then, Blackstone has become familiar with the Debtors' business, operations, and financial condition and is both well qualified and uniquely able to represent the Debtors as financial advisor in connection with such matters in a cost-effective and efficient manner.

14.     The resources, capabilities, and experience of Blackstone in advising the Debtors are crucial to the Debtors' successful restructuring.  An experienced investment bank and financial advisor such as Blackstone fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  Broadly speaking, Blackstone will assist in the evaluation of strategic alternatives and render financial advisory services to the Debtors in connection with their ongoing restructuring efforts.  For these reasons, the Debtors require the services of a capable and experienced investment banking firm such as Blackstone.

*Services to Be Provided by Blackstone*

15. The Debtors have negotiated the terms of the Letter Agreement, which sets forth the services that Blackstone will provide to the Debtors as well as the manner in which Blackstone will be compensated for such services. To date, Blackstone has provided and/or will provide the following services on a going-forward basis upon the Court's approval of this Application:[2]

     a.    Assist in the evaluation of the Debtors' businesses and prospects;

     b.    Assist in the development of the Debtors' long-term business plan and related financial projections;

     c.    Assist in the development of financial data and presentations to the Debtors' Board of Managers, various creditors, and other third parties;

     d.    Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

     e.    Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

     f.    Provide strategic advice with regard to restructuring or refinancing the Debtors' Obligations;

     g.    Evaluate the Debtors' debt capacity and alternative capital structures;

     h.    Participate in negotiations among the Debtors and their creditors, suppliers, lessors, and other interested parties;

     i.    Value securities offered by the Debtors in connection with a Restructuring;

     j.    Advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of various credit facilities and communicate with lenders with respect to potential Restructurings;

---

[2] The following description of the services to be provided under the Letter Agreement is for summary purposes only, and is qualified in all respects by the terms of the Letter Agreement itself. Capitalized terms used in this paragraph but not otherwise defined shall have the meanings ascribed to them in the Letter Agreement.

k.      Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services; and, upon the reasonable request of the Debtors, reasonably cooperate with and support the Debtors in any litigation or bankruptcy proceedings;

l.      Assist the Debtors in preparing marketing materials in conjunction with a possible Transaction;

m.      Assist the Debtors in identifying potential buyers or parties in interest to a Transaction and assist in the due diligence process;

n.      Assist and advise the Debtors concerning the terms, conditions, and impact of any proposed Transaction; and

o.      Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring or a Transaction, as requested and mutually agreed.

16.      Blackstone has stated its desire and willingness to act in these chapter 11 cases and to render the necessary professional services as financial advisor for the Debtors.

*Disclosure Concerning Conflicts of Interest*

17.      Blackstone has informed the Debtors that, except as qualified in the verified statement of Michael Genereux in support of the Application, a copy of which is annexed hereto as Exhibit C (the "Genereux Declaration"), and except as qualified in the verified statement of Robert Gentile in support of the Application, a copy of which is annexed hereto as Exhibit D (the "Gentile Declaration" and together with the Genereux Declaration, the "Blackstone Declarations"), Blackstone has no material connection with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee for the District of Delaware (the "U.S. Trustee"), or any person employed by the office of the U.S. Trustee in the above-captioned chapter 11 cases.

18.      Based on the Blackstone Declarations, the Debtors believe that Blackstone (a) does not hold or represent any interest adverse to the Debtors or their estates and (b) is a

"disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code. The Blackstone Declarations, executed on behalf of Blackstone in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rule 2014, are filed contemporaneously herewith and attached hereto as Exhibit C and Exhibit D, respectively, incorporated herein by reference. The Debtors' knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance upon, the Blackstone Declarations.

19.     The Debtors believe that the employment of Blackstone is necessary and is in the best interests of the Debtors and their estates.

*Disclosure of Compensation*

20.     As of the Effective Date, and pursuant to the Letter Agreement,[3] Blackstone was retained by the Debtors on a prepetition basis to represent them in their restructuring and reorganization efforts (the "Prepetition Assignment"). In connection with the Prepetition Assignment, Blackstone was paid, upon executing the Letter Agreement, a monthly advisory fee (the "Monthly Fee") in the amount of $200,000 for its first month of services rendered and a $25,000 expense advance (the "Expense Advance"). Pursuant to the Letter Agreement, the Monthly Fee is $200,000 for the first six months and $150,000 thereafter. As of the Petition Date, Blackstone has earned $2,500,000 for the 445 calendar days it was employed prepetition. Further, Blackstone has incurred $39,070 in out-of-pocket expenses in connection with its Prepetition Assignment. Blackstone will apply the unused Expense Advance against any out-of-pocket expenses incurred by Blackstone postpetition. To the extent the Expense Advance exceeds expenses incurred by Blackstone postpetition, such excess shall be applied against

---

[3] Capitalized terms used but not defined in this paragraph shall have the meanings ascribed to such terms in the Letter Agreement.

postpetition fees earned. Pursuant to the Letter Agreement, Blackstone shall be paid a

$1,000,000 amendment fee (the "Amendment Fee") upon the effectiveness of the first

amendment to the Debtors' Credit Agreement executed by the Debtors (any such agreement, if

executed, the "Amendment Agreement") with respect to, among other things, current events of

default under the Credit Agreement, and as well as an additional fee (the "Restructuring Fee")

equal to (a) upon the consummation of an event set forth in clause (i) of the definition of

Restructuring in the Letter Agreement, 1.0% of the face amount of the restructured Obligations,

and (b) upon consummation of a Transaction, a fee equal to 1.0% of the Consideration payable in

cash directly out of the gross proceeds of the Transaction. The aggregate Restructuring Fee

(together with any Amendment Fee previously paid) shall not exceed $3,600,000. The foregoing

is a summary of the terms of the Letter Agreement. For a more detailed description of

Blackstone's fees, please see the Letter Agreement attached hereto as Exhibit B.

   21. The fees and expenses described above are consistent with Blackstone's

normal and customary billing practices for cases of this size and complexity, both in and out of

court, which require the level and scope of services outlined in the Letter Agreement. The

compensation arrangement provided for in the Letter Agreement and generally described above is

consistent with and typical of arrangements entered into by Blackstone and other investment

banking and financial advisory firms of comparable standing in connection with rendering of

similar services to clients such as the Debtors. Blackstone and the Debtors believe that the

foregoing compensation arrangement is both reasonable and market-based.

   22. Blackstone will seek compensation and reimbursement of out-of-pocket

expenses as specified in the Letter Agreement, with the payment of such fees and expenses to be

approved in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure,

the Local Rules, and any orders of this Court; provided, however, as has been approved in other

Blackstone chapter 11 assignments in which it has been retained, that Blackstone shall not be

required to maintain time records or maintain receipts for individual expenses in amounts less

than $75; and provided further, that the approval of Blackstone's fees and out-of-pocket

expenses will be subject to the standards contained in section 328(a) of the Bankruptcy Code.

23.     Notwithstanding the approval of the compensation requested herein, all of

Blackstone's fees and out-of-pocket expenses in these chapter 11 cases will be subject to

approval of the Court upon proper application by Blackstone in accordance with section 328 of

the Bankruptcy Code, the fee and expense guidelines established by the U.S. Trustee, and any

other applicable requirements or orders of the Court; further, the Section 328(a) standard of

review shall not limit the scope of review and objection, if any, of the U.S. Trustee.

24.     As set forth in Attachment A to the Letter Agreement attached hereto as

Exhibit B and subject to the terms and conditions therein, the Debtors agreed to indemnify

Blackstone and certain related parties from losses related to, arising out of, or in connection with

the engagement of Blackstone under the Letter Agreement.  The Debtors believe the indemnity

provision is a reasonable term and condition of Blackstone's engagement.  Unlike the market for

other professionals that the Debtors may retain, indemnification is a standard term for the market

for financial advisors.  Blackstone and the Debtors believe the indemnity provision is

comparable to those generally obtained by financial advisory firms of similar stature to

Blackstone and for comparable engagements, both in and out of court.  Indeed, debtor

indemnification of Blackstone has been approved in recent chapter 11 cases commenced in this

District.  See, e.g., In re NTK Holdings, Inc., Ch. 11 Case No. 09-13611 (KJC) (Bankr. D. Del.

Dec. 4, 2009) [D.I. 204]; In re Abitibibowater Inc., Ch. 11 Case No. 09-11296 (KJC) (Bankr. D.

Del. Aug. 11, 2009) [D.I. 836]; <u>In re Flying J Inc.</u>, Ch. 11 Case No. 08-13384 (MFW) (Bankr. D. Del. Apr. 3, 2009) [D.I. 926]; <u>In re Merisant Worldwide, Inc.</u>, Ch. 11 Case No. 09-10059 (PJW) (Bankr. D. Del. Feb. 25, 2009) [D.I. 146]; <u>In re Semcrude, L.P.</u>, Ch. 11 Case No. 08-11525 (BLS) (Bankr. D. Del. Sept. 12, 2008) [D.I. 1350].

## Notice

25.     No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on: (a) the United States Trustee for the District of Delaware, (b) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis), (c) counsel to the agents for the Debtors' prepetition secured lenders, and (d) all parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that no other or further notice need be provided.

## No Previous Request

26.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order, substantially similar to the proposed form of order attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 8, 2010

HAWKEYE RENEWABLES, LLC
(for itself and on behalf of its affiliated Debtor and Debtor in Possession)

By: /s/Timothy B. Callahan
    Timothy B. Callahan
    Chief Financial Officer