## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------------ x
: 
In re : Chapter 11
: 
HAWKEYE RENEWABLES, LLC, *et al.*, : Case No. 09-14461 (KJC)
: 
Debtors. : Jointly Administered
: 
------------------------------------------------------------------------ x

**SECOND LIEN AGENT'S NOTICE OF DEPOSITION OF THE DEBTORS**

PLEASE TAKE NOTICE that pursuant to Rules 9014 and 7030 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 30(b)(6) of the Federal Rules of Civil Procedure, Wilmington Trust FSB, as agent (the "Second Lien Agent"), under that certain Second Lien Credit Agreement, by and through its undersigned counsel, will take the depositions of the above captioned debtors and debtors in possession, at the offices of Bifferato Gentilotti LLC, 800 N. King Street, Plaza Level, Wilmington, Delaware 19801, on February 22, 2010 at 10:00 a.m., or on such other time and place as the parties shall agree or the Court may direct.

Pursuant to Bankruptcy Rules 9014 and 7030 and Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Debtors are required to designate one or more members, officers, directors, managing agents or other persons to testify, who have knowledge about the matters set forth in Schedule A hereto.

Dated: February 3, 2010  
       Wilmington, Delaware

Respectfully submitted,

BIFFERATO GENTILOTTI LLC

/s/ Garvan F. McDaniel  
Garvan F. McDaniel (I.D. #4167)  
800 N. King Street, Plaza Level  
Wilmington, DE 19801  
Telephone: (302) 429-1900  
Facsimile: (302) 429-8600  
gmcdaniel@bglawde.com

1944727v1

-and-

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Andrew K. Glenn, Esq.
David Mark, Esq.
Alan Lungen, Esq.
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Counsel *for Wilmington Trust FSB*

# DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1. "Amended DG Marketing Agreement" has the same meaning as such term is defined in the Plan.

2. "Amended Ethanol Marketing Agreement" has the same meaning as such term is defined in the Plan.

3. "Amended Management Agreement" has the same meaning as such term is defined in the Plan.

4. "Amended Organizational Documents" has the same meaning as such term is defined in the Plan.

5. "Blackstone" means Blackstone Advisory Services L.P, Blackstone Group and any of their respective affiliates and any agents, counsel, director, officer, employee or any other person purporting to act or speak on their behalf in their capacity as financial advisors to Hawkeye.

6. "Capstone" means The Capstone Advisory Group, LLC and any of its respective affiliates and any agents, counsel, director, officer, employee or any other person purporting to act or speak on their behalf in their capacity as financial advisors to the First Lien Committee.

7. "Cases" means the cases styled *In re Hawkeye Renewables, LLC, et al.*, jointly administered under Case No. 09-14461 (KJC) in the United States Bankruptcy Court for the District of Delaware.

8. "Communication" or "communication" means and includes, without limitation, statements, discussions, negotiations, conversations, speeches, meetings, remarks, questions, answers, panel discussions, symposia, and every other manner of disclosure, transfer or exchange of information, whether written or oral. The term includes communications and statements which are face-to-face and those which are transmitted by media such as intercom, telephone, television, radio, mail, modem or electronic mail.

9. "Concerning" or "concerning" means relating to, referring to, referencing, reflecting, describing, discussing, evidencing, supporting, stating, mentioning, embodying, setting forth, commenting on, assessing, recording, constituting, comprising, touching upon, summarizing, identifying, commenting on, reflecting, indicating, analyzing, pertaining to in any way, or having any logical or factual connection whatsoever to the subject matter in question.

10. "Debtors" means each of the above captioned debtors and debtors-in-possession.

11. "Disclosure Statement" means that certain Disclosure Statement for Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for the

Debtors, and any drafts, amendments, modifications or other versions thereof, and drafts on behalf of any affiliate, parent or subsidiary of the Debtors.

12. "Exit Facility" has the same meaning as such term is defined in the Plan.

13. "First Lien Committee" means that certain ad hoc group of First Lien Lenders described on page 28 of the Disclosure Statement.

14. "First Lien Credit Agreement" has the same meaning as such term is defined in the Plan.

15. "First Lien Lenders" shall mean the lenders from time to time under the First Lien Credit Agreement.

16. "Hawkeye" means, collectively or individually, Hawkeye Renewables, LLC, Hawkeye Intermediate, LLC, and/or any of its parents, subsidiaries, affiliates, agents, counsel, director, officer, employee or any other person purporting to act or speak on their behalf.

17. "Leveraged Buyout" means the transaction closing in or about June 2006 whereby certain T.H. Lee Parties acquired the largest ultimate ownership interest in Hawkeye.

18. "New Membership Interests" has the same meaning as such term is defined in the Plan.

19. "New Secured Term Loans" has the same meaning as such term is defined in the Plan.

20. "Petition Date" means December 21, 2009.

21. "Plan" means that certain Joint Prepackaged Plan of Reorganization of Hawkeye Renewables, LLC, et al. Under Chapter 11 of the Bankruptcy Code, and any drafts, amendments, modifications or other versions thereof.

22. "Plan Support Agreement" means that certain Restructuring Support Agreement, dated as of November 24, 2009, entered into by and among the Debtors, the First Lien Agent and the Consenting Holders, along with any drafts, amendments, modifications or other versions thereof.

23. "T.H. Lee Parties" has the same meaning as such term is defined in the Plan.

24. "Weil" means Weil, Gotshal & Manges LLP.

25. "Valuation" means any estimation, projection, guess, opinion or other statement or view as to or in connection with the value of any Debtor and/or all of the Debtors at or for any time.

26. "You," "your," "yourself" mean Hawkeye and any and all affiliates, subsidiaries, divisions, parent corporations, controlling shareholders, or predecessors or successors in interest thereof, and any and all officers, directors, managers, employees, consultants, advisors, attorneys, accountants, appraisers or other agents of any of the foregoing.

27. "All" and "each" shall be construed to mean all and each; "any" and "all" shall be construed to mean any and all.

28. The word "through" means "through and including."

29. The term "including" means "including, without limitation."

30. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

# SCHEDULE A

## SUBJECT MATTERS FOR DEPOSITION

1. The T.H. Lee Parties' relationship with Hawkeye, including without limitation (a) any direct or indirect economic interest of any T.H. Lee Parties' affiliate in any Debtor or affiliate of any Debtor, including, but not limited to Hawkeye Gold, LLC and Hawkeye Energy Holdings, LLC, (b) agreements between any T.H. Lee Parties and Hawkeye, the negotiation thereof, and the negotiation of any proposed amendments or modifications thereto, whether or not adopted, (c) transfers of money, assets, or property of any kind or value between any T.H. Lee Parties and Hawkeye, (d) communications between T.H. Lee Parties and the Debtors concerning the solvency and/or value of Hawkeye or any of Hawkeye's assets at any time since January 1, 2006 or T.H. Lee Parties's own analysis thereof, (e) the decision to enter Chapter 11 proceedings, (f) past and current management of Hawkeye, and (g) the proposed Board of Managers.

2. The Plan, the Disclosure Statement, and any documents ancillary thereto, including, but not limited to the (i) Amended DG Marketing Agreement, (ii) Amended Ethanol Marketing Agreement, (iii) Amended Management Agreement, and (iv) Amended Organizational Documents, and including the negotiation and execution of each and all drafts thereof.

3. The Plan Support Agreement, including the negotiation and execution of each and all drafts thereof.

4. The "Events Leading to the Commencement of the Chapter 11 Cases" described in the Disclosure Statement.

5. The proposed Exit Facility and the New Secured Term Loan, including the negotiation and execution of each and all drafts thereof.

6. The New Membership Interests.

7. The management and board structure and decision-making processes of each of the Debtors and their non-debtor parent from January 1, 2006 until the present.

8. The decision to hire the following individuals or firms: (a) Blackstone and (b) Weil and all documents concerning the engagement of such individuals and/or firms.

9. The Debtors' efforts to sell or value their assets on or after January 1, 2006.

10. Discussions about any alternative restructuring or alternative structure of a plan for Hawkeye other than the Debtors' proposed Plan.

11. The Valuation of the Debtors and the basis thereof, including, but not limited to, (i) the Debtors past financial performance, projections and financial statements, (ii) the cost or value of commodities used by any of the Debtors in the production of ethanol or related products, and (iii) future sales of ethanol and related products by the Debtors.

12. The Leveraged Buyout.