# **Exhibit A**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 11
                                    .
CCS Medical, Inc., et al.,          .    Case No. 09-12390(CSS)
                                    .    (Jointly Administered)
                                    .
                                    .    August 20, 2009
                                    .    10:30 a.m.
        Debtors.                    .    (Wilmington)
                                    .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Michael J. Kelly, Esq.
                            Roger Netzer, Esq.
                            Willkie, Farr & Gallagher, LLP

                            Matthew B. Lunn, Esq.
                            Young, Conaway, Stargatt
                            & Taylor, LLP

For the Second Lien
Lenders:                    Kurt A. Mayr, Esq.
                            Sam Stricklin, Esq.
                            Bracewell & Giuliani, LLP

For the DIP Lender:         Derek C. Abbott, Esq.
                            Morris, Nichols, Arsht & Tunnell, LLP

                            Joshua A. Feltman, Esq.
                            Wachtell, Lipton, Rosen & Katz

1 Honor's entry of the order. It was offered as a condition to
2 an order on a, what I thought was an informal basis. And we
3 have endeavored to start the process of reaching out to the
4 clients. If you read the request, it asks for every email
5 under the sun that has anything to do with CCS. That is a
6 long and arduous process, and again, another cost that we
7 have to bear without 1103(c) status. And that's underway. I
8 want to assure Your Honor of that. And we didn't think that
9 there was time to make an objection given Your Honor's order.
10 And with respect of whether Broadpoint was looking for
11 documents, my reading of the document request was that it was
12 addressed to my clients, not to Broadpoint, so we had not
13 asked Broadpoint to collect documents. But when they were
14 noticed up for deposition, they were made available within
15 hours.
16          THE COURT: Okay.
17          MR. MAYR: Thank you.
18          THE COURT: Thank you. I'm ready to rule. I'm
19 going to deny the motion. Frankly, I don't think it's even
20 close. And as such the - - I'm going to say why in a second.
21 But as such, to the issue about discovery and reserving the
22 right to continue the hearing if there's inadequate
23 opportunity for discovery, I, it's moot. Based on my ruling.
24 Let me just back up a minute and ruminate a little. <u>Butner</u>
25 <u>v. US</u>, which I think is probably the most important

bankruptcy related case the Supreme Court's ever issued, states that the starting point is always non-bankruptcy law, unless there is a reason for the bankruptcy law to trump. So I go back to the concept of the American Rule on Fees, which is it's born by litigants. Now Congress has made an exception to that rule with the concept of an official committee, an official committee of unsecured creditors, as well as the discussion of the Office of the US Trustee or the Court ordering the US Trustee to appoint other committees. And there's a real good reason for that, at least in the concept of unsecured creditors, who generally are a very diversified body. Not necessarily all with the same issues. You run into collective action issues, you run into all sorts of problems. Not the least of which is unsecured creditors are often very close to being out of the money. Recoveries may be small in a case. And individual creditors may not have a sufficient financial stake to be willing to bear the cost of their own participation in the process. Yet, official committees of unsecured creditors are central to the operation of the Bankruptcy Code and the movants made that point rather eloquently in their motion. So we go to the issue of appointing not an unsecured creditors committee, because there was not sufficient interest, to whether the Court should in effect appoint an additional committee. And by that I mean just simply a committee that's not an official

committee of unsecured creditors. I don't really use additional in the concept of in addition to an already appointed committee, because one doesn't exist. The movants make the point that this is an extraordinary case. I would say it's unusual but not extraordinary. Why I say it's unusual is I've certainly been involved in cases where the, both in private practice, and since I've been on the bench, where you can't get a committee formed. For various reasons. And indeed I was involved in a case many years ago where we had to resort, in an oil and gas case, to putting secured creditors on the committee, in order to get an official committee together, since every trade creditor in the universe has some sort of lien under state law in those types of cases. So there was extraordinary circumstances there but what's very usual in this case is that the Second Lien Lenders are the fulcrum security. I'm seeing that over and over and over again. And even when committees are formed in those cases, they don't necessarily, well they don't represent the interests of the second lien lenders, and my experience has been that they more than often, more often than not cut their own deal usually fairly quickly in the case to get what they can out of a situation where they're certainly not in the money. So I think it's true to say that there's a strong or high burden by the movant to get the, their committee formed. All right. They say that, the

1  movants say this case isn't about fees. Couldn't disagree
2  more. This case, this motion is all about fees. And I think
3  that's important. Because again, committees are the
4  exception, and one of the reasons for that is you have the
5  concept that litigation won't occur unless someone who's
6  going to litigate makes the economic decision that the costs,
7  you know, or the payout times the risk is greater than or
8  equal to the cost of going forward. That's good. That's a
9  good result. And if this ad hoc committee were to throw in
10 the towel, I think it would be evidence that they weren't
11 necessarily that confident in their case. The other thing
12 that I look at here is the adequate representation. Whether
13 it's the movant that's adequately represented, or the class.
14 I think in either case they are. Clearly they've hired
15 excellent counsel and excellent financial advisor. At least
16 so far they've been willing to pay the fees. Importantly,
17 we're talking about a discrete group of identically situated
18 creditors. There simply is none of the reasons that exist
19 for the appointment of an official committee, as Congress has
20 provided, where you've got a diversified group, maybe a group
21 that's not even in communication with each other. Here
22 you've got a small group with the same interests, claims
23 based on the exact same issue. I would also be worried about
24 the slippery slope, and opening the Pandora's Box of motions.
25 Because, again, as I said earlier, I'm seeing a lot of cases

1  where the second lien lenders are the, I like this term, the
2  fulcrum security, or the ox that's being gored. However you
3  want to put it. And I certainly don't want to encourage
4  official committees of second lien lenders in every case. I
5  don't think it would be constructive. Most second lien
6  lenders, certainly there's an agent that is in almost all
7  those cases. But even if there were not, again, they're
8  sophisticated participants in the financial markets, and that
9  is a factor the Court is to take into account in deciding
10 whether to appoint a committee. So for all those reasons I
11 will deny the motion and ask counsel to submit a form of
12 order under certification. Now turning back to the
13 disclosure statement. I have a 1 o'clock hearing in a
14 matter. I'd like to recess this to take the 1 o'clock
15 hearing, and hopefully that will give you some time to review
16 the disclosure statement and see if you have any other
17 comments. We can do this one of two ways. If you have no
18 comments, there, I don't think there's any reason to
19 reconvene, and the documents can be submitted under
20 certification. If not we can reconvene. And let me look. I
21 have Delaware Home Furnishings at 1 and then I'm covering
22 Judge Shannon's Chapter 7 calendar at 2:30. And then I have
23 a very short matter at 3:30. So let's reconvene at 2? Will
24 that give you, well, will that give you enough time? Okay.
25 We'll reconvene at 2. I don't think Delaware Home

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

Case No. 09-13611

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


NTK HOLDINGS, INC., et al.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x



        U.S. Bankruptcy Court

        824 North Market Street

        Wilmington, Delaware


        December 4, 2009

        10:07 a.m.


B E F O R E:

HON. KEVIN J. CAREY

U.S. BANKRUPTCY JUDGE


ECR OPERATOR:  AL LUGANO

section is rife with language which indicates that a committee should be fairly chosen and representative of the different kinds of claims to be represented in the case. I will not read 1102(a) to require the appointment by the U.S. Trustee of a committee that does not meet that standard. That would read the statutory language, I think, to end up with the result that is inappropriate and literally absurd. So that from a legal standpoint I will not interpret 1102 to require based upon the plain meaning of the statute and the consideration of its purpose to require that the U.S. Trustee appoint a committee that's not representative.

Now, that does beg two other questions, at least, maybe more. But the two that occur to me are, one, factually whether, in fact, the committee that the movant here would like to see appointed would, in fact, be representative of the collective creditor body. And, two, the legal question of what standard do I employ in terms of reviewing the U.S. Trustee's decision? Is it an abuse of discretion standard or is it some other standard. So let me ask in light of that the parties to address that initially.

MR. YOUNGMAN: Consistent with the Court's view that the statute should be read holistically and not reading Section (a)(1) in isolation, we can look to case law for analogy as to how courts have set the standard with respect to a United States Trustee's discretion.

1  prepackaged Chapter 11.  It does have some opposition.  The
2  debtor will have to move forward under a cram-down scenario in
3  part, so that it does make the circumstance a little bit
4  different from other prepacks.  But I don't think that it makes
5  enough of a difference that under the record that's made here,
6  it warrants an upsetting of the deference that Courts, I think,
7  can and do and should give to the U.S. trustee in committee
8  selection.
9       The other factor is the record clearly demonstrates
10 that the parties here, and Ore Hill, in particular, are well
11 able to represent their interests in opposition to the proposed
12 plan.  In fact, I can't think of parties better suited to such
13 an exercise.  The issue really does boil down to who should pay
14 for that exercise, should Ore Hill wish to undertake it.  And
15 this record does not support a decision which results in the
16 estate bearing such an expense.  Now, that having been said,
17 should Ore Hill persist in its opposition to confirmation,
18 particularly the debtors' valuation and treatment of the 43
19 million dollar credit that appears as a result of tax
20 allocation agreements, it may do so, and it may ultimately be
21 entitled to an award of a substantial contribution.
22      But, for all of those reasons, I will deny the motion
23 and I'll ask counsel to confirm, submit a form of order that
24 provides that and simply referring to the reasons that I've
25 stated on the record.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                              )   Case No. 09-10443 (MFW)
                                    )
                                    )   Chapter 11
PLIANT CORPORATION, et al.,         )   (Jointly Administered)
                                    )
                                    )
                                    )   Courtroom 4
          Debtors.                  )   824 Market Street
                                    )   Wilmington, Delaware
                                    )
                                    )   March 20, 2009
                                    )   9:46 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                    Sidley Austin LLP
                                BY: LARRY NYHAN, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7710

For the Ad Hoc Committee:       Akin Gump Strauss
                                   Hauer & Feld LLP
                                BY: ABID QURESHI, ESQ.
                                One Bryant Park
                                New York, NY 10036
                                (212) 872-8027

ECRO:                           THERESA PULLAN

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

1 adequately represented in this case. I think to do that I
2 have to look at the size of the creditor or creditor body
3 and their stake in the case to see whether it is significant
4 enough that that creditor would represent itself in the case
5 in the absence of the appointment of a committee, and I
6 think the answer to that is already proven in this case.
7 　　　　　　The ad hoc committee has already proven they can
8 adequately represent themselves. They did so at the interim
9 hearing, had attorneys present, presented evidence and
10 cross-examined the Debtors' witnesses regarding the issues
11 relevant to their stake in this case. They have done
12 discovery. They have filed pleadings in this case. All of
13 that I think evidences that they can adequately represent
14 themselves without the formation of a committee, and
15 therefore I don't think I need to get to the other factors
16 because I find that they can adequately represent
17 themselves.
18 　　　　　　Even if I were to consider the other factors,
19 though, I think that the issue of cost shows that there is
20 further reason not to appoint a committee. The cost on the
21 estate where the estate is asserting that this creditor
22 constituency is out of the money outweighs the need for the
23 appointment of a committee, again partially because I think
24 that they have established that they are willing to bear the
25 cost of that themselves.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW JERSEY

IN RE:

TCI 2 HOLDINGS, LLC.,
et al.,

　　　　　　　Debtors,

)　　Bankruptcy Action
)　　Case No.: 09-13654(JHW)
)
)　　Chapter 11
)
)　　Camden, New Jersey
)　　November 25, 2009

(Via Telephone Conference)
TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:


For the Debtor:　　　　　　　ANGELA ZAMBRANO, ESQUIRE
　　　　　　　　　　　　　　　MICHAEL F. WALSH, ESQUIRE
　　　　　　　　　　　　　　　Weil, Gotshal & Manges, LLP
　　　　　　　　　　　　　　　200 Crescent Court
　　　　　　　　　　　　　　　Suite 300
　　　　　　　　　　　　　　　Dallas, Texas　75201


　　　　　　　　　　　　　　　CHARLES A. STANZIALE, ESQUIRE
　　　　　　　　　　　　　　　MCCARTER & ENGLISH, LLP
　　　　　　　　　　　　　　　Four Gateway Center
　　　　　　　　　　　　　　　100 Mulberry Street
　　　　　　　　　　　　　　　P.O. Box 652
　　　　　　　　　　　　　　　Newark, New Jersey　07102


For Valerie Berardis:　　　　DANIEL J. HETZNECKER, ESQUIRE
　　　　　　　　　　　　　　　Giosa & Hetznecker, P.C.
　　　　　　　　　　　　　　　One Greentree Centre, Suite 201
　　　　　　　　　　　　　　　Route 73 and Greentree Road
　　　　　　　　　　　　　　　Marlton, New Jersey　08053


For the Former　　　　　　　　JERRY KULBACK, ESQUIRE
Shareholders:　　　　　　　　Archer & Greiner, P.C.
　　　　　　　　　　　　　　　One Centennial Square
　　　　　　　　　　　　　　　Haddonfield, New Jersey　08033

1   and the use of the term "shall," of course, underscores the
2   mandatory nature of that obligation.
3            It seems to me that the United States Trustee
4   fulfilled its responsibility by attempting to form, in the
5   usual course, the Committee unsuccessfully, because there was
6   insufficient interest when that attempt was made. It is
7   difficult, I agree with Mr. Kulback, to assign a waiver to the
8   rights of the former shareholders, for instance, to assert that
9   a Committee should be formed. But, nevertheless, equitable
10  considerations, including perhaps laches, do come into play in
11  terms of the timeliness of the quest.
12           Indeed, we do not disenfranchise unsecured creditors
13  who wish to be heard. Of course, they will be able to vote on
14  the plan and to express objections to any plan that is under
15  consideration. The -- I don't discount the need for them to be
16  represented, and the upside of providing representation through
17  the estate. I share the concern expressed by Mr. Kulback about
18  this exorbitant outlay of administrative expenses, and can't
19  explain it very well. Perhaps that will require a closer look.
20           But, in any event, it is on the basis that the US
21  Trustee has fulfilled its 1102(a)(1) responsibility here that I
22  decline to grant the motion. Recognizing that -- that it is a
23  close question that the unsecured creditor body is really
24  comprised of upwards of $1.2 billion, technically; that a
25  significant portion of that amount of unsecured creditors is in

1    favor of rejecting the motion, as is the US Trustee. By a
2    significant amount, I mean the Ad Hoc Committee and its
3    position, which, at last look, represented, I think, over 60
4    percent of the Ad Hoc -- of the noteholders positions.
5              I am concerned, as a broader issue, on the different
6    treatment that has been afforded and that is anticipated to be
7    afforded to various segments of the unsecured creditors pool,
8    if you will. We'll have to sort that out as we go. We all
9    understand that regardless of how creditors got to be
10   creditors, whether they are vendors, whether they are PI
11   claimants, whether they are potentially former shareholders who
12   now have a contractual claim, if Mr. Kulback is correct in that
13   assessment, they are entitled to equal treatment in the context
14   of a confirmed plan of reorganization. So, obviously, that is
15   an issue we will have to sort out. Nevertheless, it seems to
16   me that because the US Trustee has fulfilled its
17   responsibility, or hers, to attempt to convene and to appoint a
18   -- a Committee of creditors, and there was insufficient
19   interest, inability to do so, now, at this late juncture, we
20   will decline to order the US Trustee to do it now.
21             I -- I make no comments about the post-confirmation
22   appointment of a Committee. That is highly debatable, I think,
23   in the context of what confirmation means to a reorganized
24   debtor and what the -- the code framework allows.
25   Nevertheless, it seems to me that the -- to the extent that

1  1102(a), in this context, offers the Court any discretion, and
2  it is -- it's not a question of the exercise of discretion.
3  It's a question of imposing the facts on that particular
4  provision. It seems to me that under these facts, where a
5  Committee has been attempted shortly after the filing, without
6  success, that there need not be another try. So I will deny
7  the motion, and move on to the -- we had a late filed motion by
8  Beal Bank. Who will speak for -- on behalf of Beal Bank?
9      MR. LAURIA: Your Honor, that would be -- be me, Tom
10 Lauria.
11     THE COURT: Yes, Mr. Lauria.
12     MR. LAURIA: Good morning, Your Honor. Thank you.
13 And -- and I, first of all, apologize to the Court for the late
14 filing of the motion, and will -- will attempt to explain the
15 timing based on -- on the circumstances here. But I very much
16 appreciate the Court giving us the opportunity to be heard on
17 this at -- at this point in the case.
18     The -- the bottom line is that Beal was prepared to
19 propose a plan, which is, in effect, a slightly modified
20 version of the -- the debtors' plan, which, as reflected in the
21 form of backstop commitment and plan term sheet that we filed
22 with the Court last night, would materially enhance the
23 investment opportunity offered to the second-lien lenders,
24 would completely de-lever the debtors' balance sheet, would
25 maximize liquidity of the business going forward, and, we