**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------x
|  | : |  |
| In re: | : | Chapter 11 |
|  | : |  |
| HAWKEYE RENEWABLES, LLC., et al.,[1] | : | Case No. 09-14461 (KJC) |
|  | : |  |
|  | : | (Jointly Administered) |
|  | : |  |
|  | : |  |
| Debtors. | : | **Hearing Date: February 9, 2010 at 2:00 p.m.** |
-----------------------------------------------------------x | | **Objection Deadline: February 4, 2010 at 4:00 p.m.** |

## FIRST LIEN AGENT'S OBJECTION TO MOTION OF THE SECOND LIEN AGENT FOR AN ORDER DIRECTING THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OR ALTERNATIVELY, AN OFFICIAL COMMITTEE OF SECOND LIEN LENDERS

Credit Suisse AG, Cayman Islands Branch, in its capacity as administrative and collateral

agent (the "First Lien Agent") under the Debtors' prepetition first lien credit agreement (the

"First Lien Credit Agreement" and the lenders thereunder, the "First Lien Lenders"), hereby files

this objection (the "Objection") to the Motion of the Second Lien Agent for an Order Directing

the Appointment of an Official Committee of Unsecured Creditors, or Alternatively, an Official

Committee of Second Lien Lenders, dated January 26, 2010 [Docket No. 110] (the "Motion").

In support of this Objection, the First Lien Agent respectfully submits as follows:

### PRELIMINARY STATEMENT

1.      The U.S. Trustee declined to appoint a statutory committee of unsecured creditors

in these cases due to lack of interest.  Through this Motion, Wilmington Trust FSB (the "Second

Lien Agent") asks the Court to overturn the U.S. Trustee's decision and compel the U.S.

Trustee to appoint an official committee of unsecured creditors, or, alternatively, an official

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Hawkeye Renewables, LLC (3162) and Hawkeye Intermediate, LLC (5356).  The Debtors' corporate headquarters and service address is:  224 S. Bell Avenue, Ames, Iowa 50010.

committee of Second Lien Lenders (defined below). The Motion should be denied for the following reasons.

2. <u>First</u>, the U.S. Trustee properly exercised its discretion in not appointing a committee of general unsecured creditors. The Bankruptcy Code does not require the U.S. Trustee to appoint a committee when no suitable candidates are willing to serve. Here, the only creditors willing to serve were three Second Lien Lenders who took the position that their respective claims were secured, albeit undersecured. The U.S. Trustee determined that the lenders were not suitable candidates for service on an unsecured creditors' committee and declined to appoint a committee. The decision of the U.S. Trustee is entitled to deference and should only be overturned upon a demonstration that the U.S. Trustee abused its discretion in reaching this decision. As no such evidence exists, the decision of the U.S. Trustee should not be disturbed.

3. <u>Second</u>, the Second Lien Agent fails to demonstrate that appointment of a Second Lien Committee is necessary under section 1102(a)(2) of the Bankruptcy Code to ensure that the interests of Second Lien Lenders are adequately represented in these cases. The Second Lien Agent and Second Lien Lenders working with the agent are well organized, well represented by counsel, and up to the task of representing the interests of Second Lien Lenders without "official" status. Indeed, the Debtors, First Lien Agent and other third parties are cooperating with the Second Lien Agent on various discovery matters in connection with preparing for a contested confirmation hearing. Unlike the second lien lenders in *CCS Medical* who lacked an agent and were stonewalled by the Debtors in connection with discovery, the Second Lien Lenders in the instant cases are being adequately and effectively represented through the Second Lien Agent. Given the Second Lien Agent's substantial involvement in the

cases, the Second Lien Agent cannot seriously argue that a committee is necessary to ensure adequate representation. Moreover, neither the Second Lien Agent nor Second Lien Lenders lack a remedy to get paid or reimbursed for fees and expense incurred in the cases because (i) such fees and expenses may be recovered in advance of distributions of principal to the Second Lien Lenders under the relevant credit documentation, and (ii) they have the right to seek allowance of substantial contribution claims under section 503(b)(3)(D) of the Bankruptcy Code. If the Second Lien Agent and Second Lien Lenders can demonstrate to the Court (as they indicated they will) that the value available for distribution to creditors in these cases exceeds approximately $592 million, then payment or reimbursement of such fees and expenses is merely a timing issue.

4.     <u>Third</u>, given the Second Lien Agent's ability to adequately represent the interests of Second Lien Lenders without "official" status, it is plainly obvious that the sole purpose of the Motion is to provide the Second Lien Lenders ***who oppose the Plan*** with a means of funding their opposition to confirmation of the Debtors' plan of reorganization (the "<u>Plan</u>"). Having failed to obtain current payment of fees and expenses as a form of adequate protection under the cash collateral order, the Motion is merely a second bite at the apple by the Second Lien Agent in its attempt to force the estates to fund the Second Lien Agent's opposition to the Debtors' Plan. Furthermore, the Motion represents an end-run around certain restrictions contained in the Intercreditor Agreement. Appointment of an official committee of Second Lien Lenders to do that which is prohibited by the Intercreditor Agreement does violence to such agreement and materially interferes with the legitimate expectations and bargained for rights of First Lien Lenders. The Second Lien Lenders use of aggressive and opportunistic litigation

tactics to further their own economic self-interest in these cases should not be funded under any circumstances out of the First Lien Lenders' cash collateral.

5.     For the reasons set forth herein, the First Lien Agent submits that the U.S. Trustee properly exercised its discretion given the facts and circumstances of these cases, applicable law, and established norms in this jurisdiction governing committee appointments. Accordingly, the First Lien Agent respectfully requests that the Motion be denied.

## BACKGROUND

6.     On December 21, 2009, Hawkeye Renewables, LLC and Hawkeye Intermediate, LLC, (collectively, the "Debtors") commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are operating their business and managing their affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner or committee has been appointed in these cases.

7.     On December 21, 2009, the Debtors filed the Motion of the Debtors Pursuant to Sections 105(a), 361, and 363 of the Bankruptcy Code for Entry of an Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing [Docket No. 9] (the "Cash Collateral Motion").  On December 22, 2009, the Court approved the interim order granting the relief requested in the Cash Collateral Motion and scheduled a final hearing for January 19, 2010.

8.     On January 15, 2010, the Second Lien Agent filed a Limited Objection, seeking additional adequate protection in the form of reimbursement of its fees and expenses [Docket No. 68] (the "Limited Objection").

9.     In connection with their responses to the Limited Objection, both the Debtors and the First Lien Agent advised the Court that the First Lien Agent and the Second Lien Agent are parties to an intercreditor agreement (the "Intercreditor Agreement"), which, among other things, restricts the ability of the Second Lien Agent and Second Lien Lenders to request adequate protection.  After responsive briefing and argument at the hearing, the Court, relying on the Intercreditor Agreement, denied the Second Lien Agent's request for additional adequate protection and entered a final order granting the Cash Collateral Motion [Docket No. 78] (the "Final Cash Collateral Order").

10.     On January 8, 2010, the U.S. Trustee filed a Statement that Unsecured Creditors' Committee Has Not Been Appointed [Docket No. 63, as amended by Docket No.67], noting that there had been insufficient interest to form a Committee.  The Second Lien Agent further alleges that the U.S. Trustee has already indicated that it likely would not grant a request to for an official committee of Second Lien Lenders. *See* Motion at ¶14.  On January 26, 2010, the Second Lien Agent filed the Motion requesting the appointment of an official committee of unsecured creditors or, alternatively, the appointment of a second lien committee (a "Second Lien Committee").

**ARGUMENT**

**I.     The U.S. Trustee Properly Declined to
Appoint an Official Committee of Unsecured Creditors**

**A.     *The U.S. Trustee's Decision Not to Appoint a Unsecured Creditors' Committee
Should Be Reviewed Under an Abuse of Discretion Standard***

11.     Bankruptcy Code section 1102(a)(1) grants the U.S. Trustee authority to appoint an official committee of unsecured creditors.  *See* 11 U.S.C. § 1102(a)(1).  Courts within this District, including this Court, have consistently held that a trustee's decision concerning the

appointment, or composition, of a creditors' committee will only be reviewed under an abuse of discretion standard. *See In re NTK Holding, Inc.*, Case No. 09-131611 (KJC) Hr'g Tr. at 74:20-22 (Bankr. D. Del. Dec. 4, 2009) (declining to appoint a committee and finding "[w]ith respect to the standard to be applied, under these circumstances, I conclude that the U.S. Trustee's actions must be reviewed under an abuse of discretion standard.").

12.     Accordingly, the U.S. Trustee's decision should only be disturbed in the event the Second Lien Agent can establish by a preponderance of the evidence that the U.S. Trustee acted arbitrarily, irrationally, or capriciously, in electing not to appoint an unsecured creditors' committee in these cases.

**B.     *The U.S. Trustee Did Not Abuse Her Discretion in Declining to Appoint an Unsecured Creditors' Committee Because No Creditors Capable of Representing the Interests of Unsecured Creditors Were Willing to Serve***

13.     The U.S. Trustee's decision not to appoint an official unsecured creditors' committee due to insufficient creditor interest was neither arbitrary, irrational nor capricious. Rather, the decision is consistent with the statutory framework of Bankruptcy Code section 1102 and established practice in this jurisdiction.

14.     Bankruptcy Code section 1102 must be read as a whole when interpreting the statute. The Second Lien Agent argues that section 1102(a)(1) of the Bankruptcy Code mandates the appointment of an unsecured creditors' committee. *See* Motion at ¶ 17 (". . . Section 1102 of the Bankruptcy Code provides unequivocally that "the United States trustee **shall** appoint a committee of creditors holdings unsecured claims.") (emphasis in Motion). This interpretation, however, has been soundly rejected by this Court for good reason. In *In re NTK Holdings Inc.*, this Court stated that it would be "***inappropriate and literally absurd***" to hold that Bankruptcy Code section 1102 mandates the appointment of a committee when, as is the

case here, a committee cannot be formed that adequately represents different kinds of unsecured claims:

> I'm convinced that the way 1102 ought to be interpreted with respect to the movant's assertion here that the U.S. Trustee must appoint a committee has to be informed by looking at the entire section. And when I look at 1102(a)(1), (a)(2), (a)(4), and (b)(1), ***the section is rife with language which indicates that a committee should be fairly chosen and representative of the different kinds of claims to be represented in the case.*** I will not read 1102(a) to require the appointment by the U.S. Trustee of a committee that does not meet that standard. That would read the statutory language, I think, to end up with the result that is ***inappropriate and literally absurd. So that from a legal standpoint I will not interpret 1102 to require based upon the plain meaning of the statute and the consideration of its purpose to require that the U.S. Trustee appoint a committee that's not representative.***

*In re NTK Holdings Inc., et al.*, Case No. 09-13611 (KJC), Hr'g Tr. at 16:21-25, 17:1-11 (Bankr. D. Del. Dec. 4, 2009) (emphasis added). Bankruptcy Code section 1102(a)(4) requires that a creditors' committee adequately represent all unsecured creditors. This requirement is reinforced by the language of section 1102(b)(1) which provides that any committee should be comprised of creditors willing to serve and be "representative of the different kinds of claims to be represented." 11 U.S.C. § 1102(b)(1). Similarly, other courts have held that a creditors' committee must be representative of all general unsecured creditors. *See, e.g., In re Garden Ridge Corp.*, No. 04-10324, 2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005) ("An official committee of unsecured creditors has a duty to represent all general unsecured creditors…."); *In re Enron Corp.*, 279 B.R. 681, 685 (Bankr. S.D.N.Y. 2002) (noting that the formation of a creditors' committee is "purposely intended to represent the necessarily different interests and concerns of the creditors it represents.") (internal citations omitted).

15. Appointment of an unsecured committee populated only by Second Lien Lenders would have been inappropriate given the Second Lien Lenders' unwillingness to waive their

secured claims and the existence of approximately $1 million of other general unsecured creditors in these cases. Courts are uniformly opposed to appointing a creditors' committee when the committee will consist of only a few creditors or a single type of creditor. *See In re Trans World Airline*, No. 92-115, 1992 WL 168152, at *3 (Bankr. D. Del. Mar. 20, 1992) ("Official committees are not designed to provide a speaker's platform for a particular creditor.") (internal citations omitted); *In re Shaffer-Gordon Assocs. Inc.*, 40 B.R. 956, 958 (Bankr. E.D. Pa. 1984) ("[T]he function of a statutory committee 'is not to provide a Court sanctioned spokesman, at the cost and expense to the estate'"), *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02 Civ. 6274, 2003 WL 22327118, at *6 (S.D.N.Y. Oct. 10, 2003) (quoting *In re Hills Stores Co.,* 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992)) ("The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to 'strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.'").

16.     Here, the only creditors that affirmatively expressed an interest in sitting on an unseucred creditors' committee were Second Lien Lenders. Given the Second Lien Lenders' unwillingness to waive their secured claims, the U.S. Trustee correctly declined to appoint an unsecured creditors' committee because an unsecured creditors' committee populated solely with Second Lien Lenders would not have been "representative of the different kinds of claims to be represented." Courts have upheld U.S. Trustee decisions not to place purported secured creditors on official unsecured creditor committee's because of the inherent conflict of interest. *See In re Glendale Woods Apartments, LTD.*, 25 B.R. 414, 415 (Bankr. D. Md. 1982) (denying request of partially-secured creditor to be appointed to the unsecured creditors' committee on the grounds that "even if [the creditor] is not fully secured, its interest may be in conflict with

other members of the Creditors' Committee"); *see also In re America West Airlines*, 142 B.R. 901 (Bankr. D. Ariz. 1992) (upholding the U.S. Trustee's decision to remove a creditor from the official committee after the creditor obtained priority status for his claims through DIP financing and created a potential conflict between the creditor and general unsecured creditors). Furthermore, by the Second Lien Agent's own admission, the interests of the Second Lien Lenders diverge significantly from those of the Debtors' unsecured creditors. *See* Motion at ¶27 (explaining that general unsecured creditors, unlike the Second Lien Lenders, are unlikely to object to the Debtors' Plan).[2]

17.     For these reasons, the U.S. Trustee correctly determined that it could not appoint an official unsecured creditors' committee due to lack of interest among suitable member candidates.

**II.     The Court Should Not Order the Appointment of a
        Second Lien Committee Under Section 1102(a)(2) Because
        Second Lien Lenders Are Being Adequately Represented**

18.     The Second Lien Agent requests, in the alternative, that the Court direct the U.S. Trustee to appoint a Second Lien Committee. It is the movants' burden to prove that the appointment of a Second Lien Committee is necessary to ensure their adequate representation. *See In re Spansion, Inc.*, No. 09-10690, 2009 WL 4906565, at *2 (Bankr. D. Del. Dec. 18, 2009) (citing *Victor v. Edison Bros. Stores (In re Edison Bros. Stores, Inc.)*, 1996 WL 534853, at *4 (D. Del. Sept. 17, 1996) and finding "[t]he Ad Hoc Equity Committee, as the moving party, has the burden of proving that an additional committee is needed for adequate representation"). Further, the appointment of a committee pursuant to Bankruptcy Code section

---

[2] Even the case law cited by the Second Lien Agent recognizes that where a conflict arises, a secured creditor may not be a proper participant on a committee. *See In re Walat Farms, Inc.*, 64 B.R. 65, 70 (Bank. E.D. Mich. 1986) (finding that where a creditor's claim is in conflict with the other members of the committee, the court may take steps to adjust composition of the committee or place restrictions on participation).

1102(a)(2) is an extraordinary remedy. *See In re Spansion, Inc.*, 2009 WL 4906565, at *3 ("The court's appointment of an additional committee is considered 'extraordinary relief' and should be 'the rare exception'").

19. The Second Lien Agent first must establish that the interests of those to be served by the proposed committee are not being adequately represented in the chapter 11 proceedings. If the creditors' interests are adequately represented, the requested relief will be denied without further inquiry. *See In re Garden Ridge Corp.*, 2005 WL 523129, at *2 (declining to appoint official committee of landlords on grounds that adequately represented by official committee of unsecured creditors). Although the Bankruptcy Code does not define adequate representation, courts have determined this issue on a case-by-case basis. *See In re Enron Corp.*, 279 B.R. at 685. Courts examine a variety of factors, including: "(1) the ability of the [existing] committee to function; (2) the nature of the case; and (3) the standing and desires of the various constituencies." *In re Garden Ridge Corp.*, 2005 WL 523129, at *2 (citing *In re Enron Corp.*, 279 B.R. at 685). Other factors include: (i) the ability of the movant to participate in the reorganization without official status; (ii) whether different classes of creditors may be treated differently under the plan and need representation; (iii) the tasks that an additional committee would perform; (iv) the potential to recover expenses pursuant to Bankruptcy Code section 503(b); and (v) the movant's motivation for seeking an additional committee. *See id.* at *2.

20. Even if the Court were to determine that the Second Lien Lenders are not adequately represented in these cases, the Court must then consider whether certain additional factors weigh in favor of such a committee. *See In re Enron Corp.*, 279 B.R. at 685. To make such determination, courts will examine: "(1) the cost associated with the appointment; (2) the time of the application; (3) the potential for added complexity; and (4) the presence of other

10

avenues for creditor participation." *See In re Garden Ridge Corp.*, 2005 WL 523129, at *2,

citing *In re Enron Corp.*, 279 B.R. at 685.  For the reasons cited below, the Second Lien Agent

cannot carry its burden, and, accordingly, the Motion should be denied.

> **A.    *The Second Lien Agent Does Not Offer Any Evidence
> Which Suggests That the Interests of Second Lien Lenders
> Are Inadequately Represented in These Cases***

21.    Through the Motion, the Second Lien Agent offers no evidence to suggest that the

interests of Second Lien Lenders are not being adequately represented in these cases.  Indeed,

the facts belie the notion that Second Lien Lenders require status as an "official" committee in

order to ensure that their interests are effectively represented in these cases.  Unlike *CCS

Medical* where the second lien lenders were taken by surprise by the filing of a prenegotiated,

prepackaged chapter 11 case, the Second Lien Lenders saw this coming from a mile away.

Negotiations between the steering committee of First Lien Lenders and the largest holders of

second lien debt began in early August 2009.  Nearly 4 months passed between the start of

negotiations and the commencement of the solicitation on the Debtors' prepackaged Plan.

Representatives of the largest Second Lien Lenders were invited to and did participate in

prepetition restructuring negotiations.  Their involvement did not require an "official"

committee then, nor does it now.

22.    Second, the Second Lien Agent and the Second Lien Lenders working with the

agent are sophisticated parties that are capable of, and have been, effectively representing the

second lien interests in these cases.  Consequently, the Second Lien Agent's contention that

"these Chapter 11 cases lack the necessary 'watchdog' to prevent overreaching by the Debtors

and the First Lien Lenders" is without merit.  *See* Motion at ¶ 25.  Since the filing of these

cases, the Second Lien Agent, through its counsel, has continued to remain actively involved in

these cases.  Among other things, counsel for the Second Lien Agent has taken the following

actions during these cases:

- On December 22, 2009, appeared at the first day hearing and engaged in negotiations with counsel for the Debtors and the First Lien Agent concerning the interim Cash Collateral Order;

- On January 15, 2010, filed its Limited Objection to the Cash Collateral Motion;

- On January 19, 2010, appeared at the final hearing on the Cash Collateral Motion and prosecuted the Limited Objection;

- On January 5, 2010, served a subpoena on the Debtors requesting the production of documents and the deposition of the individual at the company most familiar with the topics set forth in the document requests;

- On January 6, 2010, served a subpoena on the First Lien Agent requesting the production of documents and the deposition of the individual at Credit Suisse AG, Cayman Island Branch most familiar with the topics set forth in the document requests;

- On January 20, 2010, served a subpoena on Wayzata Investment Partners requesting the production of documents and the deposition of the individual at Wayzata Investment Partners most familiar with the topics set forth in the document requests.

- Participated in negotiations with counsel for the Debtors and the First Lien Agent concerning a scheduling order for the discovery being sought by the Second Lien Agent;

- On January 26, 2010, filed the Motion;  and

- On January 28, 2010, participated in a telephonic conference with this Court concerning scheduling issues related to discovery and the Motion.

23.     Third, neither the Second Lien Agent nor Second Lien Lenders lack a remedy to

get paid or reimbursed for fees and expenses incurred in the cases because (i) such fees and

expenses may be recovered in advance of distributions of principal to the Second Lien Lenders

under the relevant credit documentation, and (ii) they have the right to seek allowance of

substantial contribution claims under Bankruptcy Code section 503(b)(3)(D).  If the Second

Lien Agent and Second Lien Lenders can demonstrate to the Court (as they indicated they will)

that the value available for distribution to creditors in these cases exceeds approximately $592 million, then payment or reimbursement of such fees and expenses is merely a timing issue. Furthermore, if the Second Lien Agent's professionals are not being paid directly by the Second Lien Agent, the professionals can seek payment from those Second Lien Lenders supporting the confirmation challenge.

24.     Fourth, the primary motivation for seeking a Second Lien Committee is patently obvious – money.  The issue presented by this Motion boils down to "who should pay" for the Second Lien Lenders' opposition to the Plan.  Barred under the Intercreditor Agreement from recovering fees and expenses from the estates, the Second Lien Agent asks this Court to appoint a Second Lien Committee so that the Second Lien Lenders can obtain an estate-funded "free shot" at contesting confirmation.  This attempted end-run around the Intercreditor Agreement should not be countenanced by this Court.  The Second Lien Lenders do not have the right to use the First Lien Lenders' cash collateral to challenge the Plan whether represented through the Second Lien Agent or cloaked with "official" status as a statutory committee.

25.     The Second Lien Agent is also motivated to have a Second Lien Committee appointed to avoid damages it is incurring under the Intercreditor Agreement through its challenge to the Debtors' Plan valuation.  The Second Lien Agent, for itself and on behalf of the Second Lien Lenders, contractually agreed not to take certain actions in an insolvency proceeding or otherwise, including:

> (iii)…object to the manner in which the First Lien Collateral Agent
> or any other First Lien Secured Party may seek to enforce or
> collect the First Lien Obligations or the First Priority Liens,
> regardless of whether any action or failure to act by or on behalf of
> the First Lien Collateral Agent or any other First Lien Secured
> Party is, or could be, adverse to the interests of the Second Lien
> Secured Parties, *and will not assert, and hereby waive, to the*
> *fullest extent permitted by law, any right to demand, request, plead*
> *or otherwise assert or claim the benefit of any marshalling,*
> *appraisal, valuation or other similar right that may be available*
> *under applicable law with respect to the Collateral or any similar*
> *rights a junior secured credit may have under applicable law. . . .*

*See* Intercreditor Agreement, §3.02(a)(vi) (emphasis added).[3]  By contesting the Debtors'

valuation of the "Collateral", the Second Lien Agent and Second Lien Lenders with whom the

Second Lien Agent is working are exposing themselves to significant damages under the

Intercreditor Agreement.  Faced with increasing liability, the Second Lien Agent seeks

appointment of a Second Lien Committee to take action which the Second Lien Agent has

contractually agreed not to pursue.  As recognized by other courts, intercreditor/subordination

agreements should be enforced because failure to do so would impair the contract rights of

creditors and unfairly allow subordinate creditors a second opportunity to negotiate their rights.

*See In re ION Media Network, Inc.*, No. 09-13125, 2009 WL 4047995, at *6 (Bankr. S.D.N.Y.

Nov. 24, 2009) (finding that "plainly worded contracts establishing priorities and limiting

obstructionist, destabilizing and wasteful behavior should be enforced and creditor expectations

should be appropriately fulfilled").  Complaints about lack of adequate representation must be

measured against the bargain that was struck between First Lien Lenders and Second Lien

Lenders.  The Intercreditor Agreement significantly limits the rights of Second Lien Lenders to

take actions adverse to the interests of the First Lien Lenders in insolvency proceedings and

---

[3] The First Lien Agent reserves all rights and remedies against the Second Lien Agent and Second Lien Lenders, including the right to seek damages in connection with any violation of the Intercreditor Agreement.

other enforcement proceedings.  The Court should give effect to this bargain by declining to appoint a Second Lien Committee

26.     Finally, Bankruptcy Code section 1109(b) guarantees that the Second Lien Agent and any Second Lien Lenders will have the right to be heard on any issue in the Debtors' cases. *See In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 212 (Bankr. S.D.N.Y 1990) (declining to appoint a committee on the grounds that "section 1109(b) of the Code enables all creditors to be heard on any issue…[the creditors] also enjoy the right to make motions, and most importantly, retain the right to vote and all of the other creditor protections contained in Chapter 11.") (internal citations omitted).

27.     Given the involvement and effectiveness of the Second Lien Agent to date in these cases, it cannot reasonably be argued that the Second Lien Lenders are being inadequately represented nor is it argued that appointment of an "official" Second Lien Committee will result in a more effective representation.  Like the ad hoc equity committee in *Spansion*, the Second Lien Lenders are "well organized, well represented by counsel, and adequate to the task of representing [their] interests without 'official' status."  *In re Spansion, Inc.*, 2009 WL 4906565, at *8 (declining to appoint an official committee of equity holders on the grounds that the ad hoc equity committee adequately represented their interest without the need for an "official" committee); *see In re Garden Ridge Corp.*, 2005 WL 523129, at *2 (explaining that where creditors are able to participate in a case, even without the appointment of an official committee, they are adequately represented).

**B.      The Court Should Exercise its Discretion and Deny Appointment of a Second Lien Committee**

28.     As discussed above, the interests of the Second Lien Lenders are adequately represented in these cases by the Second Lien Agent.  Even if the Court finds that the Second

Lien Lenders are not adequately represented, it should exercise its discretion and deny the appointment of a Second Lien Committee. *See In re Garden Ridge Corp.*, 2005 WL 523129, at *2, citing *In re Enron Corp.*, 279 B.R. at 685 (noting that even the court finds that a committee is necessary to ensure adequate representation, the court nevertheless may exercise its discretion in appointing a committee). Among the other discretionary factors a court may consider in determining whether to appoint a committee under Bankruptcy Code section 1102(b) are: (i) the costs associated with the appointment of an official committee, (ii) the time of the application, (iii) the potential for added complexity; and (iv) the presence of other avenues for creditor participation. *See id.* Under circumstances similar to these, courts have declined to appoint an 1102(b) committee. *See, e.g., In re Kavlar Microfilm, Inc.*, 195 B.R. 599, 601 (Bankr. D. Del. 1996) (declining to appoint an official committee to represent equity holders on the grounds that "[t]he late timing of the motion ties in to the only remaining purpose of an equity committee in this case, which would be to object to the confirmation, and litigate the valuation issue. The aforementioned costs associated with the formation of an equity committee cannot be justified in light of this purpose.").

29.     All of the discretionary factors cited above weigh against the appointment of a Second Lien Committee. The appointment of a Second Lien Committee would undoubtedly result in significant costs to the Debtors' estates and result in the use of the First Lien Lenders' cash collateral for a purpose prohibited by the Intercreditor Agreement. The activist investment funds pushing for appointment of a Second Lien Committee are well heeled institutions that can fund professional fees and expenses incurred in objecting to confirmation. Given the limited interests they represent, the hurdle amount they need to clear on valuation to entitle the Second Lien Lenders a recovery under the absolute priority rule, and the various means by which the

Second Lien Agent can fund professional fees and expenses, appointment of a Second Lien Committee is not justified and would be inconsistent with the purpose served by statutory committees.

**C.** ***The Debtors' Chapter 11 Cases Are Easily Distinguishable From In re CCS Medical***

30.    The Second Lien Agent asks the Court to follow the ruling in *In re CCS Medical*, in which the court initially denied the motion to appoint an official committee of second lien lenders, but later vacated its ruling under extraordinary circumstances.  *See In re CCS Medical, Inc.*, No. 09-12390 (CSS), Nov. 23, 2009 [Docket No. 593].  On February 2, 2009, Judge Sontchi vacated his order requiring appointment of a second lien committee for reasons discussed below.

31.    Even if the Court were to find Judge Sontchi's approach in *CCS Medical* warranted, the facts and circumstances which led Judge Sontchi to his ruling (since vacated) clearly are distinguishable from the Debtors' chapter 11 cases.  In *CCS Medical*, both the first and second lien lenders had blanket security interests in substantially all the debtors' assets.  The first lien debt was approximately $350 million and the second lien debt was approximately $113 million. Without consulting or negotiating with the second lien lenders, the debtors filed a prepackaged chapter 11 plan which treated the second lien lenders as out of the money stakeholders. Moreover, the second lien lenders were without an administrative agent as the agent resigned months before the launch of the prepack and the second lien lenders were unable to obtain a successor agent.

32.    Following three months of protracted discovery between the ad hoc second lien committee and the debtors, during which the debtors were accused of stonewalling on discovery and withholding relevant evidence, the confirmation hearing was held with valuation being the

key issue. The debtors valued the company at $229-$342 million, and the second lien lenders valued the company at $400-$500 million. Judge Sontchi found the debtors' valuation to be "results-driven" and containing "substantial errors." He found the expert opinion of the second lien lenders to be more probative and denied confirmation of the debtors' plan. *See In re CCS Medical, Inc.*, Case No. 09-12390 (CSS), Hr'g Tr. at 133:23-135:2, 146:17-148:3 (Bankr. D. Del. Oct. 23, 2009). Following denial of confirmation, the court determined that a second lien committee was appropriate even though months earlier the court denied a similar request by the ad hoc second lien committee. *See In re CCS Medical, Inc.*, Case No. 09-12390 (CSS), Hr'g Tr. at 139:12-15 (Bankr. D. Del. Oct. 23, 2009); *see also In re CCS Medical, Inc.*, Case No. 09-12390 (CSS), Hr'g Tr. at 38:4-10 (Bankr. D. Del. Nov. 23, 2009) ("At this point, frankly, I think the second lien ad hoc committee has performed to a level and spent money to a level that has legitimized their participation. So I am going to direct the Office of the U.S. Trustee, on an expedited basis, to appoint an official committee of second lien lenders.").

33.     Judge Sontchi ultimately vacated the order after the U.S. Trustee was unable to actually form the second lien committee ordered by the court, and instead, awarded the ad hoc second lien committee a substantial contribution claim pursuant to Bankruptcy Code section 503(b)(3)(D) which related back to November 23, 2009, nearly 30 days after the court had entered an order denying confirmation of the Debtors' plan and more than 4 months after the cases were filed. In so ruling, the ad hoc second lien committee obtained that which the Second Lien Agent requests here – payment of fees and expenses. None of the professional fees and costs associated with the ad hoc committee's successful confirmation challenge were included within this finding. Indeed, Judge Sontchi recognized that the fact that the second lien

lenders bore the economic risk of contesting confirmation legitimized their participation in the cases and entitled them to recover fees and expenses on a going forward basis.

34.     Here, the Second Lien Agent has to yet establish any record upon which a substantial contribution claim can be justified.  The Debtors have not yet had the opportunity to present their valuation to the Court for approval nor has the Second Lien Agent bore the cost of successfully contesting confirmation.

## CONCLUSION

For the foregoing reasons, the First Lien Agent respectfully requests that this Court enter an order denying the relief requested by the Motion and awarding such other and further relief as this Court deems just and appropriate.

Dated:  Wilmington, DE
        February 4, 2010

/s/Gregory T. Donilon_____
Robert J. Dehney, Esq.
Gregory T. Donilon, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
Telephone: 302.658.9200
Facsimile: 302.425.3089
gdonilon@mnat.com
rdehney@mnat.com

*Attorneys for the First Lien Agent*

- and -

Michael S. Stamer, Esq.
Natalie E. Levine, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002
mstamer@akingump.com
nlevine@akingump.com

- and -

Scott L. Alberino, Esq.
Joanna F. Newdeck, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone: 202.887.4000
Facsimile: 202.887.4288
salberino@akingump.com
jnewdeck@akingump.com

*Attorneys for the First Lien Agent*